1  ROBERT M. YASPAN (SBN 51867)
2  JOSEPH G. McCARTY (SBN 151020)
   DEBRA R. BRAND (SBN 162285)
3  LAW OFFICES OF ROBERT M. YASPAN
4  21700 Oxnard Street, Suite 1750
   Woodland Hills, California 91367
5  Telephone: (818) 905-7711
6  Facsimile: (818) 501-7711

7  *Attorneys for Defendants Reko Holdings, LLC*

8

9            SUPERIOR COURT OF THE STATE OF CALIFORNIA

10       FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

11

12  ROBERT WARREN JACKSON,            ) CASE NO.:
    individually and derivatively; GREGORY  )
13  BAUER, individually and derivatively,   ) Los Angeles Superior Court Case
                                            ) No.:  20STCV32709
14                  Plaintiffs,             )
15                                          ) **NOTICE OF REMOVAL OF**
                                            ) **STATE COURT CIVIL ACTION**
16       v.                                 )
                                            )
17  MOSHE JACOB fka MOSHE SCHNAPP,          ) **[28 U.S.C. § 1331 FEDERAL**
    an individual; GUARDIAN PATCH LLC,      ) **CAUSE OF ACTION AND 15**
18  and BEN CLYMER'S THE BODY SHOP          ) **U.S.C. § 77p(c)]**
19  PERRIS, LLC, both California limited    )
    liability companies; RANDOLPH BEN       )
20  CLYMER, an individual; REKO             )
21  HOLDINGS, LLC, a Nevada limited         )
    liability company; STANLEY HILLS, LLC,  )
22  a Nevada limited liability company; YOSSI )
23  ATTIA, an individual; ANAT ATTIA, an    )
    individual; J.I.L. VENTURE, LLC, a      )
24  Nevada limited liability company;       )
25  ROSEMARIE "PINKY" CLAMOR, an            )
    individual; GLEN EAGLE                  )
26  ACQUISITIONS CORP. LP, an entity of     )
27  unknown origin and domicile; DARREN     )
    DUNCKEL, an individual; DANNY           )
28  RITTMAN, an individual; MANSOUR         )

                              - 1 -

1    KHATIB, an individual; MICHAEL )
2    MURRAY, an individual; EMPIRE STOCK )
     TRANSFER, INC., a Nevada corporation; )
3    PATRICK MOKROS, an individual; and )
4    DOES 1 through 25, inclusive, )
     )
5               Defendants. )
6    and )
     )
7    _____ )
8      )
   GBT TECHNOLOGIES, INC. fka )
9    GOPHER PROTOCOL, INC., a Nevada )
   corporation; )
10      )
11            Nominal Defendant. )
12    _____ )

13        Pursuant to 28 U.S.C. §§ 1331, 1367, 1441 and 1446, and 15 U.S.C. §

14 77p(c), Defendant Reko Holdings, LLC ("REKO") hereby removes this case, and

15 all claims and causes of action therein, from the Superior Court of the State of

16 California for the County of Los Angeles to the United States District Court for the

17

18 Central District of California. The Court has subject matter jurisdiction, and the

19 matter is therefore removable, for two independently sufficient reasons: First,

20

21 because the purported derivative claims are explicitly based on alleged violations

22 of the Securities Act of 1933 ("Securities Act"), and require interpretation of the

23

24 rules and regulations promulgated. Under the Securities Act, they "necessarily

25 raise a stated federal issue, actually disputed and substantial, which a federal forum

26 may entertain." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*

27 545 U.S. 308, 312-14 (2005). Second, because the complaint on its face also

28

NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION

depends on a finding that the defendants violated federal securities laws, it should

be regarded as a "covered class action" and is removal under the Securities

Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 77p(c).

## **BACKGROUND**

1.      On or about August 27, 2020, Plaintiffs Robert Warren Jackson and

Gregory Bauer commenced a civil action in the Superior Court of the State

California for the County of Los Angeles, captioned *Jackson v. Jacob, et al.*, Case

No. 20STCV32709.  True and accurate copies of the Summons and Complaint are

attached as Exhibit A.

2.      Plaintiff served the Summons and Complaint on Defendant Reko

Holdings, LLC ("REKO") on September 10, 2020.  Defendants are informed and

believe that other parties may have been served, but to date, Plaintiff has not filed

any proofs of service.

3.      REKO has not pled, answered, or otherwise appeared in this case.  No

other Defendants have pled, answered, or otherwise appeared in this case.

4.      This Notice of Removal is being filed before the expiration of 30 days

after service of the Summons and Complaint and is thus timely filed under 28

U.S.C. § 1446(b).

5.      The case asserts derivative claims against certain of GBT

Technologies, Inc. fka Gopher Protocol, Inc.'s ("GBT") alleged violation of the

Securities Act in connection with claims, in among other things, allegedly

orchestrating an alleged "market manipulation fraud" scheme and allgedly

participating in a "pump and dump".  In addition, Plaintiffs contend that GBT was

not operated in compliance with all securities laws and regulations.   The action

also purports to challenge certain disclosures in the documents filed with the

Securities and Exchange Commission ("SEC").  This lawsuit is styled as a

"derivative" action and assert alleged violations of the Securities Act.

6.    Copies of all pleadings, process, and orders from Los Angeles

Superior Court Case No. 20STCV32709 are attached hereto.

## JURISDICTION

7.    This Court has jurisdiction over this case under 28 U.S.C. §§ 1331 and

1367, and SLUSA, 15 U.S.C. § 77p(c).  This case is therefore removable under 28

U.S.C. § 1441 and 28 U.S.C. § 1446.

### This Court has Federal-Question Jurisdiction Under 28 U.S.C. § 1331

8.    It is well established that federal courts have "arising under'

jurisdiction over state-law claims that implicate significant federal issues. *See*

*Grable & Sons Metal Products*, 545 U.S. at 312-314 (2005) (federal-question

jurisdiction lies over "a state-law claim [that] necessarily raise[s] a stated federal

issue, actually disputed and substantial, which a federal forum may entertain

without disturbing any congressionally approved balance of federal and state

judicial responsibilities.").

9.    The Complaint is expressly premised on specific alleged violations of

federal securities statutes and regulations.  The Complaint alleges that, in violation of federal securities laws, the Individual Defendants and certain shareholders (purportedly Insider Defendants) (Exhibit A, ¶30) made or caused GBT to, among other things, make misleading statements in the press releases, 8-K, 10-Q, 10-K Forms ("Reports") filed with the SEC (Exhibit A, ¶109) and allegedly orchestrating, managing and systematically coordinating a "market manipulation fraud" scheme (*Id*).   The Complaint accordingly alleges that the Individual Defendants are named are participating in acts that are "illegal and normally results in criminal and civil penalties." (*Id*. ¶118).

10.    Plaintiffs' own pleading confirm that the action will require the interpretation of SEC rules and regulations promulgated under the Securities Act, including exemptions under Section 4(a)(2) f the Securities Act and/or Rule 506 of Regulation D and Section 501(a), Regulation D.  (*Id*. ¶69).  Based upon the face of the Complaint itself, it is clear that interpretation of these and other Regulations and Rules will be highly disputed and substantial issues of federal law.

11.    While the Complaint purports to be styled a "derivative" action and asserts state-law claims, *inter alia*, breach of fiduciary duty; aiding and abetting breach of fiduciary duty; fraud – concealment and suppression; negligence and injunctive relief, it is axiomatic that courts must examine the substance of the allegations to determine whether there is federal jurisdiction. *See D'Alessio v. New York Stock Exchange, Inc.*, 258 F.3d 93, 101 (2d Cir. 2001) ("[A]n examination of

the allegations contained in the complaint establishes that D'Alessio's suit is rooted

in violations of federal law, which favors a finding that federal question

jurisdiction exists").  Where the essential prerequisite for a claim requires the

application of substantial, disputed questions of federal law, there is federal

question jurisdiction over the claim. Such is the case here.

12.     The breach of fiduciary duty claim depends on the allegation that

the Individual Defendants and shareholders breached duties imposed by the federal

securities laws, duties that include, *inter alia*, the disclosure obligations of issuers

and others under the federal securities laws (and SEC regulations promulgated

thereunder). Plaintiffs acknowledges as much by stating, for example, that

defendants "sold in excess of 69,000,000 shares of nominal defendant

GBT(Gopher's) common stock previously held by them into the OTCQB

marketplace in a roughly nineteen (19) month period (1 January 2018 through July

2019)- a company is now totally worthless without net worth or valuable assets and

whose shares currently trade at $0.02 to $0.03 per share." (Exhibit A, ¶110).

These questions of federal law will be highly disputed as a matter of law.

Likewise, the aiding and abetting breach of fiduciary duty, fraud – concealment

and negligence claims all arise out of the same fact patterns that the Individual

Defendants caused GBT to violate federal securities laws.  The Injunctive Relief is

a remedy and not a cause of action.  In other words, a necessary (but not sufficient)

condition for Plaintiffs to prevail in this case is establishing that federal securities

laws were violated.[1]

13.     Because resolution of Plaintiffs' claims necessarily depends on whether there were violations of the federal securities statutes (and SEC regulations promulgated thereunder) in connection with the sale of stock, which are substantial (and, in this· case, disputed) questions of federal law, this case should be heard in federal court.  *See Gunn v. Minton,* 568 U.S. 251  (2013) *See D'Alessio,* 258 F.3d at 100-102 (upholding federal question jurisdiction over claims labeled as state-law claims because "the interpretation and application of the federal securities laws . . . [are] areas of undisputed strong federal interest"); *Opulent Fund v. Nasdaq Stock Market, Inc.,* No. C-07-03683, 2007 WL 3010573, at *3 (N.D. Cal. Oct 12, 2007) (holding that claim labeled as a state-law claim "raises a substantial federal question" because the conduct in this case can only be judged in relation to an SEC approved rule").

14.     Where a shareholder sues derivatively, claiming that directors and officers breached fiduciary duties by exposing a company to liability under federal law, "the questions of federal law are necessarily substantial, and are appropriately resolved in a federal forum." *Prince v. Berg*, No. C 10-4233, 2011 WL 9103, at *2-3 (N.D. Cal. Jan. 3, 2011) (denying remand in shareholder derivative suit alleging directors and officer breached fiduciary duty by subjecting company to False

---

[1] Even if violations were not disputed, this case would still fail for other reasons, including the failure to make a demand on the company's board of directors, the absence of bad faith on the part of the Insider Defendants, and SLUSA preclusion, among others.

Claims Act liability); *see also Fried v. Lehman Bros. Real Estate Assocs. III, L.P.*, No. 11 Civ. 4141 2012 WL 252139 at *3 (S.D.N.Y. Jan. 25, 2012) (holding that federal removal jurisdiction under *Grable* existed where standard of care for shareholder derivative claim for breach of fiduciary duty was set by federal statute that provides a private right of action); *Gamoran v. Neuberger Berman Mgmt., LLC*, No. 10-CIV-6234, 2010 WL 4537056, at *3 (S.D.N.Y. Nov. 8, 2010) (exercising removal jurisdiction under *Grable* in shareholder derivative suit because "Plaintiff's common law waste claim has a necessary and dispositive federal element, and a single claim can constitute sufficient basis for subject matter jurisdiction"); *Landers v. Morgan Asset Mgmt.*, NO. 08-2260-, 2009 WL 962689. At *6-7 (W.D. Tenn. Mar. 31, 2009) (exercising removal jurisdiction under *Grable* where derivative claims for breach of fiduciary duty were predicated on violations of federal securities law).

15.     Furthermore, it is axiomatic that where federal question jurisdiction exists over any one of the claims in a removed action, the Court possesses federal supplemental jurisdiction over the case a whole. *See* 28 U.S.C. § 1367(a); *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 165-66 (1997). Therefore, insofar as there is a substantial federal question allowing for removal of any one of Plaintiffs' claims, the case as a whole is properly removed. *See, e.g. Gamoran*, 2010 WL. 4537056, at *3; *Landers,* 2009 WL 962689. At *11.

**Removal is Also Authorized by SLUSA**

16.     SLUSA provides an independent, alternative ground for removal. SLUSA authorizes the removal of a "covered class action" that contains any allegation of "a misrepresentation or omission of a material fact ... in connection with the purchase or sale of a covered security." 15 U.S.C. § 77p(c).   This case is an attempt to bring an action premised on such allegations. (*See* Exhibit A.)  As such, for purposes of removal, this case also should be deemed a "covered class action, "which SLUSA defines as private, state-law based suit involving a "covered security" (*i.e.*, a nationally traded security) in which damages are sought on behalf of representative classes or where "questions of law or fact common to those persons ... predominate over any questions affecting only individual persons ...." 15 U.S.C. § 77p(f)(2)(A)(i), 77p(f)(3).

17.     SLUSA's definition of removable "covered class actions" excludes "exclusively derivative action[s] brought by one or more shareholders on behalf of a corporation." 15 U.S.C. § 77p(f)(2)(B). Whether a particular action is exclusively or only partially derivative requires case-by-case analysis, which is consistent with Congress's intention that SLUSA "be interpreted broadly to reach mass actions and all other procedural devices that might be used to circumvent the class action definition." S. Rep. No. 105-182, at 8 (1998).  Accordingly, courts have repeatedly held that SLUSA is not so formalistic that a plaintiff can avoid removal of a case that is, at heart, a "covered class action."  Plaintiffs allege that the defendant used

a pump and dump scheme in connection with the purchase or sale of a covered

security. As such, 5 U.S.C. 77p(b)(2) and (c) would be applicable. *See also*

*Bertram v. Terayon Comm. Sys., Inc.*, 2001 WL 514358, at *4 (C.D. Cal. Mar. 27,

2001) ("[I]n defining a 'covered class action' under the Uniform Standards Act,

Congress did not intend to allow artful pleading to circumvent its protections.");

*see also Romanov. Kazacos*, 609 F.3d 512, 523 (2d Cir. 2010) ("SLUSA requires

our attention to both the pleadings and the realities of the underlying claims.).

Thus, although courts have remanded actions that are truly derivative, removal

under SLUSA is proper where a plaintiff labels the complaint "derivative", but the

plaintiff's claims depend upon a finding that the defendants violated federal

securities laws designed to protect shareholders.

18.     That is the case here. This case should be deemed to be an alleged

"covered class action," rather than an "exclusively derivative" action. As discussed

above, it is premised on whether Individual Defendants or GBT violated the federal

securities laws <u>designed to protect shareholders</u>. As important, it expressly alleges

harms that flow *directly* to shareholders individually. Indeed, the Complaint alleges

that GBT's shareholders suffered harm. (Exhibit A, ¶ 110, 115, 118, 124, 128

(alleging that defendants breached their duties and caused losses to "GBT and its

*shareholders* (emphasis added). Those alleged direct and individual harms show

that the action is not "*exclusively* derivative" of harms to the corporation.

19.     Insofar as any one of the claims in this case is properly removable

under SLUSA, this Court possesses jurisdiction over all claims in the action because "SL USA provides for the removal of 'any covered class action,' not just individual claims." *Proctor v. Vishnay Intertech. Inc.*, 584 F.3d 1208, 1221 (9th Cir. 2009) (internal citation omitted).

20. Defendant will promptly serve a copy of this Notice on counsel for Plaintiff and will file a copy of this Notice with the Clerk of the Superior Court of the State of California for the County of Los Angeles, pursuant to 28 U.S.C. § 1446(d).

**Unanimity of Defendants who have Been Properly Joined and Served**

21. Defendants GBT, Guardian Patch, LLC and Ben Clymer's the Body Shop Perris, LLC, consent to join in the Removal of this action by defendant REKO. This constitutes unanimity of all known "defendants who have been properly joined and served," as required by 28 U.S.C. § 1446(b)(2)(A). As for the other defendants and former defendants,

22. Since no proofs of service have been filed, REKO is unaware of which parties have been served in this action (other than those in paragraph 21 above).

23. As stated above, no proofs of service have been filed with the State Court. As such, Defendants are unaware whether service has been effectuated on defendants Moshe Jacob fka Moshe Schapp, Randolph Ben Clymer, Stanley Hills, LLC, Yossi Attia, Anat Attia, J.I.L. Venture, LLC, Rosemarie "Pinky" Clamor,

Glen Eagle Acquisitions Corp. LP, Darren Dunckel, Danny Rittman, Mansour Khatib, Michael Murray, Empire Stock Transfer, Inc. and Patrick Mokros.  At the time of writing this Notice of Removal, REKO lacks information and belief that these defendants has yet been served, and that thus they have not been "properly joined and served" for purposes of 28 U.S.C. § 1446(b)(2)(A).

### CONCLUSION

24.     WHEREFORE, defendant REKO, pursuant to 28 U.S.C. §§ 1331, 1367, 1441 and 1446, and 15 U.S.C. § 77p(c), removes this action in its entirety from the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the Central District of California, Los Angeles Division.

Dated:  October 13, 2020                LAW OFFICES OF ROBERT M. YASPAN


By _____
    Robert M. Yaspan
    Joseph G. McCarty
    Attorneys for Reko Holdings, LLC

NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION

Exhibit A

COPY

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Moshe Jacob fka Moshe Schnapp, an individual; Guardian Patch, LLC
and Ben Clymer's The Body Shop Perris, LLC, ~~etc.~~ (See, Attachment)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Robert Warren Jackson, individually and derivatively;
Gregory Bauer, individually and derivatively

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

AUG 2 7 2020

Sherri R. Carter, executive Officer/Clerk of Court
By _____, Deputy
Steven Drew

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Los Angeles County Superior Court, Stanley Mosk Courthouse (Central)

111 North Hill Street, Los Angeles, California 90012

*CASE NUMBER:*
*(Número del Caso):*
**20STCV32709**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Wolfgang F. Hahn, Esq./Wolfgang F. Hahn + Associates      Telephone: 858. 535. 1000
7160 Caminito Pepino, La Jolla, California 92037

DATE: ~~Settlement 2020~~ **AUG 2 7 2020**   Sherri R. Carter, Clerk, by _____, Deputy
*(Fecha)*                                        *(Secretario)* **STEVEN DREW** *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.JusSearch.com

SUM-200(A)

| SHORT TITLE: Robert Warren Jackson, Et Al. v. Moshe Jacob, Et Al. | CASE NUMBER: |
|---|---|

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

[ ] Plaintiff   [X] Defendant   [ ] Cross-Complainant   [ ] Cross-Defendant

---

## ATTACHMENT TO SUMMONS

~~ROBERT WARREN JACKSON, individually and derivatively;~~
~~GREGORY BAUER, individually and derivatively;~~

---

~~NOTICE TO DEFENDANTS~~

~~MOSHE JACOB fka MOSHE SCHNAPP, an individual; GUARDIAN PATCH, LLC and BEN CLYMER'S THE BODY SHOP PERRIS, LLC,~~ both California limited liability companies; RANDOLPH BEN CLYMER, an individual; REKO HOLDINGS, LLC, a Nevada limited liability company; STANLEY HILLS, LLC, a Nevada limited liability company; YOSSI ATTIA, an individual; ANAT ATTIA, an individual; J.L.L. VENTURE, LLC, a Nevada limited liability company; ROSEMARIE "PINKY" CLAMOR, an individual; GLEN EAGLE ACQUISITIONS CORP. LP, an entity of unknown origin and domicile; DARREN DUNCKEL, an individual; DANNY RITTMAN, an individual; MANSOUR KHATIB, an individual; MICHAEL MURRAY, an individual; EMPIRE STOCK TRANSFER, INC., a Nevada corporation; PATRICK MOKROS, an individual; and DOES 1 through 25, inclusive

and

GBT TECHNOLOGIES, INC. fka GOPHER PROTOCOL, INC.,
a Nevada corporation;

Nominal Defendant.

Page __2__ of __2__

Page 1 of 1

COPY

1  Wolfgang F. Hahn, Esq. (SBN. 061385)
   Wolfgang F. Hahn + Associates
2  7160 Caminito Pepino
   La Jolla, California 92037
3  Telephone : 858. 535. 1000
   Telecopier : 858. 456. 5080
4  E-Mail Address: ellobo1@san.rr.com

5  Attorneys for Plaintiffs Robert Warren Jackson and Gregory Bauer

[SPACE BELOW PROVIDED ~~CONFORMED COPY~~]
**CONFORMED COPY**
ORIGINAL FILED
Superior Court of California
County of Los Angeles

AUG 2 7 2020

Sherri R. Carter, Executive Officer/Clerk of Court

By _____ , Deputy
Steven Drew

6                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

7                       **COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

8   ROBERT WARREN JACKSON, individually
9   and derivatively; and GREGORY BAUER,
    individually and derivatively;
10                                 Plaintiffs,
11  v.
12  MOSHE JACOB fka MOSHE SCHNAPP, an
    individual; GUARDIAN PATCH, LLC and,
13  BEN CLYMER'S THE BODY SHOP PERRIS,
    LLC, both California limited liability companies;
14  RANDOLPH BEN CLYMER, an individual;
    REKO HOLDINGS, LLC, a Nevada limited
15  liability company; STANLEY HILLS, LLC, a
    Nevada limited liability company; YOSSI
16  ATTIA, an individual; ANAT ATTIA, an
    individual; J.L.L. VENTURE, LLC, a Nevada
17  limited liability company; ROSEMARIE
    "PINKY" CLAMOR, an individual; GLEN
18  EAGLE ACQUISITIONS CORP. LP, an entity
    of unknown origin and domicile; DARREN
19  DUNCKEL, an individual; DANNY RITTMAN,
20  an individual; MANSOUR KHATIB, an
    individual; MICHAEL MURRAY, an individual;
21  EMPIRE STOCK TRANSFER, INC., a Nevada
22  corporation; PATRICK MOKROS, an
    individual; and DOES 1 through 25, inclusive,
23
24                                 Defendants.
    and
25
26  GBT TECHNOLOGIES, INC. fka GOPHER
    PROTOCOL, INC., a Nevada  corporation;
27
28                       Nominal Defendant.

Case No. **20STCV32709**

**DERIVATIVE CLAIMS FOR:**

**[1] BREACH OF FIDUCIARY DUTY;
[2] AIDING AND ABETTING BREACH OF
FIDUCIARY DUTY;  [3] FRAUD –
CONCEALMENT AND SUPPRESSION;
[4] NEGLIGENCE; AND [5] INJUNCTIVE
RELIEF**

## Table of Contents

Page(s)

I.      NATURE AND SUMMARY OF ACTION .................................................2

II.     PRELIMINARY ALLEGATIONS ...............................................................5

        1.   Plaintiffs ................................................................ ...........5

        2.   Nominal Corporate Defendant....................................... .......... 6

        3.   Director, Officer and Executive Consultant Defendants....... .......... 8

        4.   Controlling and Affiliate Shareholder Defendants....................   10

        5.   Corporate Transfer Agents + Controlling Executive Defendant ......12

        6.   "Alter Ego" Allegations As To Certain Individual Insider
             Defendants................................................................……... 12

        7.   Management and "Control" Structure
             of Nominal Defendant GBT............................................……   15

        8.   Doe Allegations............... ............................... ...... ...... 19

III.    JURISDICTION AND VENUE ........................ ...... .......... .....   20

IV.     GENERAL ALLEGATIONS
        COMMON TO ALL CAUSES OF ACTION.............................   20

        Nominal Defendant GBT fka Gopher Protocol, Inc. fka Forex
        International Trading Corp.'s Frenetic Stock Trading History
        Involving Third-Party Promotional Newsletters (Styled As
        "Paid Announcements" Coinciding With Higher Than Average
        Trading Volume And Fluctuations Of Its Stock Price, Irregularities
        And Machinations Including Two (2) Highly Suspicious Name
        Changes - All Orchestrated Under The Governance And Leadership
        Of Defendant JACOB And His Core Of Individual Insider
        Defendants And Affiliated Entities ...............................:.............. 20

        Nominal Defendant GBT's
        History Of Operational Non-Profitability............... ....................   22

        Nominal Defendant GBT's Pivotal Acquisition Of Preway/UGO
        Assets From RWJ Advanced Marketing On 1 September 2017............... 23

- i -

Individual Insider Defendants Orchestrated, Managed And
Systematically Coordinated A Fraudulent Market Manipulation
Scheme Designed To Artificially Inflate And Boost The Price
Of GBT's Stock Through False, Misleading, Positive And Highly
Exaggerated Public Reports, Statements, Press Releases And
Promotions, Resulting In Higher Than Average Trading
Volume And Upward Fluctuations In GBT's Stock Price............... ... 28

GBT's Historical Issuance Of Unregistered Stock To Its
Directors, Executive Officers, Beneficial Owners, Affiliates
And Related Insider Stockholders For Illusory And/Or
Manufactured Consideration Providing Financially Insignificant
Benefits To GBT........................................................ ... ...   36

[A]   Defendant GUARDIAN's Acquisition of Sizeable Cache Of
      Both GBT's Common and Preferred Shares In Return Or Loans,
      Future Funding Commitments and Consulting Services ...... ...   36

[B]   Defendant REKO's Conversion Of Its 66,000 Preferred Shares
      To 66,000.000 of Gopher's Common Shares ........................ 38

[C]   Defendants Stanley Hills, LLC./Yossi and Anat Attia's
      Receipt of Roughly 6,551,509 and 1,250,000 Shares Of
      GBT(Gopher's) Common Stock in 2017-2018....................   38

[D]   Defendants JIL and CLAMOR's Ownership Of Roughly
      6,270,000 GOPHER's Common Shares .......................   39

[E]   President/CEO Michael Murray 6,503,726 Shares
      Of GBT(Gopher's) Common Stock ............................   40

[F]   Defendant BODY SHOP's
      Receipt of 2,000,000 Common Shares ................................ 40

[G]   Defendants Glen Eagle/Darren Dunckel's Consulting
      Fee: 2,000,000 Shares Of GBT(Gopher's) Common Stock ......   40

OTC Markets Group Again Stops Quoting GOPH On Its OTCQB®
Venture Market And Again Demotes Its Pink® Open Market
Due To Apparent Third-Party Promotional Activities Coincided
With Higher Than Average Trading Volume And Fluctuations
In The Company's Stock Price........... .......................................40

Sale And Transfer of GBT(Gopher) Common Shares
By Various Insider Affiliate Defendants      ................................. 43

V.      FIRST CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY.........45

        Each Named Individual Insider Defendant Breached His/Her/Its
        Fiduciary Duties And Good Faith To Nominal Defendant GBT
        And Its Shareholders..................................................   46

VI.     SECOND CAUSE OF ACTION: AIDING AND ABETTING
        BREACH OF FIDUCIARY DUT Y...................... ...... ......   51

VII.    THIRD CAUSE OF ACTION: FRAUD - CONCEALMENT
        AND SUPPRESSION OF MATERIAL FACT.................... ......   52

VIII.   FOURTH CAUSE OF ACTION: NEGLIGENCE.................. ......   56

IX.     FIFTH CAUSE OF ACTION: INJUNCTIVE RELIEF............ ......   57

X.      DEMAND ALLEGATIONS..................................... ...........   59

        Demand By Plaintiffs Is Futile And Therefore Excused
        Because A Majority Of The Board Is Unable To Conduct
        An Independent And Objective Investigation Of Wrongful Conduct...   59

XI.     PRAYER FOR RELIEF ...................................... ...... ......   59

1    Plaintiffs ROBERT WARREN JACKSON and GREGORY BAUER, individually and

2    derivatively on behalf of nominal defendant GBT TECHNOLOGIES, INC., a Nevada corporation, fka

3    GOPHER PROTOCOL, INC. seek damages against certain officers, directors, executive consultants

4    and/or affiliates of nominal defendant GBT TECHNOLOGIES, INC.'s ("nominal defendant GBT", or

5    "GBT") that received material nonpublic information about GBT's financial results and exploited their

6    respective executive positions in committing violations of law, including breaches of fiduciary duties,

7    waste of corporate assets, unjust enrichment and violations of California Corporations Code that

8    occurred between November 2017 and the present, including a series of coordinated illegal private

9    stock sales that have caused substantial monetary losses and other damages to nominal defendant GBT

10   and its shareholders.

11   ### NATURE AND SUMMARY OF THE ACTION

12   Touting itself as both an "emerging growth company" and "a development-stage company",

13   over a period of years, nominal defendant GBT(Gopher),[1] trading as a "penny stock"[2] on the OTCQB,

14   entered into a plethora of business transactions, seeking debt and equity growth financing through

15   acquisitions and joint ventures funded primarily by the sale and transfer of large volumes of

16   GBT(Gopher's) issued, but unregistered securities, routinely relying upon exemptions allegedly

17   available under Section 4(a)(2) of the Securities Act and/or Rule 506 of Regulation D.[3] Each of the

18   named Individual Insider Defendants owed nominal defendant GBT(Gopher) and its shareholders the

19   highest fiduciary duties of loyalty, good faith, fair dealing, due care, and oversight in managing and

20   administering GBT(Gopher's) business affairs, ensuring strict compliance with all applicable laws,

21   rules and regulations, particularly the Company's insider trading policy, and establishing appropriate

22   criteria for officers, directors, executive consultants and affiliated entities restricted from trading in

23   GBT(Gopher's) stock, thereby avoiding the illegal sale of nominal defendant GBT(Gopher's) common

24   [1]    Until its most recent name change on or about 29 July 2019, the series of events complained of
herein occurred primarily while nominal defendant GBT was conducting business solely under the name of
25   Gopher Protocol, Inc. Accordingly, in the context of this Complaint, the terms "nominal defendant GBT", "nominal
defendant GBT(Gopher)" or "GOPHER are used interchangeably to describe nominal defendant GBT.
26   [2]    Historically, "penny stocks" in micro or nano cap public companies have always been considered
highly risky investments due to their size, stability, and potential for manipulation.
27   [3]    Under the federal securities laws, any offer or sale of a security must either be registered with
the SEC or meet an exemption. Historically, a majority of GBT's issuance unregistered securities and their offer
28   and sale of securities were made in reliance upon the exemptions contained in Section 4(a)(2) of the Securities
Act ("Private Placement") and/or Rule 506 of Regulation D promulgated thereunder.

1  shares by any insiders around and in between quarterly earnings announcements. On a regular basis,

2  each of the named Individual Insider Defendants had access to and received material nonpublic

3  information pertinent to GBT(Gopher's) periodic earnings, financial results and their relative

4  sustainability. Each of these Individual Insider Defendants was responsible, to some degree, in the

5  preparation and filing of federally mandated Form 10-Q's (quarterly reports), [4] 10-K's (Annual

6  Reports) and Form 8-K's, when required,[5] with the Securities and Exchange Commission ("SEC") and

7  press releases, that responsibly disseminated GBT(Gopher's) management's comprehensive

8  assessments and summaries of GBT's financial performance, finances, financial outlook, risks,

9  opportunities and current operations in candid and transparent manner.

10  Instead, starting in the fourth quarter of 2017 and continuing to the present, these Individual

11  Insider Defendants have engaged in the following fraudulent acts and conduct:

12  (i)  Engaging in a continuous pattern of "assembly line-like" illusory transactions sorely
lacking true value, fashioned and structured to appear as legitimate business
13  transactions, either (1) seeking debt financing through the issuance of promissory
notes convertible to Gopher shares of common stock; or (ii) acquisitions and joint
14  ventures whereby GBT(Gopher) allegedly obtained part-ownership and/or exclusive
licensing rights to allegedly valuable intellectual  the equity convertible and equity
15  growth financing through utilizing Securities Purchase Agreements or funded
primarily by the sale and transfer of large volumes of GBT(Gopher's) issued, but
16  unregistered securities and regularly and routinely reported in GBT's press releases
and its 8-K, 10-Q and 10-K Forms ("Reports") filed with the SEC.
17

18  (a)  GBT(Gopher) touted itself as "an emerging growth company that is creating
and patenting innovative mobile microchip (ICs) and software technologies
19  based on the GopherInsight ™ technology platform." [6]
20

21  (b)  By way of example, GBT(Gopher) entered into a transaction with defendant
Guardian Patch, LLC, an entity solely controlled by insider defendant Moshe,
22  whereby "on 29 March 2016, the Company Gopher "contributed  all of its
rights relating to its proprietary microchip that is within a sticky patch package
23  (the "Patch") to Guardian in consideration of 50% of the profits generated by
Guardian LLC, and a commitment from Guardian LLC" to invest "all needed
24

25

26  [4]  Form 10-Q Reports include unaudited financial statements and provide a continuing view of a
company's financial position during the year, which must be filed for each of the first three (3) fiscal quarters of a
27  company's fiscal year.
[5]  Form 8-K Reports provide updates of certain material corporate events on a more current basis
28  and are used to announce major events or developments that shareholders should know about.
[6]  See, p. 4, (or, p. 5/108, GBT's 2018 Annual Report dated 27 March 2019.

funds for the purpose of developing the Patch and related products to the Patch, as well as funding the working capital needs of the Company." [7]

(c)   Albeit that its GopherInsight™ technology had never generated any income whatsoever, on 25 September 2018, GBT(Gopher) "entered into a Joint Venture Interest Purchase Agreement with Guardian, LLC pursuant to which the Company purchased Guardian LLC's 50% interest in a joint venture ('JV Interest') previously entered between the parties in March 2016 . . ." In return, Guardian was issued 12,500,000 shares of GBT(Gopher's) common stock valued at $11,750,000 "based on the closing stock price of the Company's common stock at the date of the Agreement." [8]

(ii)   Fraudulently hyped and artificially "puffed up" GBT(Gopher's) financial viability, through false and misleading Form 8-K, 10-Q and 10-K filings and press releases, intentionally misleading investors by concealing and failing to honestly report that, while GBT's 1 September 2017 acquisition of the "Preway/UGO (Assets) generated what would appear to be considerable gross income, when all expenses were considered", GBT(Gopher's) Preway/UGO operations were neither "actually profitable" nor sustainable; [9]

(iii)   Concurrently, orchestrating, managing and systematically coordinating a "market manipulation fraud" scheme (commonly referred to as a "pump-and-dump") designed to artificially inflate and boost the price of GBT's stock through the dissemination of false, misleading, positive and highly exaggerated public reports, statements, press releases and promotions;

(a)   Included in GBT's promotional activities, a "stealth promotional network" by hiring and compensating a small army of writers, both real and imaginary, who systematically posted hundreds of bullish and highly favorable analysis pieces about GBT across numerous investment sites, surreptitiously touting GBT's stock, without disclosing that they had been compensated. In effect, members of the public, in reading and reviewing these posted bullish and highly favorable analysis, were lead to believe that these were impartial analysis rather than paid advertising;

(iv)   Coupled with various manipulative trading stratagems, all with the intended purpose of giving the market the false impression that there was real demand for GBT(Gopher's) securities, thereby manipulating the price of nominal defendant GBT(Gopher's) publicly-traded common shares in the marketplace higher through their coordinated plan of short-term hype ("pump"); and

(v)   Then selling their purportedly unrestricted shares at the top of the market ("dump") for their own illicit personal financial gain and benefit, ultimately leaving those who bought on the ascent with huge losses as GBT(Gopher's) shares of common stock

---

[7]   See, p. 53 (or, p. 72/114, GBT's 2017 Annual Report dated 11 April 2018.
[8]   See, p. 9 (or, p. 10/108, GBT's 2018 Annual Report dated 27 March 2019.
[9]   p. 29, ¶ 60 A, ll. 17-18; p. 35, ¶ 83 C., ll. 11-12, GOPHER's SACC filed 12 November 2019 in related matter (Case No. 19 STCV 03320).

inevitably crashed, all to the direct detriment of nominal defendant GBT(Gopher), its shareholders, including plaintiffs JACKSON and BAUER.[10]

By engaging in these acts and pattern of conduct, the named Individual Insider Defendants, and each of them, collectively orchestrated a series of transactions in nominal defendant GBT(Gopher's) shares of common stock creating actual or apparent active trading in GBT(Gopher's) securities, raising and/or depressing the price of nominal defendant GBT(Gopher's) securities for the purpose of inducing the purchase or sale of such securities by others, while concurrently selling and unloading their unregistered GBT(Gopher's) shares of common stock. In this manner, the named Individual Insider Defendants artificially created and manufactured the false or misleading appearance of active trading in nominal defendant GBT(Gopher's) shares of common stock and crafted a false and misleading appearance with respect to the market for GBT(Gopher's) shares of common stock.

## PRELIMINARY ALLEGATIONS

### Plaintiffs

1.      Plaintiff ROBERT WARREN JACKSON ("plaintiff JACKSON", or "JACKSON") is an individual, who is, and at all times relevant to this action, was a resident of the State of Alabama and is currently the owner of Three Million (3,000,000) shares of nominal defendant GBT's common stock (CUSIP 38268V108/Share Certificate No. B75637; No. 451451) and presently has an executed Stock Warrant Agreement dated 31 August 2017 s for the purchase of an additional Five Million (5,000,000) shares of nominal defendant GBT's common stock.

2.      Plaintiff GREGORY BAUER ("plaintiff BAUER", or "BAUER") is an individual, who is, and at all times relevant to this action, was a resident of conducted business in Cobb County, State of Georgia, is currently the owner of Two Million (2,000,000) shares of nominal defendant GBT's common stock (CUSIP 38268V108/ Certificate No. B75630; No. 447) and presently holds an executed Stock Warrant Agreement also dated 1 September 2017 for the purchase of an additional Four Million

---

[10]      "Pump and dump" ("P + D") is a form of securities fraud that involves artificially inflating the price of an owned stock through false and misleading positive statements, in order to sell the cheaply purchased stock at a higher price. Once the operators of the scheme "dump" (sell) their overvalued shares, the price falls and investors lose their money. This is most common with small cap and very small corporations, i.e. "microcaps". Typically, P + D schemes target the category of stocks most often associated with this scheme, namely, "penny stocks".

1  (4,000,000) shares of nominal defendant GBT's common stock.

2  **Nominal Corporate Defendant**

3      3.      Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that, at

4  all times relevant herein, defendant MO JACOB fka MOSHE SCHNAPP ("defendant JACOB", or

5  "JACOB") formed or caused to be formed three (3) Nevada corporations, namely: (1) Forex

6  International Trading Corp. ("FOREX") on 22 July 2009, serving as its Incorporator and its initial

7  Chief Executive Officer ("CEO"); (2) GBT Technologies, Inc. also on 22 July 2009; and (3)

8  subsequently on 13 February 2015 (after FOREX's expulsion from the second tier OTCBQ trading

9  platform by the OTC Markets Group), defendant Gopher Protocol, Inc. ("GOPHER"). Each of these

10  corporations were organized under the laws of the State of Nevada with their principal places of

11  business in Los Angeles County, State of California, most recently at 2500 Broadway, Suite F-125,

12  Santa Monica, California 90404. Initially, both GOPHER and GBT were wholly owned subsidiaries of

13  FOREX. In February 2015, FOREX entered into a merger with GOPHER with FOREX the "surviving

14  corporation", which then changed its name to GOPHER, Subsequently, on 29 July 2019, again after a

15  merger with GBT, defendant GOPHER, as the "surviving corporation", filed an amendment to its

16  Articles of Incorporation amending its name to GBT Technologies, Inc.

17      4.      Through its Individual Insider Defendants, at all times relevant herein, nominal

18  defendant GBT held itself out as "a development-stage" and "emerging growth technology company"

19  focusing on wireless communications infrastructure through advanced chip design that has developed a

20  portfolio of Intellectual Property integral to the rollout of the Internet of Things ("IoT"), as well as

21  applications relating to artificial intelligence. GBT(Gopher's) openly claimed that it owned and

22  controlled a portfolio of Intellectual Property that when commercialized would include smart

23  microchips, mobile application software and supporting Cloud software. GBT(Gopher's) technology

24  contemplates the creation of a global network with the core of its system to hinge and depend upon its

25  advanced microchip technology that would be able to be installed in any mobile device worldwide.

26  GBT(Gopher's) envisioned this system as an internal, private network between all enabled mobile

27  devices providing shared processing, advanced mobile database management/sharing and enhanced

28  mobile features.

5.   At all times relevant herein, defendant GBT(Gopher's), given its desire that its common shares be traded publicly, filed regular and periodic reports with the Securities and Exchange Commission's ("SEC") EDGAR filing system, the SEC's required filing format, containing financial results and other material information typically through its filing of SEC Forms 10-Q, 10-K and 8-K. At all relevant times, until 22 May 2019, defendant GBT(Gopher's) stock was publicly traded under the symbol (OTCQB; GOPH)

6.   Headquartered in New York, OTC Markets Group is the owner and operator of the largest U.S. electronic quotation and trading system for the over-the-counter ("OTC") securities providing price and liquidity information for almost 10,000 over-the-counter securities. The OTC Markets Group designates securities in one of three (3) markets to indicate the level of financial and corporate disclosure provided by the companies using its quotation system.

(i)   The OTCQX market includes both <u>multinational</u> companies seeking access to U.S. investors and domestic growth companies. To be traded on this tier, companies must undergo a qualitative review by OTC Markets Group. Companies are not required to be registered with or reporting to the SEC, but they must post financial information with OTC Markets Group. In addition, U.S. companies must be ongoing operations (i.e., no <u>shells</u>) and may not be in bankruptcy, while foreign issuers must meet the requirements of qualified foreign exchanges. Additional oversight of OTCQX securities is provided by requiring every issuer to be sponsored by approved third-party <u>investment banks</u> or <u>law firms</u>, called OTCQX Sponsors.

(ii)   The OTCQB® Venture Market contains a one penny ($0.01) bid price requirement "intended to remove companies that are most likely to be the subject of <u>dilutive stock fraud</u> schemes and promotions". Each company verifies via an annual OTCQB Certification, signed by the company CEO or CFO, that their company information is current, including information about a company's reporting status, company profile, information on management and boards, major shareholders, <u>law firms</u>, <u>transfer agents</u>, and IR/PR firms. Investor confidence improves when there is more information about a company's ownership structure, professional advisors and service providers. This certification will be required for any security newly qualified to be publicly quoted by a <u>broker-dealer</u> under SEC Rule 17 CFR § 240.15c2-11, or when a Pink traded company becomes a current SEC reporting company, beginning May 1, 2014. International Reporting companies are also allowed to upgrade from Pink to OTCQB if they publish their Rule § 12g3-2(b) compliant disclosure online and verify their company profile.

NB   The SEC only recognizes the OTCQX and OTCQB as established public markets.

(iii) The Pink® Open Market is the lowest and most speculative tier of the three marketplaces for the trading of OTC stocks. **It is an open market that has no financial standards or reporting requirements.** The stock of companies in the Pink tier are not required to be registered with the SEC. Companies in this category are further categorized by the level and timeliness of information they provide to investors and may have current, limited, or no public disclosure. *(emp. add.)*

7.     It is important to note that, <u>apart from the OTCQX market</u>, which has rules that include financial requirements, the designations do not signify issuer quality or merit of any security. Designation is based on the level and timeliness of a company's disclosure and OTCQB and any of the Pink categories can include both high quality as well as speculative, distressed, or highly questionable companies. Strict promotion policies have been enacted to flag these companies and deny their application for trading if they engage actively in campaigns marked by misleading information or manipulative promotions. *(emp. add.) Wikipedia, OTC Markets Group.*

**Director, Officer and Executive Consultant Defendants**

8.     Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that defendant MO JACOB fka MOSHE SCHNAPP ("defendant JACOB") is an individual, who is, and at all relevant to this action, was a resident of the County of Los Angeles and conducted business in the County of Los Angles, State of California. At all times relevant herein, defendant JACOB possessed and exercised, directly or indirectly, the power to control, direct and/or cause the direction of nominal defendant GBT's management, its Board of Directors and its executive consultant in the implementation of GBT(Gopher's) policies, business transactions and all corporate decisions whether through the ownership of voting securities and practices, by contract or otherwise. Since its inception on 22 July 2009, defendant JACOB has had an intimate knowledge of GBT(Gopher), participated in its day-to-day affairs and has had, and exercised, the powers to control GBT(Gopher's) corporate actions. Intentionally avoiding any official corporate title or office to skirt liability, defendant JACOB provided GBT(Gopher's) leadership, acted as nominal defendant GBT(Gopher's) chief executive officer and in

1  sworn testimony, testified that he acted as "a consultant to (Gopher's) officers and board of

2  directors . . . . "regarding (any and all) potential transactions for the past 4 or 5 years." [11]

3      9.      Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that

4  defendant MICHAEL MURRAY ("defendant MURRAY") is an individual, who is, and at all relevant

5  to this action, was a resident of the County of Los Angeles and has acted as nominal defendant GBT's

6  President/Chief Executive Officer, Chairman of the Board, Chief Financial Officer, Corporate

7  Secretary and Director.

8      10.     Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that

9  defendant DANNY RITTMAN ("defendant RITTMAN") is an individual, who is, and at all relevant to

10  this action, was a resident of the County of San Diego and regularly conducts business in the County of

11  Los Angeles, at times acting as GBT(Gopher's) Chief Executive Officer, Chief Technology Officer and

12  Director.

13      11.     Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that

14  defendant MANSOUR KHATIB ("defendant KHATIB") is an individual, who is, and at all times

15  relevant to this action, was a resident of the County of Los Angeles, has acted in various official

16  capacities on nominal defendant GBT(Gopher's) behalf, including that of Interim Chief Executive

17  Officer, Corporate Treasurer and Secretary,[12] while conducting GBT(Gopher's) business operations in

18  the Los Angeles County as defendant GBT(Gopher's) Chief marketing Officer ("CMO"), Interim Chief

19  Executive Officer, Chief Marketing Officer, Corporate Secretary and Treasurer and Director.

20  Defendant KHATIB is, and was, and at all times relevant to this action, responsible for overseeing and

21  maintaining GBT(Gopher's) internal control system to ensure compliance with  was being properly and

22  continuously enforced and implemented, as evidenced by GBT's press release and information

23  provided by GBT(Gopher) to the OTC Markets Group on or about 13 December 2017.

24      12.     Plaintiffs JACKSON and BAUER are informed and believe and thereon that defendant

25  DARREN DUNCKEL ("defendant DUNCKEL", or "DUNCKEL") is an individual, who is, and at all

26  ─────────────────

27  [11]      p. 4, ¶ 2, Final Award dated 31 January 2020 (JAMS Case Reference No. 126005395) reported by GBT on 3 February 2020 in its Form 8-K with Award attached as Exh. 99-1.
[12]      Interestingly, as of date of this Complaint, Mr. Khatib is listed as the Corporate Secretary and

28  Treasurer on the Nevada Secretary of State's Website, while on the California Secretary of State's Website, he is unlisted.

1  times relevant to this action, was a resident of the County of Los Angeles and conducted business in the

2  County of Los Angeles. , since 1 April 2018 acting in the capacity of defendant GBT(Gopher's) Chief

3  Executive Officer. In addition, commencing sometime in 2011 through a date presently unknown,

4  defendant DUNCKEL served as FOREX's Chief Executive Officer. Since the summer of 2017, prior to

5  its name change, he, according to his sworn testimony, provided "shareholder analytics to evaluate

6  shareholder movements with respect to" nominal defendant GBT(Gopher).

7      13.    Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that

8  defendant ROSEMARIE "PINKY" CLAMOR ("defendant CLAMOR", or "CLAMOR") is an

9  individual, who is, and at all times relevant to this action, was a resident of the County of Los Angeles

10  and conducted business in the County of Los Angeles, acting as executive consultant and agent of

11  defendant GBT(Gopher).

12      14.    Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that

13  defendant RANDOLPH BEN CLYMER ("defendant CLYMER") is an individual, who is, and at all

14  relevant to this action, was a resident of the County of Riverside and has acted as defendant

15  GUARDIAN PATCH, LLC's Manager since 11 August 2017 and conducted business with nominal

16  defendant GBT in the City and County of Los Angeles.

17      15.    Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that

18  defendant defendants YOSSI ATTIA and ANAT ATTIA (collectively, "defendants ATTIA") are each

19  individuals, who are, and remain, at all relevant to this action, residents of the County of Los Angeles

20  and conducting business in the County of Los Angles and wholly controlled and dominated defendant

21  STANLEY HILLS, LLC.

22  **Controlling and Affiliate Shareholder Defendants**

23      16.    Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that

24  defendant GUARDIAN PATCH, LLC ("defendant GUARDIAN", or "GUARDIAN") is a California

25  liability company, formed and organized on 1 March 2016 under the laws of the State of California by

26  defendant JACOB, as its organizer, with its principal place of business at 12203 Magnolia Avenue,

27  Riverside, California 92503, conducting business in the County of Los Angeles and wholly controlled

28  and dominated by defendant JACOB with the assistance and full cooperation of defendant CLYMER,

1   who became defendant GUARDIAN's Manager on 11 August 2017.

2       17.     Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that

3   defendant BEN CLYMER'S THE BODY SHOP PERRIS, LLC ("defendant BODY SHOP", or

4   "BODY SHOP") is a California liability company, formed and organized on 6 July 2016 under the laws

5   of the State of California by defendant BEN CLYMER, as its organizer, with its principal place of

6   business at 12203 Magnolia Avenue, Riverside, California 92503, conducting business in the County of

7   Los Angeles and wholly controlled and dominated by defendant CLYMER with the assistance and full

8   cooperation of defendant JACOB, who became defendant GUARDIAN's Manager on 11 August 2017.

9       18.     Plaintiffs JACKSON and BAUER are informed and believe and thereon

10  allege that, at all times relevant herein, defendant REKO HOLDINGS, LLC ("defendant REKO") is

11  and remains a Nevada limited liability company, formed and organized under the laws of the State of

12  Nevada with, most recently, Robert M. Yaspan as its Manager. Although defendant REKO is not

13  qualified to do business in the State of California, REKO conducts regular business activities in the

14  City and County of Los Angeles. Plaintiffs JACKSON AND BAUER are further informed, believe and

15  thereon allege that defendant REKO, at one point, owned or controlled approximately 70,000,000

16  shares of GBT's common stock, representing a significant percentage of GBT(Gopher's) total issued

17  and outstanding shares, while its equitable ownership of defendant REKO's membership interest

18  structure is presently unknown

19      19.     Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that

20  defendant GLEN EAGLE ACQUISITIONS, LP aka GLEN EAGLE ACQUISITIONS CORP., LP

21  ("defendant GLEN EAGLE, or, "GLEN EAGLE") is an entity of unknown origin, specializing in

22  building and consolidating synergist businesses within the Internet of Things (IoT), Artificial

23  Intelligence ("AI") and mobile technologies and wholly controlled and dominated by defendant

24  DUNCKEL, as its managing partner.

25      20.     Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that

26  defendant STANLEY HILLS, LLC ("defendant S. HILLS") is a Nevada limited liability company,

27  formed and organized under the laws of the State of Nevada, qualified to do business in California with

28  its principal place of business at 10611/2 N. Spaulding Avenue, West Hollywood, California 90046,

1    wholly controlled and dominated by defendants ATTIA.

2       21.    Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that

3    defendant J.I.L. VENTURE, LLC ("defendant JIL") is and remains a Nevada limited liability company,

4    formed and organized under the laws of the State of Nevada and, although conducting business in Los

5    Angeles, California, is not qualified to do business in the State of California and is wholly controlled

6    and dominated by defendant CLAMOR.

7    **Corporate Transfer Agent + Controlling Executive/Principal Defendants**

8       22.    Plaintiff  JACKSON and BAUER are informed and believe and thereon allege that, at all

9    times relevant herein, defendant EMPIRE STOCK TRANSFER, INC. ("defendant EMPIRE", or

10    "EMPIRE") is a Nevada corporation, formed and organized under the laws of the State of Nevada, with

11    its principal place of business in the City of Henderson, Clark County, Nevada, regularly doing

12    business with California corporations and their executives. Stock transfer agents, such as EMPIRE,  are

13    regulated by the SEC pursuant to Section 17A of the Securities Act of 1934 ("Exchange Act"), which

14    regulations are designed to ensure that transfer agents act promptly and adhere to their duties and

15    responsibilities to both the issuer and its shareholders. In addition, State laws governing the activities of

16    a transfer agent are based on Article 8, California's Commercial Code, which covers investment

17    securities and spells out the rights and liabilities of the buyer, seller, and transfer agent in transactions

18    involving securities. At all times relevant herein until on or around 19 March 2019, defendant EMPIRE

19    was GBT(Gopher's) appointed stock transfer agent and in that capacity processed all of its common

20    and preferred stock transfers.

21       23.    Plaintiffs JACKSON and BAUER are informed and believe and thereon that defendant

22    PATRICK MOKROS ("defendant MOKROS") is an individual, who is, and at all times relevant to this

23    action, while a resident of the State of Ohio, conducts business in both Henderson, Nevada and the City

24    and County of Los Angeles, State of California acting in the capacity of defendant GOPHER's Chief

25    Executive Officer.

26    **"Alter Ego" Allegations As To Certain Individual Insider Defendants**

27       24.    Plaintiffs JACKSON and BAUER are informed and believe and thereon

28    allege that, at all times relevant herein, defendant GUARDIAN was the "alter ego" of defendants

1    JACOB and CLYMER either as the sole managers and owners of all of defendant GUARDIAN 's

2    membership interests and/or wholly controlled all legal and/or equitable interests of defendant

3    GUARDIAN, such that there now exists, and has at all times relevant herein, existed, a unity of interest

4    in ownership between defendants JACOB and CLYMER and defendant GUARDIAN, such that any

5    individuality and separateness between these defendants, such that defendant GUARDIAN is a mere

6    shell and sham without capital, assets, stock or stockholders. Defendants JACOB and CLYMER have

7    completely, totally and unqualifiedly controlled, dominated, managed and operated defendant

8    GUARDIAN and intermingled its assets with their own. Defendant GUARDIAN was conceived,

9    intended and used by defendants JACOB, CLYMER and possibly others, as a device and/or artifice

10   intentionally designed to avoid individual liability and for the purpose of substituting a financially

11   insolvent corporate entity in the place and stead of individual defendants JACOB and CLYMER to

12   assist in diverting and secreting assets for defendants JACOB and CLYMER's personal benefit and

13   economic gain and enrichment to the detriment of nominal defendant GBT and its shareholders.

14        25.    Plaintiffs JACKSON and BAUER are informed and believe and thereon

15   allege that, at all times relevant herein, defendant GLEN EAGLES ACQUISITIONS CORP. LP

16   ("defendant GLEN EAGLE", or "GLEN EAGLE) is an entity of unknown origin and domicile was the

17   "alter ego" of defendant DUNCKEL either as the sole director, officer, principal and/or owner of

18   defendant GLEN EAGLE and/or wholly controlled all legal and/or equitable interests of defendant

19   GLEN EAGLE, such that there now exists, and has at all times relevant herein, existed, a unity of

20   interest in ownership between defendant DUNCKEL, such that any individuality and separateness

21   between these two (2) defendants, such that defendant GLEN EAGLE is a mere shell and sham without

22   capital, assets, stock or stockholders. Defendant DUNCKEL has completely, totally and unqualifiedly

23   controlled, dominated, managed and operated defendant GLEN EAGLE and intermingled its assets

24   with his own. Defendant GLEN EAGLE was conceived, intended and used by defendant DUNCKEL

25   and possibly others, as a device and/or artifice intentionally designed to avoid individual liability and

26   for the purpose of substituting a financially insolvent corporate entity in the place and stead of

27   individual defendant DUNCKEL to assist him in diverting and secreting assets for defendant

28   DUNCKEL's personal benefit and economic gain and enrichment to the detriment of defendant

1    GOPHER and its shareholders.

2        26.    Plaintiffs JACKSON and BAUER are informed and believe and thereon

3    allege that, at all times relevant herein, defendant JIL was the "alter ego" of defendant CLAMOR either

4    as the sole director, officer, principal and/or owner of defendant JIL and/or wholly controlled all legal

5    and/or equitable interests of defendant JIL, such that there now exists, and has at all times relevant

6    herein, existed, a unity of interest in ownership between defendant CLAMOR and defendant JIL, such

7    that any individuality and separateness between these two (2) defendants, such that defendant JIL is a

8    mere shell and sham without capital, assets, stock or stockholders. Defendant CLAMOR has

9    completely, totally and unqualifiedly controlled, dominated, managed and operated defendant JIL and

10   intermingled its assets with his own. Defendant JIL was conceived, intended and used by defendant

11   CLAMOR and possibly others, as a device and/or artifice intentionally designed to avoid individual

12   liability and for the purpose of substituting a financially insolvent corporate entity in the place and

13   stead of individual defendant CLAMOR to assist him in diverting and secreting assets for defendant

14   CLAMOR's personal benefit and economic gain and enrichment to the detriment of nominal defendant

15   GBT and its shareholders.

16       27.    Plaintiffs JACKSON and BAUER are informed and believe and thereon

17   allege that, at all times relevant herein, defendant S. HILLS, LLC ("defendant S. HILLS ") was wholly

18   controlled and dominated by defendants ATTIA, such that defendant S. HILLS was the "alter ego" of

19   defendants ATTIA either as the sole director, officer, principal and/or owner of defendant S. HILLS

20   and/or wholly controlled all legal and/or equitable interests of defendant S. HILLS, such that there now

21   exists, and has at all times relevant herein, existed, a unity of interest in ownership between defendants

22   ATTIA and defendant S. HILLS, such that any individuality and separateness between these two (2)

23   defendants, such that defendant S. HILLS is a mere shell and sham without capital, assets, stock or

24   stockholders. Defendants ATTIA have completely, totally and unqualifiedly controlled, dominated,

25   managed and operated defendant S. HILLS and intermingled its assets with their own. Defendant S.

26   HILLS was conceived, intended and used by defendants ATTIA and possibly others, as a device and/or

27   artifice intentionally designed to avoid individual liability and for the purpose of substituting a

28   financially insolvent corporate entity in the place and stead of individual defendants ATTIA to assist

1  him in diverting and secreting assets for defendants ATTIA's personal benefit and economic gain and

2  enrichment to the detriment of defendant GOPHER and its shareholders.

3      28.     Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that, at all

4  times relevant herein, defendant BODY SHOP) was wholly controlled and dominated by defendants

5  CLYMER and JACOB, such that defendant BODY SHOP was the "alter ego" of defendants ATTIA

6  either as the sole director, officer, principal and/or owner of defendant BODY SHOP and/or wholly

7  controlled all legal and/or equitable interests of defendant BODY SHOP, such that there now exists,

8  and has at all times relevant herein, existed, a unity of interest in ownership between defendants ATTIA

9  and defendant BODY SHOP, such that any individuality and separateness between these two (2)

10 defendants, such that defendant BODY SHOP is a mere shell and sham without capital, assets, stock or

11 stockholders. Defendants CLYMER and JACOB have completely, totally and unqualifiedly controlled,

12 dominated, managed and operated defendant BODY SHOP and intermingled its assets with their own.

13 Defendant BODY SHOP was conceived, intended and used by defendants CLYMER and JACOB and

14 possibly others, as a device and/or artifice intentionally designed to avoid individual liability and for

15 the purpose of substituting a financially insolvent corporate entity in the place and stead of individual

16 defendants CLYMER and JACOB to assist him in diverting and secreting assets for defendants

17 CLYMER and JACOB's personal benefit and economic gain and enrichment to the detriment of

18 defendant GOPHER and its shareholders

19     29.     Plaintiffs JACKSON and BAUER are further informed and believe and thereon allege

20 that defendant RITTMAN has utilized an entity of unknown name and origin operating as his "alter

21 ego" of which he is either the sole director, officer, principal and/or owner of, which he wholly controls

22 all legal and/or equitable interests, such that there now exists, and has at all times relevant herein,

23 existed, a unity of interest in his ownership and the unknown entity, such that any individuality and

24 separateness between these two. Upon plaintiff's discovery of the unknown entity's identity utilized by

25 defendant RITTMAN, said individual or entity will be joined as a Doe defendant.

26 **Management And "Control" Structure Of Nominal Defendant GBT**

27     30.     Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that, at

28 all times relevant herein, defendants MURRAY, DUNCKEL, RITTMAN, KHATIB, CLAMOR,

1  YOSSI ATTIA, ANAT ATTIA and through the utilization of various entities, including defendants

2  REKO HOLDINGS, GUARDIAN, JIL, GLEN EAGLE, S. HILLS, BODY SHOP and others presently

3  unknown to plaintiffs – all under the direct control and supervision, directly or indirectly, of defendant

4  JACOB, (collectively, at times, the "Individual Insider Defendants"), usurped control of nominal

5  defendant GBT and have been in charge of all business operations, sales, marketing and promotions,

6  implementation of all of defendant GBT(Gopher's) business strategies, including but not limited to, its

7  day-to-day operations, the implementation of all financial, accounting, and budgeting of all nominal

8  defendant GBT's business operations. At all times relevant herein,  each of these Individual Insider

9  Defendants had had an intimate knowledge of GBT(Gopher), participated in its day-to-day affairs and

10  collectively, they have had, and exercised the power to control GBT(Gopher's) corporate actions.

11       31.    Each of the named Individual Insider Defendants owed GBT(Gopher) and its

12  shareholders the highest fiduciary duties of loyalty, good faith, fair dealing, due care, and oversight in

13  managing and administering GBT's business affairs, ensuring strict compliance with the Company's

14  insider trading policy and determining the criteria for officers, directors, executive consultants and

15  affiliated entities restricted from trading thereby avoiding the illegal sale of GBT's common shares by

16  any insiders around and in between quarterly earnings announcements.

17       32.    Under the control and leadership of the Individual Insider Defendants, particularly

18  defendants JACOB, DUNCKEL, KHATIB and MURRAY, Touting itself as both an "emerging growth

19  company" and "a development-stage company", over a period of years, nominal defendant

20  GBT(Gopher), trading as a "penny stock" on the OTCQB, entered into a plethora of business

21  transactions, seeking debt and equity growth financing through acquisitions and joint ventures funded

22  primarily by the sale and transfer of large volumes of GBT(Gopher's) issued, but unregistered

23  securities, routinely relying upon exemptions allegedly available  under Section 4(a)(2) of the

24  Securities Act and/or Rule 506 of Regulation D. Each of the named Individual Insider Defendants owed

25  nominal defendant GBT(Gopher) and its shareholders the highest fiduciary duties of loyalty, good

26  faith, fair dealing, due care, and oversight in managing and administering GBT(Gopher's) business

27  affairs, ensuring strict compliance with all applicable laws, rules and regulations, particularly the

28  Company's insider trading policy, and establishing appropriate criteria for officers, directors, executive

consultants and affiliated entities restricted from trading in GBT(Gopher's) stock, thereby avoiding the illegal sale of nominal defendant GBT(Gopher's) common shares by any insiders around and in between quarterly earnings announcements. On a regular basis, each of the named Individual Insider Defendants had access to and received material nonpublic information pertinent to GBT(Gopher's) periodic earnings, financial results and their relative sustainability. Each of these Individual Insider Defendants was responsible, to some degree, in the preparation and filing of federally mandated Form 10-Q's (quarterly reports), 10-K's (Annual Reports) and Form 8-K's, when required, with the Securities and Exchange Commission ("SEC") and press releases, that responsibly disseminated GBT(Gopher's) management's comprehensive assessments and summaries of GBT's financial performance, finances, financial outlook, risks, opportunities and current operations in candid and transparent manner.

Instead, starting in the fourth quarter of 2017 and continuing to the present, these Individual Insider Defendants have engaged in the following acts and conduct:

(i) Engaging in a continuous pattern of "assembly line-like" illusory transactions sorely lacking true value, fashioned and structured to appear as legitimate business transactions, either (1) seeking debt financing through the issuance of promissory notes convertible to Gopher shares of common stock; or (ii) acquisitions and joint ventures whereby GBT(Gopher) allegedly obtained part-ownership and/or exclusive licensing rights to allegedly valuable intellectual the equity convertible and equity growth financing through utilizing Securities Purchase Agreements or funded primarily by the sale and transfer of large volumes of GBT(Gopher's) issued, but unregistered securities and regularly and routinely reported in GBT's press releases and its 8-K, 10-Q and 10-K Forms ("Reports") filed with the SEC;

(a) GBT(Gopher) touted itself as "an emerging growth company that is creating and patenting innovative mobile microchip (ICs) and software technologies based on the GopherInsight ™ technology platform." [13]

(b) By way of example, GBT(Gopher) entered into a transaction with defendant Guardian Patch, LLC, an entity solely controlled by insider defendant Moshe, whereby "on 29 March 2016, the Company Gopher "contributed all of its rights relating to its proprietary microchip that is within a sticky patch package (the "Patch") to Guardian in consideration of 50% of the profits generated by Guardian LLC, and a commitment from Guardian LLC" to invest "all needed funds for the purpose of developing the Patch and related

---

[13]     See, FN 6 above (GBT's 2017 Annual Report dated 11 April 2018(.

products to the Patch, as well as funding the working capital needs of the Company." [14]

    (c)    Albeit that its GopherInsight™ technology had never generated any income whatsoever, on 25 September 2018, GBT(Gopher) "entered into a Joint Venture Interest Purchase Agreement with Guardian, LLC pursuant to which the Company purchased Guardian LLC's 50% interest in a joint venture ('JV Interest') previously entered between the parties in March 2016 . . ." In return, Guardian was issued 12,500,000 shares of GBT(Gopher's) common stock valued at $11,750,000 "based on the closing stock price of the Company's common stock at the date of the Agreement." [15]

(ii)    Fraudulently hyped and artificially "puffed up" GBT(Gopher's) financial viability, through false and misleading Form 8-K, 10-Q and 10-K filings and press releases, intentionally misleading investors by concealing and failing to honestly report that, while GBT's 1 September 2017 acquisition of the "Preway/UGO (Assets) generated what would appear to be considerable gross income, when all expenses were considered", GBT(Gopher's) Preway/UGO operations were neither "actually profitable" nor sustainable;

(iii)    Concurrently, orchestrating, managing and systematically coordinating a "market manipulation fraud" scheme (commonly referred to as a "pump-and-dump") designed to artificially inflate and boost the price of GBT's stock through the dissemination of false, misleading, positive and highly exaggerated public reports, statements, press releases and promotions, creating the false impression that GBT(Gopher's) stock was being actively traded by independent investors and that its stock was in high market demand;

    (a)    Included in GBT's promotional activities, a "stealth promotional network" by hiring and compensating a small army of writers, both real and imaginary, who systematically posted hundreds of bullish and highly favorable analysis pieces about GBT across numerous investment sites, surreptitiously touting GBT's stock, without disclosing that they had been compensated. In effect, members of the public, in reading and reviewing these posted bullish and highly favorable analysis, were lead to believe that these were impartial analysis rather than paid advertising;

(iv)    Coupled with various manipulative trading stratagems, all with the intended purpose of giving the market the false impression that there was real demand for GBT(Gopher's) securities, thereby manipulating the price of nominal defendant GBT(Gopher's) publicly-traded common shares in the marketplace higher through their coordinated plan of short-term hype ("pump");" and

(v)    Then selling their purportedly unrestricted shares at the top of the market ("dump") for their own illicit personal financial gain and benefit, ultimately leaving those who bought on the ascent with huge losses as GBT(Gopher's) shares of common stock

---

[14]    See, FN 7 above (GBT's 2017 Annual Report dated 11 April 2018).
[15]    See, FN 8 above (GBT's 2018 Annual Report dated 27 March 2019).

1   inevitably crashed, all to the direct detriment of nominal defendant GBT(Gopher),
    its shareholders, including plaintiffs JACKSON and BAUER.

2       33.     By engaging in these acts and pattern of conduct, the named Individual Insider

3   Defendants, and each of them, orchestrated a series of transactions in nominal defendant

4   GBT(Gopher's) shares of common stock creating actual and/or apparent active trading in

5   GBT(Gopher's) securities, raising and/or depressing the price of nominal defendant GBT(Gopher's)

6   securities for the purpose of inducing the purchase or sale of such securities by others, while

7   concurrently selling and unloading their unregistered GBT(Gopher's) shares of common stock. In this

8   manner, the named Individual Insider Defendants artificially created and manufactured the false or

9   misleading appearance of active trading in nominal defendant GBT(Gopher's) shares of common stock

10  and crafted a false and misleading appearance with respect to the market for GBT(Gopher's) shares of

11  common stock.

12  **Doe Allegations**

13      34.     Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that, at

14  all times relevant hereto, plaintiffs are ignorant of the true names and capacities of the defendants sued

15  herein and DOES 1 through 25, inclusive and therefore sue these defendants by such fictitious names.

16  Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

17      35.     Plaintiffs JACKSON and BAUER are informed and believe and thereon

18  allege that, at all times relevant hereto, plaintiffs are ignorant of the true names and capacities of the

19  defendants sued herein and DOES 1 through 25, inclusive and therefore sues these defendants by such

20  fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when

21  ascertained. Plaintiff is informed and believes and thereon alleges that these DOE defendants are liable

22  for the damages alleged in this complaint. Plaintiffs JACKSON and BAUER are further informed and

23  believe and thereon allege that each of the above named defendants was and is now the agent, servant,

24  employee and/or representative of each of the other defendants and, in doing the things herein alleged,

25  was acting within the scope of such defendant's authority as agent, servant, employee, and/or

26  representative with the permission, consent, and ratification of each of the defendants. Each of the

27  fictitiously named defendants is proximately responsible, either through negligence, intentional

28  misconduct, or contractually, for plaintiff JACKSON and BAUER's injuries and damages, as alleged

1   herein, and that each such fictitiously named defendant acted as the agent of each of the other

2   defendants in this action and actively participated in the conduct and acts complained of herein and

3   advance the scheme complained of herein in order to benefit the named defendants and themselves to

4   the detriment of nominal defendant GBT.

5   **JURISDICTION AND VENUE**

6   36.   This Court has jurisdiction and venue is proper as the amount in controversy,

7   exclusive of interest and costs exceeds the jurisdictional minimum of this Court and because (i) at all

8   times relevant, since its formation on 22 July 2009, nominal defendant GBT's principal place of business

9   was in the City and County of Los Angeles, California and GBT conducts substantially all of his

10   operations in this jurisdiction.; (ii) a majority of the defendant GBT's officers, directors, executive

11   consultants and insiders reside in the City and/or County of Los Angeles and have sufficient contacts

12   with California to make proper the exercise of personal jurisdiction over them; and  (iii) a vast majority

13   of the events giving rise to plaintiffs JACKSON and BAUER's derivative claims occurred and are

14   continuing to occur in the City and County of Los Angeles, California.

15   **GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

16   **Nominal Defendant GBT fka Gopher Protocol, Inc. fka Forex International Trading Corp.'s**
    **Frenetic Stock Trading History Involving Third-Party Promotional Newsletters (Styled As**
17   **"Paid Announcements" Coinciding With Higher Than Average Trading Volume And**
    **Fluctuations Of Its Stock Price, Irregularities And Machinations Including Two (2)**
18   **Highly Suspicious Name Changes** [16] **- All Orchestrated Under The Governance And Leadership**
    **Of Defendant JACOB And His Core Of  Individual Insider Defendants And Affiliated Entities**
19

20   37.   On 9 September 2009 – shortly after its formation on 22 July 2009 – headquartered in

21   El Segundo, California, nominal defendant GBT(Gopher) then known as Forex International Trading

22   Corp. ("FOREX") filed its Form S-1 Registration Statement to provide for the registration of a portion

23   of its securities. Subsequently, on 29 December 2010, FOREX began trading its common stock on the

24   OTCBQ under the symbol "FXIT" maintained by the OTC Markets Group. At the time, the Company's

25   principal business activities were "to engage in foreign currency market trading for non-US resident

26   professionals and retail clients over's web-based trading systems", operation that were subsequently

27   ─────────────────

28   [16]   Both names changes (1) FOREX to Gopher on 23 February 2015 and (2) Gopher to GBT on 29
    July 2019 were effectuated after the OTC Markets Group had demoted the Company to the Pink® Open Market
    and had stopped quoting its stock on the OTCQB due to stock trading irregularities.

1 ceased and abandoned. [17, 18]

2     38.    At all times relevant herein, nominal defendant GBT(Gopher) fka FOREX's common

3 stock was a "penny stock" under the rules the SEC under the Securities Exchange Act of 1934. By

4 definition, penny stocks are generally equity securities with a price of less than $5.00. The SEC has

5 adopted an extensive set for specific rules, regulations and practices regulating their sale by broker-

6 dealer practices in connection with transactions, including the preparation and delivery of a

7 standardized risk disclosure document containing, including but not limited to, a description of (i) the

8 nature and level of risks in the market for penny stocks in both public offerings and secondary trading;

9 (ii) the broker's or dealer's duties to the customer and of the rights and remedies available to the

10 customer with respect to a violation to such duties or other requirements of Securities' laws; (iii) a

11 brief, clear, narrative description of a dealer market, including bid and ask prices for penny stocks and

12 the significance of the spread between the bid and ask price; and (iv) monthly account statements

13 showing the market value of each penny stock held in the customer's account. As a direct intended

14 consequence and result, these disclosure requirements may have the effect of reducing the trading

15 activity in the secondary market for an issuer's "penny stock".

16     39.    On 1 May 2014, FOREX was dropped from trading on the OTCQB and moved from to

17 OTC Pink® Sheets by the OTC Markets Group for non-compliance, as of which date, FOREX reported

18 538,871,629 in total shares issued and outstanding.

19     40.    Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that,

20 undeterred by its demotion and relegation to the OTC® Open Market fka "Pink Sheets" - the lowest

21 and most speculative tier of OTC trading - and after "laying low" for a few months, FOREX, initiated a

22 series of machinations, including amending its Articles of Incorporation, executing a "reverse stock"

23 split, merging with a company (Gopher Protocol, Inc.) also formed on 13 February 2015 and controlled

24 by defendant JACOB and changing its post-merger name to Gopher Protocol, Inc. ("GOPHER"). On

25 23 February 2015, after implementation of its "reverse stock" split, GOPHER was issued a new CUSIP

26

27     [17]    See, p. 15, FOREX Form 10-Q dated 14 August 2014.
    [18]    Subsequently, on 12 August 2014, FOREX admitted publicly that these currency trading
28 operations "ha(d) been closed" and had ceased. See, *p. 16, Form 10-Q dated 14 August 2014 filed with the SEC.*

number and a changed trading symbol  GOPH by Financial Industry Regulatory Authority ("FINRA"). As a result of these machinations, as of 1 March 2015, GBT(Gopher's) shares of common stock were again trading on the OTCBQ with roughly the same management, same executives, same beneficial owners, same related stockholders and same New York securities counsel.

**Nominal Defendant GBT's History Of Operational Non-Profitability**

41.    Historically, from 2013 through mid-2017, trading as a "penny stock" on the OTCQB, GBT(Gopher) had routinely experienced difficulties in generating sufficient operating capital seriously inhibiting its growth. As a result of its ongoing liquidity struggles, GBT was constantly seeking debt and/or equity financing fueled by the issuance and sale of unregistered stock in order to propel its projects and their development forward. As reported repeatedly over the years by GBT, its dilemma was:

"inadequate capital to pay significant additional expenses (it) expected to incur as a public company and as a result, (it) (would) be required to raise additional capital further diluting investors that participated in prior offerings."

42.    Nominal defendant GBT's 2013-2017 financial statements illustrated GBT's historical dilemma:

Chart 1          **GBT'S Reported Operational Income/Loss**
(Prior To Preway/UGO Asset Purchase)

| Fiscal Year | Gross Income | Net Loss |
|---|---|---|
| Ending 12.31.2013 [19] | $ 100,000 | (291,777) |
| Ending 12.31.2014 [20] | 120,000 | (295,569) |
| Ending 12.31.2015 | 90,000 | (96,116) |
| Ending 12.31.2016 [21] | 165,000 | (1,586,226) |

43.    Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that, after it again began trading on the OTCBQ on or about 1 March 2015, defendants JACOB, DUNCKEL

[19]    See, Footnote 6 below.
[20]    See, p. F-4 (or, 35/50), Form 10-K dat. 15 April 2015 (Gopher Annual Report – Fiscal Year ending 31 Dec. 2014) filed with the SEC ("GBT's 2014 Annual Report", or "2014 Annual Report").
[21]    See, p. F-4 (or, 41/61), Form 10-K dat. 31 March 2017 (Gopher Annual Report – Fiscal Year ending 31 Dec. 2016) filed with the SEC ("GBT's 2015 Annual Report", or "2015 Annual Report").

1   KHATIB and MURRAY renewed their activities and efforts in a myriad of stratagems and transactions

2   to raise sufficient operating capital, actively seeking debt financing utilizing convertible notes, equity

3   financing and/or an acquisition on GBT(Gopher's) behalf through the issuance and sale of unregistered

4   stock hoping to dramatically increase GBT's reportable revenue and cash flow to remedy GBT's history

5   of poor income and revenue generation.

6   **Nominal Defendant GBT's Pivotal Acquisition Of**
    **Preway/UGO Assets From RWJ Advanced Marketing On 1 September 2017**

7

8       44.   Established in 1898 as a retail mercantile business, Alabama-based W.L. Petrey

9   Wholesale, Inc. ("Petrey") is engaged in the sale of groceries, candy, tobacco products, novelty items,

10  prepaid telephone and prepaid telephone plans, gift cards and numerous other items primarily to

11  convenience stores throughout the United States. Over the years, Petrey serviced over 15,000 merchants

12  and stores nationwide [22] and as such, Petrey has developed a reputation as a leader in distribution

13  through its state-of-the-art technology and 350,000 square feet of warehouse space in warehouses

14  located in Montgomery, Birmingham and Petrey, Alabama.

15      45.   Petrey, a family-owned business, is primarily owned and controlled by two (2) brothers,

16  plaintiff JACKSON and James W. Jackson, while plaintiff BAUER was a tenured and longtime

17  employee of Petrey.

18      46.   Preway Communications ("Preway"), a wholly-owned subsidiary and division of Petrey,

19  marketed telephone-related items as well as gift cards and other prepaid programs and items through its

20  network of approved neighborhood-based retail payment centers providing electronic pre-paid

21  telecommunication and other financial services-type products to paying customers, while Softgate

22  Systems, Inc. through its web-based "pay exchange" software and terminals platform enabled Preway to

23  electronically capture and transmit the data in conjunction with the marketing and sale of various

24  Preway various products and product lines.

25      47.   More specifically, Preway's business entailed the sale of phones and phone card

26  products, including PINS for cell minutes, SIM cards for cell minutes, as well as gift cards. Its

27  ─────────────────

28  [22]     For clarification purposes, while Petrey has an extensive list exceeding 15,000 nationwide
    merchants and stores, each of whom it has transacted business; its standard core of regular monthly customers
    number in the 5,000 to 6,000 range.

transferable assets consisted primarily of racks with 9-12 items per rack that were displayed in retail locations, mainly convenience stores with their payment terminals at those same points of sale. Rack items in the various "brick and mortar" locations offered (1) new and refurbished cellular handsets and SIM cards; (b) prepaid gift cards; (c) prepaid long distance cards; and (d) prepaid wireless cards, for both foreign and domestic calls.[23]

48.    At some point in time, Petrey, and most particularly James W. Jackson – one of Petrey's two (2) major shareholders, arrived at the belief and opinion that Petrey's continued operation of Preway was not compatible with Petrey's overall primary businesses and based thereon, Petrey was open to divesting itself of Preway.

49.    In late 2016 and/or early 2017, defendants JACOB, DUNCKEL, MURRAY and KHATIB initially through conversations with plaintiff BAUER and subsequently plaintiff JACKSON, became aware of Petrey and Preway and Petrey's interest in divesting itself of its Preway division.

50.    Petrey's overall business operations were highly profitable; however, since Preway was a wholly-owned subsidiary of Petrey, Preway's financial performance was not reported independently, but rather under Petrey's highly profitable umbrella of combined business operations; in short, no financial statements or separate accounting as to Preway's "stand-alone" financial performance existed.

51.    While both plaintiffs BAUER and JACKSON were interested in acquiring Preway and its assets, they were both mindful of the serious hurdle Preway's lack of "stand-alone" financial statements posed for any potential buyer and an eventual sale. Accordingly, in their sale and marketing efforts, plaintiffs JACKSON and BAUER openly and definitively represented to defendants JACOB, DUNCKEL KHATIB and MURRAY that, while Preway generated multi-millions of dollars in monthly gross revenue, they had no actual knowledge as to Preway's "stand-alone" profitability and

---

[23]    When any of these items are brought to the counter, the customer's method of payment is swiped into a payment terminal machine. The Company records the revenue from the purchase and the cost of goods sold at the point of sale, and the net is booked as gross profit by the Company. When a customer purchases a gift card, for example, a value is assigned to a digital PIN number which puts a certain value on their gift card, to be redeemed by the purchaser at their convenience. There are various fees that get added to the cost of the gift card, including commissions and a transaction fee. The transaction fee is split between the store and the Company. The volume of transactions for each customer in a given month varies, with some points of sale more active in certain months than others.

1  consequently, they could not, and would not, make any representations or warranties whatsoever as to

2  either Preway's profitability or non-profitability.

3      52.    Despite the unavailability of any financial records, defendants JACOB, DUNCKEL,

4  KHATIB and MURRAY were undeterred and remained highly motivated and continued to aggressively

5  pursue the transaction, ostensibly believing, in part, that by acquiring Preway with its impressive high

6  monthly gross sales revenue and its nationwide presence in convenience stores providing access to

7  thousands of merchants, GBT(Gopher) would be able to "marry" its two (2) business arms and "roll

8  out" its proprietary technology, namely its Internet of Things (" IoT") and Artificial Intelligence and its

9  products to a newly-created universe of customers.

10      53.    While discussion had commenced in late 2016, they were protracted over a lengthy

11  period of time due, in part, to GBT's inability to locate and lock down sufficient financing for its

12  purchase of Preway from RWJ Advanced Marketing, LLC ("RWJ"), a Georgia limited liability

13  company, plaintiffs JACKSON and BAUER had formed in early March 2017 in anticipation of the

14  proposed transaction.

15      54.    In June and early July 2017, defendants JACOB, DUNCKEL KHATIB and MURRAY,

16  on behalf of GBT, requested documentation verifying the gross revenues generated by Preway. In

17  response to their requests, plaintiff BAUER obtained Petrey's Preway Bank of America bank statements

18  for the period of 1 June 2016 through 31 May 2017 and provided them to defendant DUNCKEL.

19      55.    Preway's Bank of America bank statements, as set forth in accompanying Chart, reflected

20  gross deposits of $503,321,948.00 and monthly deposits averaging $4,193,495.00 over the twelve (12)

21  month period:

22      **Chart 2   Preway Communications' Bank of America Monthly Deposits**
23                 **[Period of 1 June 2016 Through 31 May 2017]**

| Period Ending | Deposited Amount | No. of Deposits |
|---|---|---|
| 06.01.2016 – 06.30.2016 | $ 5,690,864.00 | 303 |
| 07.01.2016 – 07.29.2016 | 4,744,260.00 | 287 |
| 07.30.2016 – 08.31.2016 | 5,468,977.00 | 286 |

| | | |
|---|---|---|
| 09.01.2016 – 09.30.2016 | 4,912,083.00 | 266 |
| 10.01.2016 – 10.31.2016 | 4,991,324.00 | 292 |
| 11.01.2016 – 11.30.2016 | 5,926,914.00 | 281 |
| 12.01.2016 – 12.30.2016 | 4,763,004.00 | 269 |
| 12.31.2016 – 01.31.2017 | 5,260,476.00 | 272 |
| 02.01.2017 – 02.28.2017 | 4,385,176.00 | 242 |
| 03.01.2017 – 03.31.2017 | 4,773,562.00 | 286 |
| 04.01.2017 – 04.28.2017 | 4,312,479.00 | 241 |
| 04.29.2017 – 05.31.2017 | 5,108,265.00 | 318 |

56.     By early June 2017, the general terms of a deal had taken shape and been generally agreed to by the parties and plaintiffs JACKSON and BAUER's counsel had commenced drafting a written agreement, setting forth the terms of the transaction. In light of GBT(Gopher's) motivation to proceed with the transaction despite the unavailability of any Preway financial statements documenting Preway's "stand-alone" financial performance, the parties, to addressing the issue, agreed to provide GBT(Gopher), as buyer, a contractual "escape hatch", namely, in their written agreement, GBT(Gopher) would be provided with a twelve (12) month option period commencing from the close of the transaction during which it could cancel the transaction and unwind the "carryback" $2,600,000 RWJ promissory note in the event that GBT(Gopher) experienced "an operating net loss . . . . for three (3) consecutive months" from GBT(Gopher's) newly-acquired business related to the Preway Assets at any time during this twelve (12) month option period and the Preway Assets failed to generate a net operating profit ("Unwind Note Option").[24]

57.     On 9 June 2017 and again on 28 June 2017, plaintiffs JACKSON and BAUER's counsel circulated two (2) (Draft) Asset Purchase Agreements between the parties. Most tellingly, no representations and warranties relative to Preway's "stand-alone" financial performance appeared in either of the two (2)(Draft) Asset Purchase Agreements (or, for that matter, in the final Asset Purchase

---

[24]     See, p. 8, ¶ 7, (Draft) June 2017 APA; p. 8, ¶ 7 (Draft) July 2017 APA; p. 8, ¶ 7, APA (Final) dated 1 September 2017 (Final).

1  Agreement dated 1 September 2017 and executed by the parties); however, each of the three (3) Asset

2  Purchase Agreements contained the Unwind Note Option.

3      58.    As had been agreed by the parties at a March 2017 meeting held in Atlanta, Georgia in

4  plaintiffs JACKSON and BAUER's counsel's offices, plaintiffs JACKSON and BAUER had entered

5  into negotiations with Petrey for the sale and assignment of Preway's assets to RWJ in anticipation of

6  the proposed RWJ-Gopher transaction. Ultimately, the Petrey-RWJ negotiations, conducted by RWJ's

7  principals JACKSON and BAUER, culminated in Petrey's Board of Directors approval of the sale of

8  Preway's assets to RWJ on 7 August 2017 and subsequently, Petrey and RWJ entered into an Asset

9  Purchase Agreement dated 22 August 2017 ("Petrey-RWJ APA"), closing concurrently, effectively

10  selling and transferring the Preway assets and its related and associated contractual rights to RWJ.

11      59.    Since the RWJ sale to GBT(Gopher) was expressly contingent upon RWJ's prior or

12  simultaneous acquisition of Petrey's Preway/UGO Assets,[25] shortly thereafter, on 1 September 2017,

13  GOPHER entered into an Asset Purchase Agreement ("RWJ-Gopher APA") with RWJ, which closed

14  concurrently, pursuant to which GBT(Gopher) purchased RWJ's recently acquired Preway assets

15  ("Preway/UGO Assets")[26] directly from RWJ, on a "pass-through basis", including all inventory,

16  terminals, licenses and permits and intangible assets in consideration of $400,000, an unsecured

17  promissory note in the amount of $2,600,000 ("RWJ Note") accruing interest at the rate of 3.5% per

18  annum due and payable in full on 31 December 2019, an aggregate of 5,000,000 shares of

19  GBT(Gopher's) common stock, warrants to purchase 9,000,000 shares of GBT(Gopher's) common

20  stock and the assumption of certain liabilities incurred by RWJ after the effective date as set forth in the

21  Agreement.

22      60.    Concurrently, as part of the transaction, to address the dearth of financial reporting, the

23  parties entered into an Addendum to the RWJ-Gopher APA, in which GBT(Gopher) openly

24  acknowledged their collective lack of knowledge and their keen awareness and acceptance that RWJ

25  "ha(d) not owned the ("Preway/UGO) Assets for a long period of time and (was) not in possession of

26  (any) financial statements" reflecting the Preway/UGO Assets' "stand-alone" financial performance. To

27

---

[25]    p. 8, ¶ 8, RWJ-GOPHER APA dated 1 September 2017.

28  [26]    As part and parcel of the transaction, on 18 August 2017 GBT had incorporated a wholly-owned subsidiary, UGopherServices Corp. to house and operate the newly-acquired Preway/UGO Assets,

DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; [4] NEGLIGENCE; AND [5] INJUNCTIVE RELIEF

GREGORY BAUER + ROBERT WARREN JACKSON v. MOSHE JACOB fka MOSHE SCHNAPP, ET AL.    PAGE   27

1   resolve the issue, RWJ contractually agreed to provide GBT(Gopher) Preway's "financial statements" .

2   . . (on a carve-out basis or otherwise)" prepared by Petrey's public accountancy firm Warren Averett,

3   together with "an unqualified opinion of (Petrey's) independent auditor", namely "not later than sixty

4   (60) days following (the) closing."

5        61.    Also on 1 September 2017, GOPHER executed an Executive Employment Agreement

6   hiring plaintiff BAUER for an initial term of three (3) years, providing an annual salary of $250,000,

7   together with a quarterly bonus in the amount of 10% of the net profit of GBT(Gopher's) business

8   generated by the assets purchased from plaintiff RWJ ("Executive Employment Agreement").

9   **Individual Insider Defendants Orchestrated, Managed And Systematically Coordinated**
    **A Fraudulent Market Manipulation Scheme Designed To Artificially Inflate**
10  **And Boost The Price Of GBT's Stock Through False, Misleading, Positive And Highly**
    **Exaggerated Public Reports, Statements, Press Releases And Promotions, Resulting In**
11  **Higher Than Average Trading Volume And Upward Fluctuations In GBT's Stock Price**

12       62.    Commencing from 1 September 2017 and continuing through approximately mid-2019,

13  the Individual Insider Defendants, on behalf of GBT(Gopher), issued a series of Form 8-K's, 10-Q's and

14  10-K's, multiple press releases and announcements, including  promotional newsletters styled as "paid

15  announcements" relative to its business operations touting its newly-invigorated opportunities in the

16  newly-acquired Preway/UGO Assets, its expansion into prepaid services products and prepaid services

17  markets as well as promising developments in its Artificial Intelligence ("AI") and Drones technology,

18  including, but not limited to:

19       [i]    On or about 6 September 2017, GBT(Gopher) filed its Form 8-K with the SEC
20              announcing its acquisition of the Preway/UGO Assets, together with press releases
                language touting its acquisition, emphasizing the dramatic increase in
21              GBT(Gopher's) gross revenue;

22       [ii]   The recent Gopher acquisition was expected to generate revenues as a retail
23              partner of the major telecoms through the distribution of financial products as well
                as cellular "top-off" cards - **a "gamechanger for Gopher with the goal of**
24              **placing Gopher on the path to a cash flow positive company"** and providing
                "the company with more flexibility in developing and deploying its technology
25              portfolio into the marketplace and to take advantage of the disruptive products
26              developed by (Gopher's) CTO Danny Rittman"; *(emp.add.)*

27       [iii]  The acquisition of the Preway/UGO Assets provided the Company with the
28              opportunity to establish an infrastructure for its IoT communication technology as
                well as a distribution avenue to market products that GBT(Gopher) was

developing and marketing to an expanded customer base with enabled networking and tracking technologies, including its GopherInsight™ wireless mesh network technology platform and its Avant! AI, for both mobile and fixed solutions;

[iv]   On 21 November 2017, under the banner headline <u>Gopher Protocol Reports over $4 Million in Revenue in 3rd Quarter Financials,</u> GBT(Gopher) publicly announced and reported "earnings for the three months ended 30 September 2017 of **$4,471,626 compared to $45,000 for the three months ended 30 September 2016.** In addition, the Company's total liabilities and stockholder's equity rose from $18,543 for the period ended 31 December 2016 (audited) to $9,380,486 for the period ended 30 September 2016"; *(emp. add.)*

[v]   On 4 December 2017, GBT filed its amended Form 8-K/A with the SEC relative to its acquisition of the Preway/UGO Assets, which included a copy of Petrey's CPA firm of Warren Averett's Independent Auditor's Report dated 31 October 2017 ("Auditor's Report"),[27] which included:

(a)   "the balance sheets as of 26 August 2017, 28 January 2017 and 30 January 2016 and the related statements operations and cash flows for the period ended 26 August 2017 and for the years ended 28 January 2017 and 30 January 2016 and related notes to the financial statements"; and

(b)   The Auditor's Report reflected gross sales of **$32,329,172, $66,610,847 and $80,826,825** for the periods ending on 26 August 2017, 28 January 2017 and 30 January 2016;

[vi]   On 5 December 2017, GBT, in a press release, announcing that the Preway audited financials showed "**$66,000,000 in sales for the year ending in January 2017**" directly attributable to the acquisition of the Preway/UGO Assets; *(emp. add.)*

[vii]   Also, on 5 December 2017, GBT announced that its filed pro-forma financials illustrated sales for six months ended 30 June 2017 and for the year ended 31 December 2016 of **$28,108,616 and $66,775,847** with gross profit of $1,408,597 and $3,278,144; net loss of ($1,768,952) and ($2,028,,608)which includes acquisition costs . . .The audited financial statements of the Preway division stands alone for the period ended on 18 August 2017 (period prior to closing) report revenue of **$32,329,952** with gross profit of **$1,521,458** and net loss for the period of $170,636; *(emp. add.)*

[viii]   On 11 April 2018, GBT(Gopher) filed its 2017 Annual Report (Form 10-K), reporting $9,192,354 in Gross Sales Revenue for its fourth quarter results (p. 50);

[ix]   On 14 May 2018, GBT(Gopher) filed its 10-Q Report, reporting Gross Sales Revenue of $7,859,606 in its 1st Quarter (2018);

[x]   On 13 August 2018, GBT(Gopher) filed 10-Q Report, reporting Gross Sales Revenue of $13,466,410 in its 2nd Quarter (2018);

---

[27]   As expressly required under the APA's Addendum to the APA.

[xi]    On 14 November 2018, GBT(Gopher) filed its 10-Q Report, reporting Gross Sales Revenue of $15,536,196 in its 3rd Quarter (2018);

[xii]    On 27 March 2019, GBT(Gopher) filed its 2018 Annual Report (Form 10-K), reporting $51,569,605 in Gross Sales Revenue (p. F-4);

[xiii]    On 15 April 2019, GBT(Gopher) filed its 10-Q Report, reporting Gross Sales Revenue of $13,393,313 in its 1st Quarter (2019);

[xiv]    On 19 August 2019, GBT(Gopher) files 10-Q Report, reporting Gross Sales Revenue of $12,431,774 in its 2nd Quarter (2019); and

[xv]    On 19 November 2019, GBT(Gopher) filed its 10-Q Report, reporting Gross Sales Revenue of $4,467,800 in its 3rd Quarter of 2019)

63.    Utilizing GBT's stock in conjunction with its acquisition of the Preway/UGO Assets , the Individual Insider Defendants, through an exhaustive litany of false, positive and misleading promotions and highly exaggerated statements orchestrated and manipulated the OTCQB marketplace, artificially boosting the price of GBT's stock higher and higher. In spam-like fashion, the Individual Insider Defendants routinely touted breakthrough technology, an extensive array of business transactions, including acquisitions and joint ventures with various and multiple companies utilizing the sale and transfer of large volumes of GBT's issued, but unregistered securities, regularly and routinely reported in GBT's press releases and its 8-K, 10-Q and 10-K Forms ("Reports") filed with the SEC. In GBT's 2017 fiscal year, it filed twenty (20) such Reports, the bulk of which, namely seventeen (17), were filed in the last six (6) months of the calendar year, primarily in the third and fourth quarter when sales increased to $9,192,354 – an increase of 5,471.1% of the prior year's $165,000 revenue. In 2018 fiscal year with gross revenues exploding to a record $51,569,605, it filed fifty-one (51) such Reports, while in its 2019 fiscal year, it filed forty-five (45) such Reports, reporting $30,292,887 in gross sales. In summary,  from June 2017 through November 2019 – a span of thirty (30 months - GBT(Gopher) filed one hundred thirteen (113) 8-K, 10-Q and 10-K Reports with the SEC, in effect, averaging almost four (4) Reports per month, exclusive of  press releases and public announcements.

64.    Conspicuously absent from any of GBT's Form 8-K, 10-Q, 10-K Reports, press releases, announcements and promotional materials was any discussion or even mention of the actual non-profitability of the newly-acquired Preway/UGO Assets on a "stand-alone" basis, GBT's ability to

1  cancel the $2,600,000 RWJ Note and the underlying reasoning for its need, GBT's ability to cancel the

2  $2,600,000 RWJ Note and the underlying reasoning for its need and most importantly, while GBT's 1

3  September 2017 acquisition of the "Preway/UGO (Assets) generated what would appear to be

4  considerable gross income, when all expenses were considered", GBT's Preway/UGO operations were

5  neither "actually profitable" nor was GBT(Gopher's) business model sustainable. [28]

6      65.    As a direct result of its aggressive promotional activities, GBT(Gopher) began to see an

7  increase in the trading activity of its common stock following its September 2017 acquisition of

8  Preway/UGO's significant asset base, which was further complemented in mid-March/early April 2018

9  by GBT(Gopher's) acquisition of two (2) companies with a complementary asset base, namely

10  Electronic Checks Services and Central State Legal Services.

11      66.    Interestingly, on 11 December 2017, amidst this flurry of promotional activity touting

12  the GBT(Gopher's) common stock, nominal defendant GBT(Gopher) was notified and made aware by

13  the OTC Markets Group that it had detected "recent promotional activities surrounding the Company's

14  common stock" involving unauthorized and illegal "promotional newsletters, styled as 'paid

15  announcements'" by third parties [29] that were compensated "$15,000 by a(n) (anonymous) third party."

16  OTC Markets Group's notification was based upon "the results of continued analysis into certain

17  trading patterns of GBT(Gopher's) stock in light of its recent (uptick) in record trading volume and

18  price levels." As a result, the OTC Markets Group ordered GBT(Gopher) to issue a press release

19  regarding this "most recent Stock Trading Activity" .

20      67.    On 13 December 2017, GBT(Gopher), at the behest of the OTC Markets Group, issued a

21  press release, claiming that the Company and "none of its officers, directors, employees, consultants,

22  and, to the Company's knowledge, its controlling or affiliated stockholders . . . ha(d), directly or

23  indirectly, authorized or been involved in any way" in these promotional activities and pointing out that

24  as part of GBT(Gopher's) insider trading policy:

25          "if an officer, director, manager, employee or consultant has material nonpublic
        information relating to the Company, it is the Company's policy that neither that
26          person nor any related person may buy or sell securities of the Company or engage

27  _____

28      [28]    See, p. 29, ¶ 60 A, ll. 17-18; p. 35, ¶ 83 C., ll. 11-12, GOPHER's SACC filed 12 November 2019
in related matter (Case No. 19 STCV 03320.

in any other action to take advantage of, or pass on to others, this information. This policy also applies to information relating to any other company, including our customers or suppliers, obtained in the course of that person's relationship with the Company. In order to provide assistance in preventing inadvertent violations and to avoid even the appearance of improper transaction, the company has implemented the following procedure and restrictions:

[i]   All transaction and company securities (acquisitions, dispositions, transfers, etc.) by officers, directors, managers, and accounting and administrative personnel (the "Pre-clearance Individuals") must be pre-cleared by the Company's Chief Financial Officer; and

[ii]   Such persons are required to refrain from making any trades in company securities in the period commencing 15 days prior to the end of each quarter and ending on the third business day after results for the quarter are publicly released ("Blackout Period"). The Company may notify such persons of other, when necessary."

68.   From the fourth quarter of 2017 onward through 30 September 2019, as depicted below, GBT's Preway/UGO Assets coupled with ECS's complementary assets acquired in March 2018 assets generated phenomenal gross income figures, dwarfing GBT's previously anemic gross income figures:

**Chart 3    GBT's Reported Gross Income**
**[Period of 2013 Through 30 September 2019]**

| Fiscal Year | Gross Income | Gross Profit/Net Loss | Net Change Before Loss | |
|---|---|---|---|---|
| | | | $ | % |
| Ending 12.31.2013 [30] | $   100,000 | (291,777) | | |
| Ending 12.31.2014 [31] | 120,000 | (295,569) | | |
| Ending 12.31.2015 | 90,000 | (96,116) | | |
| Ending 12.31.2016 [32] | 165,000 | (1,586,226) | | |
| Ending 12.31.2017 [33] | 9,192,354 | (540,550) | 9,027,354 | 5471.1 |

[30]   See, FN 6 above.
[31]   See, p. F-4 (or, 35/50), GBT's 2014 Annual Report.
[32]   See, p. F-4 (or, 41/61), Form 10-K dat. 31 March 2017 (Gopher Annual Report – Fiscal Year ending 31 Dec. 2016) filed with the SEC ("GBT's 2016 Annual Report", or "2016 Annual Report").
[33]   See, p. 23 (or, 24/89), Form 10-K dat. 11 April 2018 Gopher Annual Report – Fiscal Year ending 31 Dec. 2017) filed with the SEC ("GBT's 2017 Annual Report", or "2017 Annual Report").

| | | | | | |
|---|---|---|---|---|---|
| Ending 12.31.2018 [34] | 51,569,605 [35] | (1,892,841) | 1,352,291 | 250.2 |
| Ending 09.30.2019 [36] | 30,292,887 | (246,957) | | |

69. Anticipatorily, as part of their overall market manipulation plan and scheme, the Individual Insider Defendants, under defendant JACOB's tutelage and direction, ramped up and accelerated GBT(Gopher's) issuance of unregistered stock as reflected in the Chart below – the bulk of which was issued in reliance upon allegedly available exemptions under Section 4(a)(2) of the Securities Act and/or Rule 506 of Regulation D, solely targeting "accredited investors, as defined under Section 501(a), Regulation D:

**Chart 4    GBT's Historical And Exponential Issuance Of Outstanding Stock**
**[Period of 31 December 2015 Through 20 June 2019]**

| Date | Common Shares | Preferred Shares | | | | |
|---|---|---|---|---|---|---|
| | | Series A | Series B | Series C | Series D | Series G |
| 12.31.2015 [37] | 5,894,342 | -0- | 45,000 | 700 | 94,750 | |
| 12.31.2016 [38] | 41,420,372 | -0- | 45,000 | 700 | 66,000 [39] | |
| 12.31.2017 [40] | 58,715,406 | -0- | 45,000 | 700 | 66,000 | 2,000,000 |
| 04.11.2018 [41] | 125,132,072 [42] | -0- | 45,000 | 700 | | 2,000,000 |
| 12.31.2018 [43] | 182,224,264 | -0- | 45,000 | 700 | -0- | -0- |
| 03.27.2019 [44] | 207,409,616 | -0- | 45,000 | 700 | -0- | -0- |

34    See, p. 27 (or, 29/108), Form 10-K dat. 27 March 2019 (Gopher Annual Report – Fiscal Year ending 31 Dec. 2018) filed with the SEC ("GBT's 2018 Annual Report", or "2018 Annual Report").
35    See, Quarterly Breakdown (2018) Gross Sales: (1) $7,859,606 (10-Q filed 14 May 2018); (2) $13,466,410 (10-Q filed 13 August 2018 (3) $15,536,196 (10-Q filed 14 November 2018); and (4) $5,884,912.
36    In its Form 10-Q's filed in 2019, GBT reported the following quarterly income figures – Gross Sales: (1) **$13,393,313** (p. 4) (10-Q filed 15 May 2019); (2) **$12,431,774** (p. 4)(10-Q filed 19 August 2019); and (3) **$4,467,800** (p. 4)(10-Q filed 19 November 2019), totaling $30,292,887. However, in its Form 10-K Annual Report filed with the SEC on 27 May 2020, in direct and dramatic conflict with its previously filed 10-Q's, GBT reported annual gross income in sales of **$19,277,058 - a differential of $11,015,829.** See, p. F-4, GBT's 2019 Annual Report.
37    See, p. 9, GBT's 2016 Annual Report.
38    See, p. 15, GBT's 2016 Annual Report.
39    REKO's Series D Preferred Shares were convertible to 66,000,000 Gopher common shares at REKO's discretion.
40    See, p. 14, GBT's 2017 Annual Report.
41    See, Footnote 29 above.
42    Of the listed 125,132,072 shares, 66,000,000 were owned and controlled by defendant REKO as it had exercised its option to convert its 66,000 Series D Preferred Shares to 66,000,000 common shares.
43    See, p. 17, GBT's 2018 Annual Report.
44    See, p. 41, GBT's 2018 Annual Report.

1      06.20.2019      220,866,271 [45]

2      70.      As a direct result, shortly after the announcement of GBT(Gopher's) acquisition of the

3 Preway/UGO's Assets on 1 September 2017 in conjunction with the feverish plethora of 8-K Reports,

4 press releases and announcements, as illustrated below, GBT(Gopher's) stock started moving upward:

**Chart 5**      **GBT's Stock Trading History (Partial)**
**Chronologically Tied To Selected Corporate Events**
(Period of 1 September 2017 Through 30 March 2020)

| Date | Open | Close | Selected Event |
|------|------|-------|----------------|
| 09.01.2017 | $ 0.36 | $ 0.37 | Closing of GBT(Gopher)-RWJ Preway/UGO's Assets transaction |
| 09.07.2017 | 0.435 | 0.434 | GBT(Gopher) reports acquisition of Preway/UGO's Assets on 6 September 2017 and files Form 8-K with SEC |
| 10.__.2017 | Ranging between 0.286 + 0.315 | | Guardian + Insider Consultant issued 2,025,000 Shares of GBT(Gopher) Common Stock "for services rendered valued at $766,500" related to assisting GBT with the acquisition of the Preway/UGO's Assets from RWJ |
| 11.21.2017 | 0.7109 | 0.70 | GBT(Gopher) reports $4,000,000 in Revenue in Third Quarter |
| 12.04.2017 | 0.95 | 1.00 | GBT(Gopher) files Amended Form 8-K and reports Acquisition of Preway/UGO's significant asset base on 6 September 2017 and Files with the SEC |
| 12.13.2017 | 1.25 | 1.15 | Gopher Issues Press Release Re Unauthorized + Illegal Promotional Activities and Materials touting common stock per OTC Markets Group Request |
| 12.22.2017 | 1.12 | 1.15 | Stanley Hills converts all of its principal and interest of its Stanley Note totaling $31,775.25 into 4,221,334 of GBT(Gopher) shares of common stock |
| 12.29.2017 | 1.11 | 1.12 | Guardian converts its 6% Convertible Note ($660,131.80) dated into 2,000,000 shares of |

[45]     Correspondence dated 20 June 2019 from GBT Counsel Robert M. Yaspan.

|  |  |  |  |
|---|---|---|---|
|  |  |  | Series G Preferred Stock convertible to 2,000,000 GBT(Gopher) common stock |
| 01.23.2018 | 1.60 | 1.533 | REKO converts its 66,000 shares of Series D Preferred Stock to 66,0,00,000 GBT(Gopher) shares of common stock |
| 04.11.2018 | 3.635 | 3.47 | GBT(Gopher) files 2017 Annual Report: $9,192,354 in Gross Sales Revenue |
| 05.14.2018 | 3.14 | 3.14 | GBT(Gopher) files 10-Q Report: Gross Sales Revenue: $7,859,606 (1st Quarter) |
| 08.13.2018 | 1.45 | 1.318 | GBT(Gopher) files 10-Q Report: Gross Sales Revenue: $13,466,410 (2nd Quarter) |
| 08.30.2018 | 1.04 | 1.07 | Guardian converts its 2,000,000 shares of Series G Preferred Stock into 2,000,000 Shares of GBT(Gopher) common stock |
| 09.25.2018 [46] | 0.97 | 0.94 | Guardian Issued 12,500,000 shares of GBT(Gopher) common stock in connection the termination of its 50% interest in the profits of certain of GBT's products . . . The shares were valued at $11,750,000 which was determined based on the closing stock price of the Company's common stock at the date of the Agreement." |
| 11.14.2018 | 0.32 | 0.335 | GBT(Gopher) files 10-Q Report: Gross Sales Revenue: $15,536,196 (3rd Quarter) |
| 03.27.2019 | 0.429 | 0.42 | GBT(Gopher) files 2018 Annual Report (Form 10-K): $51,569,605 in Gross Sales Revenue |
| 05.15.2019 | 0.39 | 0.365 | GBT(Gopher) files 10-Q Report Gross Sales Revenue: $13,393,313 (1st Quarter) |
| 05.22.2019 | 0.158 | 0.133 | OTC Markets Group stops quoting GOPH on OTCQB® Venture Market;  GBT(Gopher) demoted to Pink® Open Market |
| 07.29.2019 | 0.0491 | 0.049 | Gopher Merger and Name Change to GBT Technologies |
| 08.05.2019 | 1:100  Stock Split |  |  |

---

[46]     A true and correct copy of a Chart illustrating the GOPHER stock pricing and volume of GOPHER stock for the period of October 2017 through September 2018 is marked as Exhibit A, is attached hereto and by this reference is incorporated herein.

| | | | |
|---|---|---|---|
| 08.19.2019 | 0.053 | 0.0461 | GBT(Gopher) files 10-Q Report<br>Gross Sales Revenue: $12,431,774  (2nd Quarter) |
| 11.19.2019 | 1.92 | | GBT(Gopher) files 10-Q Report<br>Gross Sales Revenue: $4,467,800 (3rd Quarter) |
| 03.30.2020 | 0.04 | | |
| 07.31.2020 | 0.02 | | Current Quote |

**GBT's Historical Issuance Of Unregistered Stock To Its Directors, Executive Officers, Beneficial Owners, Affiliates And Related Insider Stockholders For Illusory And/Or Manufactured Consideration Providing Financially Insignificant Benefits To GBT**

> **[A]   Defendant GUARDIAN's Acquisition of Sizeable Caches Of Both GBT's Common and Preferred Shares In Return for Loans, Future Funding Commitments and Consulting Services**

71.    On 1 March 2016, defendant GUARDIAN was formed "to provide initial funding. . . for product development of the Patch technology" in return for GBT's assignment to GUARDIAN of all right, title and interest to the Patch technology. GBT and GUARDIAN "formed a Joint Venture ('JV') for the purposes of developing and marketing the (Guardian)Patch." In addition, GUARDIAN committed itself to providing GBT "with working capital as needed" to implement the JV. [47]

72.    Subsequently, on 23 May 2017, GBT executed a 6% Convertible Note bearing interest as of 31 December 2016 and due on 31 May 2019, documenting GBT's indebtedness to GUARDIAN in the amount of $660,131.80 and providing GUARDIAN the opportunity to convert GBT's indebtedness into shares of GBT common stock. [48]

73.    On 1 August 2017, GBT(Gopher) and defendant GUARDIAN entered into a Consulting Agreement dated 31 August 2017 (effective retroactively to 1 August 2017) for defendant JACOB's assistance, apparently through GUARDIAN, in structuring and negotiating the RWJ-GOPHER APA transaction. Under the terms of the Consulting Agreement, in consideration for defendants JACOB's services, GBT(Gopher) agreed to issue GUARDIAN "2,000,000 shares of common stock and warrants to purchase 9,000,000 shares of common stock". In addition, GBT(Gopher) was contractually

---

[47]    See, p. 62 (or, 84/114), GBT's 2017 Annual Report.
[48]    See, FN. 40 above.

1  obligated to pay GUARDIAN "an additional 3,000,000 million shares of GOPH(ER) common stock",

2  "(i)f and when the assets of (RWJ/Petrey generate(d) revenues of $10,000,000".

3      74.    Pursuant to its existing JV Agreement, defendant GUARDIAN agreed to provide the

4  $400,000 in funding needed for the cash down payment due to RWJ under the terms of the RWJ-

5  GOPHER APA. As required, GUARDIAN also agreed to provide the needed $100,000 working capital

6  designated to UGopherServices Corp.

7      75.    In September-October 2017, GBT(Gopher) "issued an aggregate of 2,025,000 shares of

8  (GBT ) shares" to  GUARDIAN and an unnamed consultant "for services rendered valued at

9  $766,500. . . principally related to assisting GBT with the acquisition of the RWJ assets. . .The value of

10  the common stock was determined based on the closing stock price of (GBT's) common stock on the

11  date of the grant." *(emp. add)* [49]

12      76.    On 29 December 2017, GBT(Gopher) agreed to amend the Lock-Up and Leak-Out

13  Agreement with defendant GUARDIAN and executed an amendment to the Lock-Up and Leak-Out

14  Agreements, in effect, releasing any and all transfer restrictions and permitting each defendant to

15  exercise their conversion rights under their respective Notes.[50]

16      77.    Concurrently, that same day, GUARDIAN converted all of the principal and interest of

17  its 6% Convertible Note into 2,000,000 shares of Series G Preferred Stock, of which each share was

18  convertible into one (1) share of GBT's common stock with standard anti-dilution rights.[51]

19      78.    Also, on or about 23 January 2018, GBT(Gopher) "issued 3,000,000 shares" to

20  GUARDIAN "for services related to assisting (GBT) with the acquisition of the RWJ asset" as these

21  "shares were earned when the operations of the RWJ assets produced revenue in excess of

22  $10,000,000" – a milestone that was reached on 23 January 2018 at which point GBT(Gopher's) stock

23  was trading at $1.53 per share. "The value of the common stock of $4,590,000 was determined based

24

25

26

---

[49]    p. 68, (or, 93/114), GBT's 2017 Annual Report.
[50]    On 29 June 2017, GBT entered into Lock-Up and Leak-Out Agreements ("LULO") with both
defendants GUARDIAN, limiting and restricting their ability to exercise their conversion rights for a period of nine
(9) months and expiring on 28 March 2018.
[51]    p. 22, (or, 24/108), GBT's 2017 Annual Report.

**DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY;
[3] FRAUD – CONCEALMENT AND SUPPRESSION; [4] NEGLIGENCE; AND [5] INJUNCTIVE RELIEF**

on the closing stock price of (GBT's) common stock on the date the shares were earned." [52, 53] *(emp. add) See, p. 31, Chart 5, above.*

79.   On 30 August 2018, GUARDIAN converted its 2,000,000 shares of Series G Preferred Stock into 2,000,000 shares of GOPHER common stock, at which point in time, GBT's common shares were trading at $1.03-1.04 per share.[54] *See, p. 31, Chart 5, above.*

80.   Shortly thereafter on 25 September 2018, GBT issued defendant GUARDIAN 12,500,000 shares of its common stock in connection the termination of its 50% interest in the profits of certain of GBT's products . . . The shares were valued at $11,750,000 which was determined based on the closing stock price of the Company's common stock at the date of the Agreement." *(emp. add)* [55] AT which time, GBT's common shares were trading at $0.94 to $0.97 per share *See, p. 32, Chart 5, above*

81.   In summary, from September 2017 through 25 September 2018, GBT(Gopher) issued GUARDIAN approximately 19,500,000 shares of Gopher common stock and warrants for an additional 9,000,000 shares.

**[B]   Defendant REKO's Conversion**
**Of Its 66,000 Preferred Shares To 66,000.000 of Gopher's Common Shares**

82.   As of 11 April 2018, defendant REKO was the beneficial owner of 70,969,000 shares of GBT(Gopher) common stock, which included 66,000,000 shares of common stock issuable upon conversion of 66,000 Series D Preferred Shares.[56]

83.   On 23 January 2018, defendant REKO "converted its Series Preferred Stock into 66,000,000 restricted common shares." [57]

**[C]   Defendants Stanley Hills, LLC./Yossi and Anat Attia's Receipt of Roughly**
**6,551,509 and 1,250,000 Shares Of GBT(Gopher's) Common Stock From**
**2017 Through 2018**

84.   On 22 January 2017, GBT executed a 10% Convertible Debenture ("Stanley Note"),

---

[52]   See, E-Correspondence dated 1 May 2018 from Gopher's CFO Kevin Picard to defendant Jacob.
[53]   See, p. F-24, (or, 93/108), GBT's 2018 Annual Report.
[54]   See, p. 22, (or, 24/108), GBT's 2017 Annual Report.
[55]   See, p. F-24, (or, 93/108), GBT's 2018 Annual Report.
[56]   See, p. 36, (or, 48/114), GBT's 2017 Annual Report.
[57]   See, p. F-27, (or, 96/108), GBT's 2018 Annual Report.

1   documenting GBT's indebtedness to defendant S. HILLS in the amount of $75,272.43 and providing S.

2   HILLS the opportunity to convert GBT's indebtedness into shares of GBT common stock.[58] From 26

3   April 2017 through 15 November 2017, defendant S. HILLS was issued 4,567,509 shares of

4   GOPHER's common stock.

5        85.    According to the defendant S. HILL's Notice of Conversion dated 22 December 2017,

6   defendant S. HILLS converted the remaining indebtedness of $31,775.25, consisting of its principal

7   and interest due under its Stanley Note, as follows: (i) $16,795.92 in exchange of 2,231,334 shares of

8   GBT(Gopher) common stock (roughly $0. 0075273/share); and (ii) $ 14,979.33 in exchange of

9   1,990,000 shares of GBT(Gopher) common stock (roughly $0.0075273/share). On 29 December 2017 -

10   seven (7) days later - GBT(Gopher) agreed to amend the Lock-Up and Leak-Out Agreement with

11   defendant S. HILLS and executed an amendment to the Lock-Up and Leak-Out Agreement, in effect,

12   releasing any and all transfer restrictions as to defendant S. HILLS' GBT(Gopher) common shares of

13   stock.[59] In short, all of S. HILLS' 4,221,334 shares were cleared for "free trading" through Rule § 144,

14   which is confirmed in GBT(Gopher's) Form 8-K dated 29 December 2017. [60, 61] Plaintiffs JACKSON

15   and BAUER are informed and believe and thereon allege that defendant S. HILLS was issued an

16   additional 1,250,000 shares GBT(Gopher) common shares of stock in 2018, increasing S. HILLS' total

17   number of shares received to 7,807,509.

18        **[D]   Defendants JIL and CLAMOR's Receipt**
         **and Ownership Of Approximately 6,270,000 GOPHER's Common Shares**

19

20        86.    As of 22 March 2017, defendant JIL, an entity wholly controlled by defendant

21   CLAMOR, GOPHER, owned 1,780,000 shares of GBT(Gopher's) common stock and 28 September ,

22   2017, defendant JIL was issued an additional 500,000 shares of GBT(Gopher's) common stock. On or

23   about 12 December 2017, defendant JIL purchased an additional 1,990,000 "free trading" shares of

24

---

25   [58]    See, p. 3, GBT's Form 8-K dated 29 December 2017.
    [59]    See, Notice of Conversion dated 13 December 2017 executed by defendant Yossi Attia on
    behalf of defendants. HILLS.
26   [60]    See, p. 3, GBT's Form 8-K dated 29 December 2017 and Exhibit 10-2. On 29 June 2017, GBT
    entered into Lock-Up and Leak-Out Agreements ("LULO") with defendant S. HILLS, limiting and restricting their
27   ability to exercise their conversion rights for a period of nine (9) months and expiring on 28 March 2018.

28   [61]    From 26 April 2017 through 15 November 2017, defendant S. HILLS was issued 4,567,509
    shares of GOPHER's common stock. See, GOPHER Transaction Journal dated 13 December 2017.

1 | Gopher's common stock from defendant S. HILLS pursuant to a Stock Purchase Agreement.

2 | Subsequently, on or about 1 March 2018, pursuant to a Consulting Agreement with defendant JIL, in

3 | connection with its Company's acquisition of the assets of ECS Prepaid, defendant JIL received an

4 | additional "1,000,000 shares of GOPHER common stock and 1.5 million warrants with a fixed share

5 | number and strike price of $1.85". (It is believed that defendant JIL received a total 2,000,000 shares

6 | for its consulting services in this transaction.) Coupled with her prior holdings, as of 1 March 2018,

7 | defendant JIL had been issued and/or purchased a total of roughly 6,270,00 shares of GBT(Gopher's)

8 | common stock.

9 | 
10 | **[E]    President/CEO Michael Murray 6,503,726 Shares Of GBT(Gopher's) Common Stock**

11 | 87.    As of 11 April 2018, defendant MURRAY beneficially owned 13,900,000 shares of

12 | GBT(Gopher's) common stock with a warrant to acquire 4,000,000 additional shares.[62]

13 | **[F]    Defendant BODY SHOP's Receipt of 2,000,000 Common Shares**

14 | 88.    As of 4 August 2017, defendant BODY SHOP owned 2,000,000 shares of

15 | GBT(Gopher's) common stock; it is unclear how defendant BODY SHOP acquired these shares and

16 | Gopher's 2017 Annual Report dated 11 April 2018 provides no provides no discussion or explanation.

17 | As of 20 March 2018, defendant BODY SHOP ownership of GBT(Gopher's) shares of common stock.

18 | had dwindled down to 600,000 shares.

19 | **[G]    Defendants Glen Eagle/Darren Dunckel's Consulting Fee:  
2,000,000 Shares Of GBT(Gopher's) Common Stock**

20 | 89.    On 19 November 2018,  GBT(Gopher) "issued 2,000,000 shares  of common stock to

21 | defendant GLEN EAGLE in consideration of its consulting services associated with the negotiation  of

22 | the number of shares to be delivered to Mobiquity upon exercise of the Mobiquity Warrants." [63]

23 | 
24 | **OTC Markets Group Again Stops Quoting GOPH On Its OTCQB® Venture Market And Again Demotes Its Pink® Open Market Due To Apparent Third-Party Promotional Activities Coincided With Higher Than Average Trading Volume And Fluctuations In The Company's Stock Price**

25 | 
26 | 90.    On 20 May 2019 and as had occurred previously on or about 13 December 2017,

27 | GOPHER was again notified and was made aware by OTC Markets Group of "recent promotional

---

[62]    See, p. 36, GBT's 2017 Annual Report.
[63]    See, p. F-17, (96/108), GBT's 2018 Annual Report.

activities surrounding the Company's common stock" and as a result of these promotional activities, OTC Markets Group decided, effective 22 May 2019, to once again stop quoting GOPH on its OTCQB® Venture Market and instead were relegated to the Pink® Open Market for its quotations.

91.     On 24 May 2019, GBT(Gopher), again  claiming that it was unaware of any such promotional activity until so informed by OTC Markets Group, issued a press release pertaining to promotional activity and the change in quotation platforms for its common stock and stating, in part, that:

> The activities may involve promotional newsletters, styled as "paid announcements" of Stellar Media Group, LLC, which was compensated $15,000 by a third party – WWMG, LLC. The paid announcements were released under the names, PennyPicks, DamnGood Penny Picks, and BeatPennyStocks. Each of the paid announcements encouraged investors to put the Company's common stock on their watch list. **These apparent third-party promotional activities coincided with higher than average trading volume and fluctuations in the Company's stock price. . . .** None of the Company, its officers, directors, employees, consultants, and, to the Company's knowledge, its controlling or affiliated stockholders (*i.e.*, stockholders who own 10% or more of the Company's issued and outstanding common stock) has, directly or indirectly, authorized or been involved in any way (including any payments to one or more third-parties) with the authorization, creation, or distribution of any promotional materials, including those noted above; and that none of the Company, its officers, directors, employees, consultants, and, to the Company's knowledge, the only potentially controlling or affiliated stockholder who sold or purchased shares of common stock of the Company within the last 30 days is an institutional investor that, effective 3 December 2018, purchased a Senior Secured Redeemable Convertible Debenture from the Company. The Company believes that investor meets the criteria to be considered to be an "affiliate" of the Company.

92.     Subsequently, on 30 August 2019, once again after the detection of illegal, unauthorized and paid promotional activities "surrounding the Company's common stock", nominal defendant GBT(Gopher) was once again unceremoniously dropped from trading on the OTCQB® Venture Market and again moved to the lowly OTC Pink® Sheets by the OTC Markets Group.

93.     Undismayed  and without shame, like an "old dog", GBT(Gopher) executives and Individual Insider Defendants, after "laying low" for a few months, once again executed a series of manipulative machinations, again amending its Articles of Incorporation, again executing a "reverse stock" split, again merging with GBT Technologies, Inc., a company also formed on 22 July 2009 and wholly controlled by defendant JACOB and again changing its name and adopting the "merged out" company's name GBT Technologies, Inc. ("GBT"). As a result of these machinations, as of 1 March

2015, GBT(Gopher's) shares of common stock were again trading with roughly the same management, same executives, same beneficial owners, same related stockholders and same New York securities counsel in place.

94.     As a result of GBT's most recent "reverse split, effective 29 July 2019, nominal defendant  GBT reported, "as of *, 2019", a total of 2,166,592 shares of its common stock outstanding, evidencing roughly a 216,659,200 re-reverse stock split amount of outstanding shares. [64] GBT also listed its post "reverse stock" split Stock Ownership of Management and Principal Shareholders. Most noteworthy were not the remaining principal stockholders, but the missing erstwhile principal stockholders and major players and their respective corresponding missing shares of nominal defendant GBT's common stock, reflected partially below:

**Chart 6     GBT Insider Shareholdings  [As of 6 August 2019]**
**[Post Most Recent Reverse Stock Split ("1 per 100")]**

| Principal Shareholders | Shareholdings Fiscal Years 2016 + 2017 | | Fiscal Year  2018 | Schedule 14 C Filing |
|---|---|---|---|---|
| Guardian Patch [65] | -0- | 11,900,000 [66] | 16,500,000 | -0- |
| Reko Holdings | 69,321,000 | 70,960,000 | 69,321,000 | 393,210 [67] |
| Stanley Hills | -0- | 6,557,509 | 1,250,000 | -0- |
| J.I.L. Venture | | 4,270,000 | 2,000,000 | -0- |
| Glen Eagle | | | 2,000,000 | -0- |
| Latinex Casa de Cambio | | | 20,026,702 | 200,268 |
| Ben Clymer's Body Shop | | 2,000,000 | 600,000 | -0- |

[64]     See, p. 6, (or, 6/14), Schedule 14C (Rule 14C-101) Re Notice of Action undated (" *, 2019) filed with SEC on 30 August 2019.
[65]     As of  27 March 2019, Guardian Patch held 7,500,000 shares of Gopher's common stock and a warrant for 9,000,000 shares. See, pp. 41, 42 (or, 46-47/108), GBT's 2018 Annual Report.
[66]     As of  27 March 2019, Guardian Patch held 7,500,000 shares of Gopher's common stock and a warrant for 9,000,000 shares.
[67]     According to the 14C Statement: "REKO Holdings, LLC hold the shares of common stock through Continental CYC Limitada. Robert Yaspan, former Chairman of the Board of Directors, is the attorney in fact for REKO Holdings LLC holding voting and dispositive control over the securities held by REKO Holdings and its subsidiary." See, p. 4, (or, 5/16) Schedule 14C (Rule 14C-101) Re Notice of Action undated (" *, 2019) filed with SEC on 30 August 2019.

| | | | | |
|---|---|---|---|---|
| Michael Murray | 9,900,000 | 13,900,000 | 10,900,000 | 4,069,000 |
| Danny Rittman | 9,900,000 | 9,900,000 | 9,900,000 | 99,000 |
| Douglas Davis | | | 2,300,000 | 23,000 |
| Robert M. Yaspan | | | 500,000 | 5,000 |

95.    Plaintiffs JACKSON and BAUER are informed and believe that, in summary, based upon the Stock Ownership of Management and Principal Stockholders List, the Individual Insider Defendants i.e. GBT(Gopher's) officers, directors, executive consultants, affiliates and fiduciaries, sold in excess of 69,000,000 shares of nominal defendant GBT(Gopher's) common stock previously held by them into the OTCQB marketplace in a roughly nineteen (19) month period (1 January 2018 through July 2019) – a company is now totally worthless without net worth or valuable assets and whose shares currently trade at $0.02 to $0.03 per shares.

96.    Due to the coronavirus disease COVID-19, the filing of nominal defendant GBT's Annual Report for 2019 was delayed until 27 May 2020.

**Sale And Transfer of GBT(Gopher) Common Shares By Various Insider Affiliate Defendants** [68]

97.    Plaintiffs JACKSON and BAUER are informed and believe that, from 2017 through 2018, defendant REKO had been issued a total of approximately 70,969,000 shares of GBT(Gopher) shares of common stock. As of 6 August 2020, according to the Stock Ownership of Management and Principal Stockholders List, defendant REKO held only 393,210 in post "reverse split" shares of GBT common stock (significantly down from 693,210 post-split figure), signifying that REKO had sold or transferred approximately 31,648,000 "pre-reverse split" shares of its GOPHER common stock.

98.    Plaintiffs JACKSON and BAUER are informed and believe that, through 25 September 2018, defendant GUARDIAN had been issued approximately 19,500,000 shares of Gopher common stock and held warrants for an additional 9,000,000 shares. As of 6 August 2020, according to the Stock Ownership of Management and Principal Stockholders List, defendant GUARDIAN was not

---

[68]    A Chart summarizing the sale and transfer of GBT(Gopher) Common Shares by various Insider and Affiliate Defendants from 2016 through 2019 as set forth in paragraphs 97 through 103 is marked as Exhibit B, is attached hereto and by this reference is incorporated herein.

1  listed as a shareholder, meaning that all of GUARDIAN's shares of GBT(Gopher) have been sold or

2  transferred

3    99.    Plaintiffs JACKSON and BAUER are informed and believe that, from 2017 through

4  2018, defendant S. HILLS had been issued a total of approximately 7,807,000 shares of GBT(Gopher)

5  shares of common stock. As of 6 August 2020, according to the Stock Ownership of Management and

6  Principal Stockholders List, neither defendant S. HILLS nor either defendants ATTIA are listed as

7  shareholders, meaning that all of their shares of GBT(Gopher) have been sold or transferred

8    100.    Plaintiffs JACKSON and BAUER are informed and believe that, from 2017 through

9  2018, defendant JIL had been issued a total of approximately 6,270,000  shares of GBT(Gopher) shares

10  of common stock and held warrants for an additional 1,500,000 shares of GBT(Gopher) common stock.

11  As of 6 August 2020, according to the Stock Ownership of Management and Principal Stockholders

12  List, defendant JIL is no longer listed as shareholder, meaning that defendant JIL has sold or transferred

13  all of its shares of GOPHER common stock.

14    101.    Plaintiffs JACKSON and BAUER are informed and believe that, from 2017 through

15  2018, defendant MURRAY had been issued approximately 13,900,000 shares of GBT(Gopher's)

16  common stock and held a warrant to acquire and additional 4,000,000 shares. According to the Stock

17  Ownership of Management and Principal Stockholders List, as of 6 August 2019, defendant

18  MURRAY's only holds his unexercised warrant for 4,000,000 shares, apparently having sold 9,900,000

19  of his previously held shares of GBT(Gopher's) common stock

20    102.    Plaintiffs JACKSON and BAUER are informed and believe that, from 2017 through

21  2018, defendant GLEN EAGLE had been issued a total of at least 2,000,000 shares of GBT(Gopher)

22  common stock.  As of 6 August 2020, according to the Stock Ownership of Management and Principal

23  Stockholders List, neither defendants GLEN EAGLE nor DUNCKEL are listed as shareholders,

24  meaning that that defendants GLEN EAGLE and DUNCKEL's shares of GBT(Gopher) common stock

25  have been sold or transferred

26    103.    Plaintiffs JACKSON and BAUER are informed and believe that, from 2017 through

27  2018, defendants BODY SHOP and CLYMER had been issued a total of at least 2,000,000 shares of

28  GBT(Gopher) common stock. As of 6 August 2020, according to the Stock Ownership of Management

1  and Principal Stockholders List, neither defendants BODY SHOP nor CLYMER are listed as

2  shareholders, meaning that that defendants BODY SHOP and CLYMER's shares of GBT(Gopher)

3  common stock have been sold or transferred

4                              **FIRST CAUSE OF ACTION**

5                              **BREACH OF FIDUCIARY DUTY**

6        **[As and Against Defendants MO JACOB, GUARDIAN PATCH, LLC,**
7        **REKO HOLDINGS, LLC, RANDOLPH BEN CLYMER,**
         **BEN CLYMER'S THE BODY SHOP PERRIS, LLC, STANLEY**
8        **HILLS, LLC,  J.I.L. VENTURE, LLC MICHAEL MURRAY, YOSSI**
         **ATTIA, ANAT ATTIA, DARREN DUNCKEL, DANNY RITTMAN,**
9        **ROSEMARIE "PINKY" CLAMOR, MANSOUR KHATIB, GLEN**
         **EAGLE, EMPIRE STOCK TRANSFER, INC., PATRICK MOKROS]**
10

11       104.    Plaintiffs JACKSON and BAUER reallege and incorporate herein by reference each

12 and every allegation hereinabove set forth, including the Preliminary Allegations and the General

13 Allegations set forth in paragraphs 1 through 103, respectively, of this Complaint as though fully set

14 forth herein.

15       105.    It has been the law in California that directors have a fiduciary relationship and the duty

16 to act in the best interests of all shareholders, including minority shareholders. *Remillard Brick Co. v.*

17 *Remillard-Danhini (1952) 109 Cal.App.2d 405; Jones v. H. F. Ahmanson & Co. (1969) 1 Cal.3d 93.*

18 As the California Supreme Court stated:

19       The extensive reach of the duty of controlling shareholders and directors to the corporation
20       and its other shareholders was described by the Court of Appeal in *Remillard Brick* . . . .
         where, quoting from the opinion of the United States Supreme Court in *Pepper v. Litton,*
21       *308 U.S. 295* the court held: 'A director is a fiduciary. . . . Their powers are powers in
         trust'. . . . Their dealings with the corporation are subjected to rigorous scrutiny and
22       where any of their contracts or engagements with the corporation is challenged the burden
         is on the director or stockholder not only to prove the good faith of the transaction but also
23       to show its inherent fairness from the viewpoint of the corporation and those interested
24       therein. . . . He cannot utilize his inside information and his strategic position for his own
         preferment. . . . He cannot use his power for his personal advantage and to the detriment of
25       the stockholders and creditors no matter how absolute in terms that power may be and no
         matter how meticulous he is to satisfy technical requirements. For that power is at all times
26       subject to the equitable limitation that it may not be exercised for the aggrandizement,
27       preference, or advantage of the fiduciary to the exclusion or detriment of (his
         constituency)' . . . . In *Remillard* the Court of Appeal clearly indicated that the fiduciary
28       obligations of directors and shareholders are neither limited to specific statutory duties

1    and avoidance of fraudulent practices nor are they owed solely to the corporation to the
     exclusion of other shareholders." *Jones, supra, 1 Cal.3d @ 108-109*

2        106.    Officers of a corporation similarly owe a fiduciary duty to the corporation. See, e.g.

3    *Jones v. H. F. Ahmanson & Co. (1969) 1 Cal.3d 93*; *GAB Business Services, Inc. v. Lindsey & Newsom*

4    *Claim Services (2000) 83 Cal.App. 4ᵗʰ 409, 419*, overruled on other grounds by *Reeves v. Hamilton*

5    *(2004) 33 33 Cal.4ᵗʰ 1140, 1148* ("an officer who participates in management of the corporation,

6    exercising some discretionary authority, has a fiduciary of the corporation as a matter of law"; *Burt v.*

7    *Irvine Co. (1965) 237 Cal.App.2d 828, 850* ("all corporate officers and directors have the same

8    fiduciary duty of good faith of the corporation and shareholders"); *Daniel Orifice Fitting Co. v.*

9    *Whalen (1962) 198 Cal.App.2d 791, 794* (An officer who had participated in management was held to

10   necessarily owe a fiduciary duty to that company).

11   **Each Named Individual Insider Defendant Breached His/Her/Its**
12   **Fiduciary Duties And Good Faith To Nominal Defendant GBT And Its Shareholders**

13       107.    Each of the named Individual Insider Defendants, particularly defendants JACOB,

14   DUNCKEL KHATIB and MURRAY, because of their positions of leadership and authority as officers,

15   directors, executive consultants, affiliates and fiduciaries of GBT, were able to, and did, directly and/or

16   indirectly, exercise control over the wrongful acts complained of herein.

17       108.    Each of the named Individual Insider Defendants, particularly defendants JACOB,

18   DUNCKEL KHATIB and MURRAY, by reason of their respective positions as officers, directors,

19   executive consultants, affiliates, fiduciaries and "control persons" of GBT, together with the ability

20   conferred thereby to control the business and corporate affairs of nominal defendant GBT, owed, and

21   continue to owe, nominal defendant GBT and its stockholders the fiduciary obligations of trust, loyalty,

22   good faith, and due care, and were required to do their utmost to control and manage the affairs of GBT

23   in a fair, just, honest, and equitable manner. By virtue of such duties, each of the named Individual

24   Insider Defendants, particularly defendants JACOB, DUNCKEL KHATIB and MURRAY, were

25   required to, among other things:

26       [1]   Conducting the affairs of the Company in an efficient, business-like manner in
              compliance with all applicable laws, rules, and regulations so as to make it
27            possible to provide the highest quality performance of GBT's business,
              reasonably designed to prevent fraudulent, deceptive, or manipulative acts or
28            practices;

[2]   Ensuring that the Company complied with applicable legal obligations, requirements and regulations, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public in the nominal defendant GBT's Form 8-K's, 10-Q's, 10-K's, press releases and announcements, including;

(a)   Reporting and notifying investors and shareholders in an honest and forthright manner of any Material Event or corporate change affecting GBT and it business operations, most importantly, GBT's profitability or non-profitability of its operations and the sustainability of its ongoing operations - a matter of utmost importance to GBT's shareholders, the SEC and potential investors;

i.   "Material Event" means and is defined as any addition or loss of a large customer, falling or rising sales, a merger agreement, financial results above or below expectations, or important change in an important company's policy;

[3]   Acting in furtherance of the best interests of GBT and its stockholders so as to benefit all stockholders equally, and not in furtherance of any individual shareholder's own personal interest or benefit;

[4]   Remaining informed as to how GBT conducted its operations and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith and take steps to correct such conditions or practices and make such disclosures as necessary to comply with the law;

[5]   Diligently overseeing and maintaining GBT's internal control system to ensure strict compliance with GBT's adopted insider trading policy making sure that it was being properly and continuously enforced and implemented;

[6]   Ensuring that GBT was operated in a diligent, honest and prudent manner in compliance with applicable laws, rules and regulations, particularly in its compliance with all securities laws, in accordance with both State and Federal laws and regulations;

[7]   Ensuring and monitoring in a proactive and reasonably designed manner to prevent GBT's officers, directors, executive consultants, affiliates and/or insiders from engaging in any fraudulent, deceptive, manipulative acts, conduct or practices involving any illegal, unwarranted promotion and manipulation of GBT's stock or trading of GBT's stock for their own personal financial benefit or gain, including but not limited to;

(a)   Engaging in the creation and distribution of unauthorized and illegal "paid announcements" promoting and touting GBT(Gopher's) common stock through a third-party;

[8]   Implementing and maintaining adequate internal controls to monitor and ensure that any and all consulting agreements proposed or entered into by GBT have been reviewed and approved by independent and disinterested officers and directors in an "independent and disinterested manner" to ensure that GBT pays "fair market value" and does not overpay, in a wasteful and excessive manner, for the services contracted for; and

[9]   Protecting and safeguarding the Company's assets from loss or waste.

109.   However, each of the named Individual Insider Defendants, particularly defendants JACOB, DUNCKEL KHATIB and MURRAY, have breached their respective fiduciary duties of good faith and loyalty by acting in a disloyal manner by preferring and putting their own personal financial interests before nominal defendant GBT and its shareholders' interests and failing to live up to their fiduciary obligations by engaging in the wrongful acts and conduct alleged herein, including but not limited to:

[1]   Engaging in a continuous pattern of "assembly line-like" illusory transactions sorely lacking true value, fashioned and structured to appear as legitimate business transactions, either (1) seeking debt financing through the issuance of promissory notes convertible to Gopher shares of common stock; or (ii) acquisitions and joint ventures whereby GBT(Gopher) allegedly obtained part-ownership and/or exclusive licensing rights to allegedly valuable intellectual the equity convertible and equity growth financing through utilizing Securities Purchase Agreements or funded primarily by the sale and transfer of large volumes of GBT(Gopher's) issued, but unregistered securities and regularly and routinely reported in GBT's press releases and its 8-K, 10-Q and 10-K Forms ("Reports") filed with the SEC.

(a)   GBT(Gopher) touted itself as "an emerging growth company that is creating and patenting innovative mobile microchip (ICs) and software technologies based on the GopherInsight ™ technology platform." [69]

(b)   By way of example, GBT(Gopher) entered into a transaction with defendant Guardian Patch, LLC, an entity solely controlled by insider defendant Moshe, whereby "on 29 March 2016, the Company Gopher "contributed all of its rights relating to its proprietary microchip that is within a sticky patch package (the "Patch") to Guardian in consideration of 50% of the profits generated by Guardian LLC, and a commitment from Guardian LLC" to invest "all needed funds for the purpose of developing the Patch and related products to the Patch, as well as funding the working capital needs of the Company." [70]

---

[69]   See FN 6 above (GBT's 2018 Annual Report dated 27 March 2019).
[70]   See, FN 7 above (GBT's 2017 Annual Report dated 11 April 2018).

DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; [4] NEGLIGENCE; AND [5] INJUNCTIVE RELIEF

(c)   Albeit that its GopherInsight™ technology had never generated any income whatsoever, on 25 September 2018, GBT(Gopher) "entered into a Joint Venture Interest Purchase Agreement with Guardian, LLC pursuant to which the Company purchased Guardian LLC's 50% interest in a joint venture ('JV Interest') previously entered between the parties in March 2016 . . ." In return, Guardian was issued 12,500,000 shares of GBT(Gopher's) common stock valued at $11,750,000 "based on the closing stock price of the Company's common stock at the date of the Agreement." [71]

[2]   Fraudulently hyping and artificially "puffing up" GBT(Gopher's) financial viability, through false and misleading Form 8-K, 10-Q and 10-K filings and press releases, intentionally misleading investors by concealing and failing to honestly report that, while GBT's 1 September 2017 acquisition of the "Preway/UGO (Assets) generated what would appear to be considerable gross income, when all expenses were considered", GBT(Gopher's) Preway/UGO operations were neither "actually profitable" nor sustainable, thereby failing to ensure that the sale of GBT(Gopher's) shares of common stock were traded and sold with full disclosure and without the issuance of any false and/or misleading statements;

[3]   Orchestrating, managing and systematically coordinating a "market manipulation fraud" scheme (commonly referred to as a "pump-and-dump") designed to artificially inflate and boost the price of GBT's stock through the dissemination of false, misleading, positive and highly exaggerated public reports, statements, press releases and promotions, creating the false impression that GBT(Gopher's) stock was being actively traded by independent investors and that its stock was in high market demand;

(a)   In effect, managing a program and scheme of promotional activities i.e. a "stealth promotional network" by hiring and compensating a small army of writers, both real and imaginary, who systematically posted hundreds of bullish and highly favorable analysis pieces about GBT across numerous investment sites, surreptitiously touting GBT's stock, without disclosing that they had been compensated. In effect, members of the public, in reading and reviewing these posted bullish and highly favorable analysis, were lead to believe that these were impartial analysis rather than paid advertising;

(b)   Utilizing various manipulative trading stratagems, all with the intended purpose of giving the market the false impression that there was real demand for GBT(Gopher's) securities, thereby manipulating the price of nominal defendant GBT(Gopher's) publicly-traded common shares in the marketplace higher through their coordinated plan of short-term hype ("pump");" and

---

[71]   See, FN 8 above (GBT's 2018 Annual Report dated 27 March 2019).

(c)    Concurrently, selling their purportedly unrestricted shares at the top of the market ("dump") for then Individual Insider Defendants' own illicit personal financial gain and benefit, ultimately leaving those who bought on the ascent with huge losses as GBT(Gopher's) shares of common stock inevitably crashed, all to the direct detriment of nominal defendant GBT(Gopher), its shareholders, including plaintiffs JACKSON and BAUER.

[4]    Failing to ensure and monitor in a proactive manner and aggressive manner that none of GBT's officers, directors, executive consultants, affiliates and/or insiders engaged in any illegal activity, acts or conduct relative to the unwarranted and illegal promotion and manipulation of GBT's stock and/or , its trading on the OTCQB trading platform for their own personal financial benefit or gain, including but not limited to;
an issuer or any person who is an officer, director or controlling person of an

[5]    Failing to diligently oversee and maintain the integrity of GBT's internal control system to ensure strict compliance with GBT's adopted "insider trading" policy making sure that it was being properly and continuously enforced and implemented; and

[6]    Failing to ensure that GBT was operated in a diligent, honest and prudent manner in compliance with applicable laws, rules and regulations, particularly in its compliance with all securities laws, in accordance with both State and Federal laws and regulations; and

110.    As a result of each of the named Individual Insider Defendants' acts and conduct and breach of their respective fiduciary duties, Individual Insider Defendants i.e. GBT(Gopher's) officers, directors, executive consultants, affiliates and fiduciaries, sold in excess of 69,000,000 shares of nominal defendant GBT(Gopher's) common stock previously held by them into the OTCQB marketplace in a roughly nineteen (19) month period (1 January 2018 through July 2019) – a company is now totally worthless without net worth or valuable assets and whose shares currently trade at $0.02 to $0.03 per share. As a direct and proximate cause, nominal defendant GBT(Gopher) and its shareholders, including plaintiffs JACKSON and BAUER have incurred damages, the exact sum of which shall be proven at trial, but which is believed to easily exceed Five Million Dollars ($5,000,000).

111.    Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that each of the named Individual Insider Defendants' acts and conduct in breaching their respective fiduciary duties, as nominal defendant GBT(Gopher's) officers, directors, executive consultants, affiliates and insiders, is despicable conduct carried on with a willful and conscious disregard for the rights of GBT

1  and its shareholders and constitutes an intentional misrepresentation, deceit, and concealment of the

2  material nonpublic facts utilized by these Individual Insider Defendants' for their own personal benefit

3  depriving GBT and its shareholders, all of which was known to these Individual Insider Defendants'

4  and intentionally concealed with the intent to deprive GBT and its shareholders of their property and

5  legal rights. Based on the above allegations, plaintiffs JACKSON and BAUER, on behalf of GBT and

6  its shareholders, allege that the aforementioned conduct of the named Individual Insider Defendants

7  was carried out with malice and fraud as specifically defined by Civil Code § 3294 so as to justify an

8  award of punitive damages.

9  <div align="center">**SECOND CAUSE OF ACTION**</div>

10  <div align="center">**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**</div>

11      **As and Against Defendants MO JACOB, GUARDIAN PATCH, LLC,**
12  **REKO HOLDINGS, LLC, RANDOLPH BEN CLYMER,**
    **BEN CLYMER'S THE BODY SHOP PERRIS, LLC, STANLEY HILLS,**
13  **LLC,  J.I.L. VENTURE, LLC MICHAEL MURRAY, YOSSI ATTIA,**
    **ANAT ATTIA, DARREN DUNCKEL, DANNY RITTMAN,**
14  **ROSEMARIE "PINKY" CLAMOR, MANSOUR KHATIB, GLEN**
    **EAGLE, EMPIRE STOCK TRANSFER, INC., PATRICK MOKROS] [**
15

16      112.   Plaintiffs JACKSON and BAUER reallege and incorporate herein by reference each

17  and every allegation hereinabove set forth, including the Preliminary Allegations, the General

18  Allegations and the First Cause of Action set forth in paragraphs 1 through 103 and 105 through 111,

19  respectively, of this Complaint as though fully set forth herein.

20      113.   Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that each

21  of the named Individual Insider Defendants has been aware that by engaging in the wrongful acts and

22  conduct alleged herein, that their actions and conduct constituted an ongoing breach of the fiduciary

23  duties owed to nominal defendant GBT and its shareholders under both State and Federal law.

24      114.   Each of these named Individual Insider Defendants, particularly defendants JACOB,

25  DUNCKEL KHATIB and MURRAY, has aided and abetted each and every other named Individual

26  Insider Defendants in the breach of their respective fiduciary duties of good faith and loyalty by

27  concealing such breaches provided substantial assistance and encouragement to each and every other

28

1   named Individual Insider Defendant and by acting in such disloyal manner  preferred and put their own

2   personal financial interests before nominal defendant GBT and its shareholders' interests.

3       115.   As a result of each of the named Individual Insider Defendants' breach of fiduciary duty,

4   nominal defendant GBT(Gopher) and its shareholders, including plaintiffs JACKSON and  BAUER

5   have incurred damages, the exact sum of which shall be proven at trial, but which is believed to exceed

6   Five Million Dollars ($5,000,000).

7       116.   Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that each

8   of the named Individual Insider Defendants' acts and conduct in breaching their respective fiduciary

9   duties, as nominal defendant GBT(Gopher's), as GBT's officers, directors, executive consultants,

10  affiliates and insiders, is despicable conduct carried on with a willful and conscious disregard for the

11  rights of GBT and its shareholders and constitutes an intentional misrepresentation, deceit, and

12  concealment of the material nonpublic facts utilized by these Individual Insider Defendants for their

13  own personal benefit depriving GBT and its shareholders, all of which was known to these Individual

14  Insider Defendants' and intentionally concealed with the intent to deprive GBT and its shareholders of

15  their property and legal rights. Based on the above allegations, plaintiffs JACKSON and BAUER, on

16  behalf of GBT and its shareholders, allege that the aforementioned conduct of the named Individual

17  Insider Defendants was carried out with malice and fraud as specifically defined by Civil Code § 3294

18  so as to justify an award of punitive damages.

19                    **THIRD CAUSE OF ACTION**

20      **FRAUD – CONCEALMENT AND SUPPRESSION OF MATERIAL FACT**

21          **[As and Against Defendants MO JACOB, GUARDIAN PATCH, LLC,**
            **REKO HOLDINGS, LLC, RANDOLPH BEN CLYMER,**
22          **BEN CLYMER'S THE BODY SHOP PERRIS, LLC, STANLEY HILLS,**
            **LLC,  J.L.L. VENTURE, LLC MICHAEL MURRAY, YOSSI ATTIA,**
23          **ANAT ATTIA, DARREN DUNCKEL, DANNY RITTMAN,**
            **ROSEMARIE "PINKY" CLAMOR, MANSOUR KHATIB, GLEN**
24          **EAGLE, EMPIRE STOCK TRANSFER, INC., PATRICK MOKROS]**
25

26      117.   Plaintiffs JACKSON and BAUER reallege and incorporate herein by reference each

27  and every allegation hereinabove set forth, including the Preliminary Allegations and the General

28  Allegations and the First Cause of Action, set forth in paragraphs 1 through 103 and 105 through 11,

1    respectively, of this Complaint as though fully set forth herein.

2        118.    As alleged herein, each of the named Individual Insider Defendants, particularly

3    defendants JACOB, DUNCKEL KHATIB and MURRAY in their respective capacities as

4    GBT(Gopher's) officers, directors, executive consultants, affiliates and insiders have suppressed and

5    concealed certain material facts which they had a duty to disclose. In particular, each of the named

6    Individual Insider Defendants, particularly defendants JACOB, DUNCKEL KHATIB and MURRAY

7    were aware of, knew and intentionally concealed the fact that (a) while GBT's 1 September 2017

8    acquisition of the "Preway/UGO (Assets) generated what would appear to be considerable gross

9    income, when all expenses were considered", GBT's Preway/UGO operations were neither "actually

10   profitable" nor was GBT(Gopher's) business model sustainable; [72] (b) conducting, orchestrating and

11   managing a "stealth promotional network" systematically posting hundreds of bullish and highly

12   favorable analysis pieces about GBT across numerous investment sites, surreptitiously touting GBT's

13   stock, without disclosing that these parties had been compensated, leading stock investors to believe

14   that these were impartial analysis rather than paid advertising, creating the false impression that

15   GBT(Gopher's) stock was being actively traded by independent investors and that its stock was in high

16   market demand; and (c) concurrently selling their purportedly unrestricted shares into the OTCBQ

17   marketplace for their own illicit personal financial gain and benefit ("Material Nonpublic

18   Information"), ultimately leaving those who bought on the ascent with huge losses as GBT(Gopher's)

19   shares of common stock inevitably crashed, all to the direct detriment of nominal defendant

20   GBT(Gopher), its shareholders, including plaintiffs JACKSON and BAUER. (As the Individual

21   Insider Defendants are well aware, insider trading by directors, officers, executive consultants or

22   employees is not permitted, whether or not in an open trading window, if they possess or have access to

23   material information that has not been disclosed publicly. Such trading is illegal and normally results

24   in criminal and civil penalties.)

25       119.    Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that, each

26   of the named Individual Insider Defendants, particularly defendants JACOB, DUNCKEL KHATIB and

27   MURRAY instead of publicly disclosing this Material Nonpublic Information, made no public

28

---

[72]    See, FN 22 above (Case No. 19 STCV 03320).

1 announcement in regard to these Material Nonpublic Information to either any regulatory agency or its

2 shareholders.

3     120.    Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that,

4 commencing in late 2017 through to the present, instead of disclosing this Material Nonpublic

5 Information, and anticipating the stock market's negative reaction to the undisclosed Material

6 Nonpublic Information, if it were disclosed, GBT(Gopher's) named officers, directors, executive

7 consultants, affiliates and insiders, instead of publicly disclosing this Material Nonpublic Information,

8 have been illegally and wrongfully trading on the undisclosed Material Nonpublic Information into a

9 declining market, selling millions and millions of shares of GBT(Gopher's) securities held and

10 controlled by them to unsuspecting members of the general public thereby benefitting their own

11 personal financial interests, resulting in a dramatic loss of share value.

12     121.    Concurrently, during this period, GBT(Gopher's) named officers, directors, executive

13 consultants, affiliates and insiders, with the assistance of defendants EMPIRE and MOKROS acting as

14 defendant GBT's stock transfer agent, have sold and transferred unregistered shares of GBT(Gopher's)

15 stock and have violated Rule §144 in their dissemination and distribution of shares of GOPHER stock

16     122.    Each of the named Individual Insider Defendants, particularly defendants JACOB,

17 DUNCKEL KHATIB and MURRAY, have, directly or indirectly, personally benefitted from their

18 collective and intentional non-disclosure of the Material Nonpublic Information

19     123.    By engaging in the acts and conduct described above, particularly in paragraph 109

20 above, GBT(Gopher's) Individual Insider Defendants, namely its officers, directors, executive

21 consultants, and affiliates have, in connection with their illegal sale and transfer of nominal defendant

22 GBT's unregistered shares of common stock, by use of the means and instrumentalities of interstate

23 commerce, or the mails, or the facilities of a national securities exchange:

24         (i)        Employed devices, schemes or artifices to defraud GOPHER shareholders;

25         (ii)       Made untrue statements of material facts or omitted to state  material facts necessary
26                     in order to make the statements made, in light of the circumstances under which they
27                     were made, not misleading; and/or

28         (iii)     Engaged in acts, practices or courses of business which operated or would

operate as a fraud or deceit upon any person in connection with the purchase
or sale of any GOPHER shares or securities.

120.   By engaging in the foregoing wrongful acts and conduct, each of GBT(Gopher's) named

officers, directors, executive consultants, affiliates and insiders has violated and continue to violate

both applicable Federal and state securities laws and, unless enjoined, will continue to so violate these

laws.

124.   By engaging in the wrongful acts and conduct of GBT(Gopher's) named officers,

directors, executive consultants, affiliates and insiders, nominal defendant GBT(Gopher) and its

shareholders, including plaintiffs JACKSON and BAUER, have suffered injury and incurred damages,

the exact sum of which shall be proven at trial, but which is believed to exceed Five Million Dollars

($5,000,000).

125.   Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that each

of the named Individual Insider Defendants' acts and conduct in their respective capacities as nominal

defendant GBT(Gopher's) officers, directors, executive consultants, affiliates and insiders, in breaching

their respective fiduciary duties, constitutes despicable conduct carried on with a willful and conscious

disregard for the rights of nominal defendant GBT and its shareholders and constitutes intentional

misrepresentation, deceit, and concealment of the material nonpublic facts utilized by these Individual

Insider Defendants' for their own personal benefit depriving nominal GBT and its shareholders, all of

which was known to these Individual Insider Defendants' and intentionally concealed with the intent to

deprive GBT and its shareholders of their property and legal rights. Based on the above allegations,

plaintiffs JACKSON and BAUER, on behalf of GBT and its shareholders, allege that the

aforementioned conduct of the named Individual Insider Defendants was carried out with malice and

fraud as specifically defined by Civil Code § 3294 so as to justify an award of punitive damages.

## FOURTH CAUSE OF ACTION

## NEGLIGENCE

**As and Against Defendants MO JACOB, GUARDIAN PATCH, LLC, REKO HOLDINGS, LLC, RANDOLPH BEN CLYMER, BEN CLYMER'S THE BODY SHOP PERRIS, LLC, STANLEY HILLS, LLC, J.I.L. VENTURE, LLC MICHAEL MURRAY, YOSSI ATTIA, ANAT ATTIA, DARREN DUNCKEL, DANNY RITTMAN, ROSEMARIE "PINKY" CLAMOR, MANSOUR KHATIB, GLEN EAGLE, EMPIRE STOCK TRANSFER, INC., PATRICK MOKROS]**

126.    Plaintiffs JACKSON and BAUER reallege and incorporate herein by reference each and every allegation hereinabove set forth, including the Preliminary Allegations and the General Allegations set forth in paragraphs 1 through 103, respectively, of this Complaint as though fully set forth herein.

127.    Pursuant to California Civil Code 1714(a), each of the named Individual Insider Defendants, particularly defendants JACOB, DUNCKEL KHATIB and MURRAY owed a duty of care to nominal defendant GBT(Gopher) and its shareholders, including plaintiffs JACKSON and BAUER and  each of  them is responsible not only for the result of their own intentional and wrongful acts and conduct, but also for injury caused to nominal defendant GBT(Gopher) and its shareholders, including plaintiffs JACKSON and BAUER by their collective want of ordinary care or skill in the management and operation of nominal defendant GBT(Gopher's) business operations, particularly in regard to the issuance, sale and transfer of GBT's unregistered securities .

128.    By engaging in the wrongful acts and conduct alleged herein, nominal defendant GBT(Gopher) and its shareholders, including plaintiffs JACKSON and BAUER, have suffered injury and incurred damages, the exact sum of which shall be proven at trial, but which is believed to exceed Five Million Dollars ($5,000,000).

129.    Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that each of the named Individual Insider Defendants' acts and conduct in breaching their respective fiduciary duties, as nominal defendant GBT(Gopher's) officers, directors, executive consultants, affiliates and insiders, is despicable conduct carried on with a willful and conscious disregard for the rights of nominal defendant GBT and its shareholders and constitutes an intentional misrepresentation, deceit,

and concealment of the material nonpublic facts utilized by these Individual Insider Defendants' for their own personal benefit depriving GBT(Gopher) and its shareholders, all of which was known to these Individual Insider Defendants' and intentionally concealed with the intent to deprive GBT and its shareholders of their property and legal rights. Based on the above allegations, plaintiffs JACKSON and BAUER, on behalf of GBT and its shareholders, allege that the aforementioned conduct of the named Individual Insider Defendants was carried out with malice and fraud as specifically defined by Civil Code § 3294 so as to justify an award of punitive damages.

## FIFTH CAUSE OF ACTION

### INJUNCTIVE RELIEF

**[As and Against Defendants MO JACOB, GUARDIAN PATCH, LLC, REKO HOLDINGS, LLC, RANDOLPH BEN CLYMER, BEN CLYMER'S THE BODY SHOP PERRIS, LLC, STANLEY HILLS, LLC, J.I.L. VENTURE, LLC MICHAEL MURRAY, YOSSI ATTIA, ANAT ATTIA, DARREN DUNCKEL, DANNY RITTMAN, ROSEMARIE "PINKY" CLAMOR, MANSOUR KHATIB, GLEN EAGLE, EMPIRE STOCK TRANSFER, INC., PATRICK MOKROS]**

130.    Plaintiffs JACKSON and BAUER reallege and incorporate herein by reference each and every allegation hereinabove set forth, including the Preliminary Allegations and the General Allegations set forth in paragraphs 1 through 103, respectively, of this Complaint as though fully set forth herein.

131.    By reason of the ongoing, collective and wrongful breaches of fiduciary duty, defalcation, misappropriation and other misconduct by each of the named Individual Insider Defendants, particularly defendants JACOB, DUNCKEL KHATIB and MURRAY, in direct violation of their collective and individual legal duties and obligations to nominal defendant GBT(Gopher) and its shareholders, including plaintiffs JACKSON and BAUER, plaintiffs JACKSON and BAUER, on behalf of nominal defendant GBT(Gopher, are entitled to a preliminary and permanent injunction, prohibiting and enjoining GBT(Gopher's) officers, directors, executive consultants, affiliates and insiders, their agents and employees from continuing to commit or engage in any of the following acts and conduct:

(i)    Transferring, selling, or disposing of, in any manner, any assets, property or funds

owned or in the possession of nominal defendant GBT;

(ii)     Issuing, transferring, selling or continuing to sell any of GBT shares of common stock still currently in their possession, custody or control into the marketplace for their own personal financial gain, particularly the Gopher shares of common stock presently held by defendant REKO H "through Continental CYC Limitada (Costa Rica)" and controlled by its Manager Robert M. Yaspan, who acts as REKO's Manager  p "REKO Holdings, LLC holds the shares of common stock through Continental CYC Limitada (Costa Rica)." Mr. Yaspan acts as "the attorney in fact for REKO Holdings LLC holding voting and dispositive control over the securities held by REKO Holdings and its subsidiary." [73]

(iii)    Interfering, with, and/or disrupting in any way, or engaging in any acts or conduct that in any way, infringe upon plaintiff BAUER and JACKSON'S contractual rights under their respective Stock Warrant Agreements; and

(iv)     Committing any further acts of self-dealing in violation of their fiduciary duties to nominal defendant GBT and its shareholders.

132.     Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that, unless immediately enjoined pending the final determination in this action, GBT(Gopher's) officers, directors, executive consultants, affiliates and insiders fully intend to continue to transfer, dispose of items of property utilized and necessary for conducting the business operations at the Barbara Worth property, with the intent to hinder, delay, and/or defraud nominal defendant GBT and its shareholders, including plaintiffs JACKSON and BAUER, in direct violation of defendants' legal duties and obligations to nominal defendant GBT and its shareholders, including plaintiffs JACKSON and BAUER.

133.     Plaintiff JACKSON and BAUER, on behalf of nominal defendant GBT and its shareholders, including plaintiffs JACKSON and BAUER, have no adequate remedy at law for the pattern of conduct currently being engaged in and threatened by defendants and if these defendants are permitted to continue this pattern of conduct and behavior unabated, nominal defendant GBT and its shareholders will suffer irreparable damage.

---

[73]     p. 7, Note (7) (8/14), GBT's Schedule 14C Re Notice of Action filed with SEC on 30 August 2019, attached as a part of Exhibit B to this Complaint.

## DEMAND ALLEGATIONS

**Demand By Plaintiffs Is Futile And Therefore Excused Because A Majority Of The Board Is Unable To Conduct An Independent And Objective Investigation Of Wrongful Conduct**

134.    Plaintiffs JACKSON and BAUER bring this action derivatively and in the right of and for the benefit of nominal defendant GBT(Gopher) to redress injuries and damages suffered and to be suffered by GBT(Gopher) as a result of defendants' breaches of fiduciary duty, abuse of control and gross mismanagement. Plaintiffs and their counsel will adequately and fairly represent the interests of GBT(Gopher) and enforcing and prosecuting GBT's rights.

135.    As previously alleged, both plaintiffs JACKSON and BAUER are, were and remain shareholders of nominal defendant GBT(Gopher) at the time of the wrongdoing complained of.

136.    Based upon defendants' acts and omissions in direct violation of their fiduciary duties of care, good-faith, honesty and loyalty, a pre-suit demand on GBT(Gopher's) Board of Directors to bring the claims asserted in this action is excused as a futile and useless act. A sizeable majority of GBT's officers, directors, executive consultants, affiliates and insiders have personally profited and benefitted financially from the wrongdoing alleged in this Complaint and it was these same individuals who oversaw GBT's operations and benefitted from the wrongful acts and conduct complained of herein.

137.    Plaintiffs JACKSON and BAUER have not made any demand on GBT or its Board of Directors to investigate and prosecute the wrongdoing alleged herein. Such demand is excused because: (i) making a demand would be a futile and useless act as the majority of GBT(Gopher's) officers, directors, executive consultants, affiliates and insiders are incapable of conducting an independent and objective investigation of the alleged wrongdoing; and (ii) the wrongful conduct of the defendants is not subject to protection under the business judgment rule. Under such circumstances, the demand requirement is excused since making such a demand on GBT(Gopher's) officers, directors, executive consultants and/or affiliates would be futile, in effect, a request for these individuals to that they sue themselves. *Reed v. Norman (1957) 152 Cal.App.2nd 892; Shields v. Singleton (1993) 15 Cal.App.4th 161, 1621-1622.*    **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs JACKSON and BAUER, on behalf of nominal defendant GBT(Gophers's) and its shareholders, pray for judgment against named defendants, and each of them,

1   as follows:

2   **ON THE FIRST THROUGH FOURTH CAUSES OF ACTION**

3       1.    General and special damages, according to proof at the time of trial, but not less than

4   Five Million Dollars ($5,000,000), which will be the subject of proof at the time of trial;

5       2.    Consequential damages, including loss of profits, according to proof at the time of trial;

6       3.    An award of restitution, disgorgement of all illicit proceeds generated by each of the

7   named defendants' wrongful conduct as alleged herein in an amount according to proof at the time of

8   trial;

9       4.    An award of punitive or exemplary damages to be shown according to proof at the time

10   of trial;

11   **ON THE FIFTH CAUSE OF ACTION**

12       5.    An award of appropriate equitable relief, including any injunctive or declaratory relief

13   necessary to address the issues relative to nominal defendant GBT(Gophers's) corporate governance,

14   policies and culture;

15   **ON ALL CAUSES OF ACTION**

16       6.    Prejudgment interest on all damages as permitted by law on the amount of damages

17   incurred from the time of their occurrence at the prevailing legal rate

18       7.    Reasonable attorneys' fees and costs of litigation according to proof;

19       8.    Costs of suit herein incurred; and such other and further relief as the Court deems just

20   and proper.

21

22                  WOLFGANG F. HAHN + ASSOCIATES

23

24

25   DATED:  1 August 2020        By: _____

26                     Wolfgang F. Hahn
                  Attorneys for Plaintiffs

27                     Robert Warren Jackson and Gregory Bauer

28

# EXHIBIT A



# EXHIBIT B

## GBT(Gopher) Protocol, Inc. (Trading Symbol: GOPH)

| | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|
| Total GBT(Gopher) Shares Issued + Outstanding [1] | 41,420,372 | 125,132,072 | 207,409,616 | 171,496,000 [2], 2,166,592 |
| No. of Shares Owned By Beneficial Officers + Directors [3] | 19,800,000 | 29,800,000 | 24,950,000 | 9,958,000 [4] |
| Percentage (%) of Shares Owned By Beneficial Officers + Directors | 47.30 | 23.82 | 11.64 | 67.95, 5.80 |
| No. of Shares Owned By Beneficial Insider Defendants | | | | |
| Reko Holdings, LLC [5] | 69,321,000 [6] | 70,960,000 [7] | 69,321,000 [8] | 39,321,000 [9], 393,219 |

_____

1.     All figures are supported by GBT(Gopher's) Annual Reports 2016 through 2020 with excerpted pertinent pages of said Annual Reports attached hereto.

2.     p. 19 (22/101), GBT's 2019 Annual Report dated 27 May 2020. Effective 29 July 2019, GBT executed a reverse stock split. Both the pre and post reverse stock split figures provided are supported by GBT's 2019 Annual Report and its 14C Statement dated 6 August 2019. See, fn. 5 below.

3.     Beneficial ownership is determined in accordance with the Rule § 13d-3(d)(1)(i) of the Exchange Act, as amended and generally includes voting or investment power with respect to securities. Pursuant to the rules and regulations of the Securities and Exchange Commission ("SEC"), shares of common stock that an individual or group has a right to acquire within 60 days pursuant to the exercise of options or warrants our dean to be outstanding for the purpose of computing the percentage ownership of such individual or group, but are not deemed to be outstanding for the purpose of computing the percentage ownership of any other person shown in the table.

4.     p. 44 (47/101), GBT's 2019 Annual Report dated 27 May 2020.

5.     Robert M. Yaspan serves as REKO's Manager; however, presently the ownership of REKO's Membership Interests is unknown. Inconclusive evidence suggests that defendant Moshe Jacob is somehow involved.

6.     p. 30 (30/61), GBT's 2016 Annual Report dated 31 March 2017, attached hereto.

7.     p. 36 (30/61), GBT's 2017 Annual Report dated 11 April 2018, attached hereto.

8.     p. 41 (48/108), GBT's 2018 Annual Report dated 27 March 2019, attached hereto.

9.     p. 7, Note (7) (8/14), GBT's Schedule 14C Re Notice of Action filed with SEC on 30 August 2019 (attached hereto); According to the 14C Statement: "REKO Holdings, LLC holds the shares of common stock through Continental CYC Limitada (Costa Rica). Robert Yaspan, former Chairman of the Board of Directors, is the attorney in fact for REKO Holdings LLC holding voting and dispositive control over the securities held by REKO Holdings and its subsidiary."

| | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|
| Guardian Patch, LLC (Moshe Jacob) | | 11,000,000 [10] | 16,500,000 [11] | -0- [12] |
| Ben Clymer's Body Shop (Randolph Ben Clymer) | | 2,000,000 [13] | 600,000 [14] | -0- |
| Stanley Hills, LLC (Amat Attia/Yossi Attia) | | 4,567,509 [15] 1,990,000 [16] | 1,250,000 [17] | -0- |
| J.I.I. Investments, LLC (Rosemarie "Pinky" Clamor) | | 2,280,000 [18] 1,990,000 [19] | 2,000,000 [20] | -0- |
| Glen Eagle (Darren Dunckel) | | | 2,000,000 [21] | |
| Total Beneficially Owned | 69,321,000 | 94,787,509 | 91,671,000 | |

---

10   p. 36 (48/114), GBT's 2017 Annual Report dated 11 April 2018, attached hereto.

11   p. 41 (46/108), GBT's 2018 Annual Report dated 27 March 2019, attached hereto.

12   All -0- entries reference page 7 (6/14) of GBT's Schedule 14C Re Notice of Action filed with SEC on 30 August 2019, attached hereto.

13   See, GOPHER's Transaction Journal dated 13 December 2017.

14   See, GOPHER's Transaction Journal dated 13 December 2017.

15   See, GOPHER's Shareholder Detail dated 23 February 2018.

16   From 26 April 2017 through 15 November 2017, defendant S. HILLS was issued 4,567,509 shares of GOPHER's common stock. See, GOPHER Transaction Journal dated 13 December 2017.

17   On or about 22 December 2017, defendant Stanley Hills converted $14,979.33 of its Note to 1,990,000 "free trading" shares of Gopher's common stock. See, Notice of Conversion dated 13 December 2017 In 2018, defendant Stanley Hills was issued 1,250,000 "free trading" shares of Gopher's common stock. See, pp. 19-20, Gopher 2018 Annual Report.

18   From 22 March 2017 through 30 August 2017, defendant JII was issued 2,280,000 shares of GOPHER's common stock.

19   On or about 12 December 2017, defendant JII, purchased 1,990,000 "free trading" shares of Gopher's common stock from defendant Stanley Hills, LLC pursuant to a Stock Purchase Agreement. See also, Notice of Conversion dated 13 December 2017. e

20   On or about 21 September 2018, defendant JII was issued 2,000,000 "free trading" shares of Gopher's common stock. See, pp. 19-20, F-14, Gopher 2028 Annual Report.

21   pp. 19-20 (21-22/108), F-17 of GBT's 2018 Annual Report dated 27 March 2019, attached hereto.

Percentage (%) of Shares
Owned By Beneficial Insider Defendants [22]

Reko Holdings, LLC
Ben Clymer's Body Shop
Guardian Patch, LLC
Stanley Hills, LLC
J.I.L. Investments, LLC

---

22    Without the stock transfer agent's records, percentage (%) of shares actually owned Individual Insider Defendants in relation to Gopher's outstanding and issued shares of common stock cannot presently be computed.

**Director Compensation**

The Company does not have non-employee directors. All compensation paid to directors is reflected above in the Summary Compensation Table.

**Outstanding Equity Awards at Fiscal Year-End**

There are no outstanding equity awards outstanding at December 31, 2016 other than those disclosed above.

**ITEM 12. SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT AND RELATED STOCKHOLDER MATTERS**

The following table sets forth information with respect to the beneficial ownership of the Common Stock as of December 31 2016 by (i) each person known by the Company to own beneficially more than 5% of the outstanding Common Stock; (ii) each director of the Company; (iii) each officer of the Company and (iv) all executive officers and directors as a group. Except as otherwise indicated below, each of the entities or persons named in the table has sole voting and investment powers with respect to all shares of Common Stock beneficially owned by it or him as set forth opposite its or his name.

| Name of Beneficial Owner | Common Stock Beneficially Owned (1) | Percentage of Common Stock (1) |
|---|---|---|
| Michael D. Murray (2) | 9,900,000 | 23.90% |
| Dr. Danny Rittman (2) | 9,900,000 | 23.90% |
| Erik Klinger (2) | 0 | 0.00% |
| Monsour Khatib (2) | 0 | 0.00% |
| Reko Holdings LLC (3) | 69,321,000 | 62.60% |
| Direct Communications Inc. | 8,950,000 | 21.61% |
| Stephen Fleming | 2,600,000 | 6.28% |
| All Officers and Directors as a Group | 19,800,000 | 47.80% |

(1) Beneficial ownership is determined in accordance with the Rule 13d-3(d)(1) of the Exchange Act, as amended and generally includes voting or investment power with respect to securities. Pursuant to the rules and regulations of the Securities and Exchange Commission, shares of common stock that an individual or group has a right to acquire within 60 days pursuant to the exercise of options or warrants are deemed to be outstanding for the purposes of computing the percentage ownership of such individual or group, but are not deemed to be outstanding for the purposes of computing the percentage ownership of any other person shown in the table. The above is based on 41,420,372 shares of common stock outstanding as of December 31, 2016.

(2) Officer and/or director of the Company.

(3) Includes 66,000,000 shares of common stock issuable upon conversion of 66,000 Series D Preferred Shares.

No Director, executive officer, affiliate or any owner of record or beneficial owner of more than 5% of any class of voting securities of the Company is a party adversary to the Company or has a material interest adverse to the Company.

30

**GBT'S 2016 ANNUAL REPORT DATED 31 MARCH 2017**

https://www.sec.gov/Archives/edgar/data/1471781/00016157741

## ITEM 12. SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT AND RELATED STOCKHOLDER MATTERS

The following table sets forth information with respect to the beneficial ownership of the Common Stock as of April 11, 2018 by (i) each person known by the Company to own beneficially more than 5% of the outstanding Common Stock; (ii) each director of the Company; (iii) each officer of the Company and (iv) all executive officers and directors as a group. Except as otherwise indicated below, each of the entities or persons named in the table has sole voting and investment powers with respect to all shares of Common Stock beneficially owned by it or him as set forth opposite its or his name.

| Name of Beneficial Owner | Common Stock Beneficially Owned (1) | Percentage of Common Stock (1) |
|---|---|---|
| Michael D. Murray (2) | 13,900,000 | 10.76% |
| Dr. Danny Rittman (4) | 9,900,000 | 7.91% |
| Gregory Bauer (5) | 6,000,000 | 4.65% |
| Mansour Khatib (4) | 0 | 0.00% |
| Reko Holdings LLC (3) | 70,960,000 | 56.71% |
| Direct Communications Inc. | 8,890,000 | 7.10% |
| Eagle Equities | 6,503,726 | 5.20% |
| Guardian Patch | 11,000,000 | 8.08% |
| Robert Warren Jackson | 8,000,000 | 6.15% |
| All Officers and Directors as a Group | 29,800,000 | 23.32% |

(1) Beneficial ownership is determined in accordance with the Rule 13d-3(d)(1) of the Exchange Act, as amended and generally includes voting or investment power with respect to securities. Pursuant to the rules and regulations of the Securities and Exchange Commission, shares of common stock that an individual or group has a right to acquire within 60 days pursuant to the exercise of options or warrants are deemed to be outstanding for the purposes of computing the percentage ownership of such individual or group, but are not deemed to be outstanding for the purposes of computing the percentage ownership of any other person shown in the table. The above is based on 125,132,072 shares of common stock outstanding as of April 11, 2018.

(2) Mr. Murray resigned as Chief Executive Officer on or around September 7, 2017, but remains as a Director. The warrant on 4,000,000 common shares is consideration for his role as Executive Vice President in charge of business development.

(3) Includes 66,000,000 shares of common stock issuable upon conversion of 66,000 Series D Preferred Shares.

(4) Officer and Director of the Company.

(5) Officer and Director of the Company. Became CEO and received 2,000,000 common shares and a warrant on 4,000,000 common shares in connection with the asset purchase from RWJ Advanced Marketing LLC in September 2017, discussed elsewhere in this document.

No Director, executive officer, affiliate or any owner of record or beneficial owner of more than 5% of any class of voting securities of the Company is a party adversary to the Company or has a material interest adverse to the Company.

36

GBT'S 2017 ANNUAL REPORT DATED 11 APRIL 2018

11/6/18, 10:27 AM

https://www.sec.gov/Archives/edgar/data/1471781/000016157741900469l/s116890_10k.htm

| Name of Beneficial Owner | Common Stock Beneficially Owned (1) | Percentage of Common Stock (1) |
|---|---|---|
| Michael D. Murray (2,4) | 10,900,000 | 5.16% |
| Dr. Danny Rittman (4) | 9,900,000 | 4.77% |
| Douglas Davis (5) | 2,300,000 | 1.10% |
| Mansour Khatib (4) | 0 | 0.00% |
| Kevin Pickard (5) | 350,000 | 0.17% |
| Reko Holdings LLC | 69,321,000 | 33.42% |
| Guardian Patch (7) | 16,500,000 | 7.62% |
| Latinex Casa de Cambio | 20,026,702 | 9.66% |
| Robert Yaspan (3) | 500,000 | 0.24% |
| Ned Siegel (6) | 200,000 | 0.10% |
| Judit Nagypal (6) | 200,000 | 0.10% |
| Eva Bitter (6) | 200,000 | 0.10% |
| Muhammed Khilji (6) | 200,000 | 0.10% |
| Mitchell Tavera (6) | 200,000 | 0.10% |
| Mobiquity Technologies, Inc. | 13,388,889 | 6.46% |
| **All Officers and Directors as a Group** | 24,950,000 | 11.64% |

(1) Beneficial ownership is determined in accordance with the Rule 13d-3(d)(1) of the Exchange Act, as amended and generally includes voting or investment power with respect to securities. Pursuant to the rules and regulations of the Securities and Exchange Commission, shares of common stock that an individual or group has a right to acquire within 60 days pursuant to the exercise of options or warrants are deemed to be outstanding for the purposes of computing the percentage ownership of such individual or group, but are not deemed to be outstanding for the purposes of computing the percentage ownership of any other person shown in the table. The above is based on 207,409,616 shares of common stock outstanding as of March 27, 2019.

(2) Mr. Murray is President of the company, and a Director. He holds a warrant for 4,000,000 shares of the Company's common stock.

41

GBT'S 2018 ANNUAL REPORT DATED 27 MARCH 2019

## STOCK OWNERSHIP OF MANAGEMENT AND PRINCIPAL STOCKHOLDERS

The following table sets forth information with respect to the beneficial ownership of the Common Stock as of August 6, 2019 by (i) each person known by the Company to own beneficially more than 5% of the outstanding Common Stock; (ii) each director of the Company; (iii) each officer of the Company and (iv) all executive officers and directors as a group. Except as otherwise indicated below, each of the entities or persons named in the table has sole voting and investment powers with respect to all shares of Common Stock beneficially owned by it or him as set forth opposite its or his name.

| Name of Beneficial Owner | Common Stock Beneficially Owned (1) | Percentage of Common Stock (1) |
| --- | --- | --- |
| Michael D. Murray (2,4) | 4,069,000 | 65.98% |
| Dr. Danny Rittman (4) | 99,000 | 4.57% |
| Douglas Davis (5) | 23,000 | 1.05% |
| Mansour Khatib (4) | 0 | 0.00% |
| Kevin Pickard (5) | 3,500 | 0.16% |
| Reko Holdings LLC (7) | 393,210 | 18.15% |
| Latinex Casa de Cambio | 200,268 | 9.24% |
| Robert Yaspan (3) | 5,000 | 0.23% |
| Ned Siegel (6) | 2,000 | 0.09% |
| Judit Nagypal (6) | 2,000 | 0.09% |
| Eva Bitter (6) | 2,000 | 0.09% |
| Muhammad Khilji (6) | 2,000 | 0.09% |
| Mitchell Tavera (6) | 2,000 | 0.09% |
| biquity Technologies, Inc. | 103,389 | 4.77% |
| scover Growth Fund, LLC (8) | 236,989 | 10.20% |
| Gregory Bauer (9) | 4,020,000 | 65.19% |
| Warren Jackson (10) | 5,030,000 | 70.19% |
| Dennis Winfrey (11) | 757,500 | 25.97% |
| Derron Winfrey (12) | 502,500 | 18.84% |
| Mark Garner (13) | 502,500 | 18.84% |
| 303 Venice Way, LLC(14) | 1,750,400 | 44.69% |
| All Officers and Directors as a Group | 4,209,500 | 67.95% |

(1) Beneficial ownership is determined in accordance with the Rule 13d-3(d)(1) of the Exchange Act, as amended and generally includes voting or investment power with respect to securities. Pursuant to the rules and regulations of the Securities and Exchange Commission, shares of common stock that an individual or group has a right to acquire within 60 days pursuant to the exercise of options or warrants are deemed to be outstanding for the purposes of computing the percentage ownership of such individual or group, but are not deemed to be outstanding for the purposes of computing the percentage ownership of any other person shown in the table. The above is based on 2,166,592 shares of common stock outstanding as of August 6, 2019.

(2) Mr. Murray is President of the company, and a Director. He holds a warrant for 4,000,000 shares of the Company's common stock at an exercise price of $0.50 per share.

(3) Mr. Yaspan; former Chairman of the Board of Directors. He has 2,500 shares, and a warrant for 2,500 additional shares at an exercise price of $250.

(4) Officer and Director of the Company.          **Schedule 14C (Rule 14C-101) Re Notice of Action undated (" *, 2019) filed with SEC - 30 August 2019.**

(5) Officer of the Company.

(6) Director of the Company. Each director (except for the Chairman of the Board of Directors) has 1,000 shares, and a warrant on 1,000 shares at an exercise price of $250.00.

(7) Robert Yaspan, former Chairman of the Board of Directors, is the attorney in fact for REKO Holdings LLC holding voting and dispositive control over the securities held by REKO Holdings.

(8) On December 3, 2018, the Company entered into a Securities Purchase Agreement (the "SPA") with Discover Growth Fund, LLC pursuant to which the Company issued a Senior Secured Redeemable Convertible Debenture (the "Debenture") in the aggregate face value of $3,340,000. In connection with the issuance of the Debenture and pursuant to the terms of the SPA, the Company issued a Common Stock Purchase Warrant to acquire up to 225,000 shares of common stock for a term of three years (the "Warrant") on a cash-only basis at an exercise price of $100.00 per share with respect to 50,000 Warrant Shares with respect to 75,000 Warrant Shares and $50.00 with respect to 100,000 Warrant Shares. The holder may not exercise any portion of the Warrants to the extent that the holder would own more than 4.99% of the Company's outstanding common stock immediately after exercise. The outstanding principal amount may be converted at any time into shares of the Company's common stock at a conversion price equal to 95% of the Market Price less $5.00 (The conversion price is lowered by 10% upon the occurrence of each Triggering Event – the current conversion price is 75% of the Market Price less $5.00). The Market Price is the average of the 5 lowest individual daily volume weighted average prices during the period the Debenture is outstanding. On May 28, 2019, the Investor delivered to the Company a "Notice of Default and Notice of Sale of Collateral" (the "Notice"). In the Notice, the Investor declared that the Company was in default of the terms of the SPA. On May 30, 2019, in a letter to the Investor the Company disputed each of the purported "Trigger Events" and demanded the Investor retract the Notice. It is the Company's position that the Notice is a further attempt by the Investor to mask its issues surrounding its recent conversion notice and resulting affiliate status and the investors ownership position in the Company as set forth above. The Investor responded that the Notice will not be withdrawn. In the Notice, the Investor declared all obligations under the SPA immediately due and payable. In the Notice, the Investor purported to establish 10:00 a.m. Eastern Time on Monday, June 24, 2019, as the date on which it intended to sell and dispose of the collateral securing the Debentures and said the sale would take place in St. Thomas, The Virgin Islands. On June 20, 2019, the United States District Court District of Nevada (the "Court") granted an Order Granting Ex Parte Application for Temporary Restraining Order (Case Number: 2:19-cv-01039) in favor of the Company temporarily restraining the Investor from selling, foreclosing upon, encumbering, dissipating, or otherwise transferring any of the collateral referenced in the Notice and from conducting the sale currently referenced in the Notice. On July 18, 2019, the Court issued an Order Granting Motion for Preliminary Injunction prohibiting the defendant from selling the Company's assets. The Company and the Investor entered into a binding arbitration process.

(9) Mr. Bauer is the former CEO of the Company. He holds a warrant for 4,000,000 shares of the Company's common stock at an exercise price of $0.50 per share.

(10) Mr. Jackson holds a warrant for 5,000,000 shares of the Company's common stock at an exercise price of $0.50 per share.

(11) Mr. Winfrey holds a warrant for 500,000 shares of the Company's common stock at an exercise price of $1.85 per share and a warrant for 250,000 shares of the Company's common stock at an exercise price of $2.70 per share.

(12) Mr. Winfrey holds a warrant for 500,000 shares of the Company's common stock at an exercise price of $1.85 per share.

(13) Mr. Garner holds a warrant for 500,000 shares of the Company's common stock at an exercise price of $1.85 per share.

(14) 303 Venice Way, LLC holds a warrant for 1,500,000 shares of the Company's common stock at an exercise price of $1.85 per share and a warrant for 250,000 shares of the Company's common stock at an exercise price of $2.70 per share.

No Director, executive officer, affiliate or any owner of record or beneficial owner of more than 5% of any class of voting securities of the Company is a party adversary to the Company or has a material interest adverse to the Company.

7

ITEM 12. SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT AND RELATED STOCKHOLDER MATTERS

The following table sets forth information with respect to the beneficial ownership of the Common Stock as of May 27_, 2020 by (i) each person known by the Company to own beneficially more than 5% of the outstanding Common Stock; (ii) each director of the Company; (iii) each officer of the Company and (iv) all executive officers and directors as a group. Except as otherwise indicated below, each of ...ities or persons named in the table has sole voting and investment powers with respect to all shares of Common Stock beneficially owned by it or him as set forth opposite its or his name.

| Name of Beneficial Owner | Common Stock Beneficially Owned (1) | Percentage of Common Stock (1) |
|---|---|---|
| Michael D. Murray (2, 4) | 4,075,900 | 2.38% |
| Dr. Danny Rittman (4) | 99,000 | 0.59% |
| Mansour Khatib (4) | 0 | 0.00% |
| GBT Tokenize Corp. (7) | 50,000,000 | 29.14% |
| The Gonzalez Trust CR – Pablo Gonzalez (7) | 51,000,000 | 29.73% |
| GBT BitSpeed Corp (5) | 5,000,000 | 2.91% |
| All Officers and Directors as a Group | 9,958,900 | 5.80% |

(1)    Beneficial ownership is determined in accordance with the Rule 13d-3(d)(1) of the Exchange Act, as amended and generally includes voting or investment power with respect to securities. Pursuant to the rules and regulations of the Securities and Exchange Commission, shares of common stock that an individual or group has a right to acquire within 60 days pursuant to the exercise of options or warrants are deemed to be outstanding for the purposes of computing the percentage ownership of such individual or group, but are not deemed to be outstanding for the purposes of computing the percentage ownership of any other person shown in the table. The above is based on 171,496,091 shares of common stock outstanding as of May 27, 2020

(2)    Mr. Murray is President of the company, and a Director. He holds a warrant for 4,000,000 shares of the Company's common stock.

(4)    Current Officer and Director of the Company.

(7)    GBT Tokenize Corp is a 50/50 Joint venture between the Company and Tokenize-It S.A. Controlled by the Gonzalez Trust from Costa Rica. GBT Tokenize Corp hold 100,000,000 shares of the Company's common stock. The Gonzalez Trust holds a note for $10,000,000 with conversion feature (under dispute by them) at $10 per share.

No Director, executive officer, affiliate or any owner of record or beneficial owner of more than 5% of any class of voting securities of the Company is a party adversary to the Company or has a material interest adverse to the Company.

---

44

GBT'S 2019 ANNUAL REPORT DATED 27 MAY 2020

Exhibit B

# ORIGINAL

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Wolfgang F. Hahn, Esq. (SBN. 061385)<br>Wolfgang F. Hahn + Associates<br>7160 Caminito Pepino, La Jolla, California 92037<br>TELEPHONE NO. 858. 535. 1000    FAX NO.:<br>ATTORNEY FOR *(Name):* Plaintiffs Robert Warren Jackson + GregoryBauer | **FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>AUG 27 2020<br><br>Sherri R. Carter, Executive Officer/Clerk of Court<br>By_____ S. DREW _____ Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, California 90012
BRANCH NAME: Stanley Mosk Courthouse (Central)

CASE NAME: Robert Warren Jackson, Et Al. v. Moshe Jacob, Et Al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: **20STCV32709** |
|---|---|---|
| ☑ Unlimited ☐ Limited<br>(Amount    (Amount<br>demanded    demanded is<br>exceeds $25,000)    $25,000 or less) | ☐ Counter ☐ Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

**BY FAX**

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☑ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☑ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☑ Substantial amount of documentary evidence
   d. ☑ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):*
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: 5 August 2020

Wolfgang F. Hahn                                          ► _____
_____                            (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)
(TYPE OR PRINT NAME)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.Juriseserch.com

<div align="right">CM-010</div>

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

<div align="center">CASE TYPES AND EXAMPLES</div>

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

# ORIGINAL

**BY FAX**

| SHORT TITLE: | Robert Warren Jackson, Et Al. v. Moshe Jacob, Et Al. | CASE NUMBER | 20STCV32709 |
|---|---|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: | Robert Warren Jackson, Et Al. v. Moshe Jacob, Et Al. | CASE NUMBER | |
|---|---|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach –Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 2 of 4

| SHORT TITLE: | Robert Warren Jackson, Et Al. v. Moshe Jacob, Et Al. | CASE NUMBER | |
|---|---|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☑ A6035  Securities Litigation Case | (1, 2, 8) |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not<br>Specified Above) (43) | ☐ A6121  Civil Harassment With Damages | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment With Damages | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case With Damages | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

| SHORT TITLE: Robert Warren Jackson, Et Al. v. Moshe Jacob, Et Al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: ☐ 1. ☐ 2. ☐ 3. ☐ 4. ☑ 5. ☐ 6. ☐ 7. ☐ 8. ☑ 9. ☑ 10. ☐ 11. | ADDRESS: 2500 Broadway, Suite F-15 Santa Monica, California |
|---|---|

| CITY: Los Angeles | STATE: CA | ZIP CODE: 90404 |
|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the _____Central_____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: ___5 August 2020___



(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

Exhibit C

*CPX*

**ORIGINAL**

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Moshe Jacob fka Moshe Schnapp, an individual; Guardian Patch, LLC
and Ben Clymer's The Body Shop Perris, LLC, ~~BCB~~. (See, Attachment)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Robert Warren Jackson, individually and derivatively;
Gregory Bauer, individually and derivatively

<table>
<tr><td><b>FOR COURT USE ONLY</b><br><i>(SOLO PARA USO DE LA CORTE)</i><br><br><b>FILED</b><br>Superior Court of California<br>County of Los Angeles<br><br><b>AUG 27 2020</b><br><br>Sherri R. Carter, Executive Officer/Clerk of Court<br>By____<b>S. DREW</b>____Deputy</td></tr>
</table>

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | CASE NUMBER:<br>*(Número del Caso):*<br>**20STCV32709** |
|---|---|

Los Angeles County Superior Court, Stanley Mosk Courthouse (Central)

111 North Hill Street, Los Angeles, California  90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Wolfgang F. Hahn, Esq./Wolfgang F. Hahn + Associates          Telephone:  858.535.1000
7160 Caminito Pepino, La Jolla, California 92037

DATE: ~~5 August 2020~~   **AUG 27 2020**   Sherri R. Carter, Clerk          Clerk, by _____ , Deputy
*(Fecha)*          *(Secretario)*          *(Adjunto)*          **STEVEN DREW**

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

    under: ☐ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
              ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
              ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
              ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.JustSearch.com

SUM-200(A)

| SHORT TITLE: Robert Warren Jackson, Et Al. v. Moshe Jacob, Et Al. | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

☒ Plaintiff   ☒ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

## ATTACHMENT TO SUMMONS

~~ROBERT WARREN JACKSON, individually and derivatively;~~
~~GREGORY BAUER, individually and derivatively;~~

~~NOTICE TO DEFENDANTS~~

~~MOSHE JACOB fka MOSHE SCHNAPP, an individual, GUARDIAN PATCH, LLC and, BEN CLYMER'S THE BODY SHOP-PERRIS, LLC,~~ both California limited liability companies; RANDOLPH BEN CLYMER, an individual; REKO HOLDINGS, LLC, a Nevada limited liability company; STANLEY HILLS, LLC, a Nevada limited liability company; YOSSI ATTIA, an individual; ANAT ATTIA, an individual; J.I.L. VENTURE, LLC, a Nevada limited liability company; ROSEMARIE "PINKY" CLAMOR, an individual; GLEN EAGLE ACQUISITIONS CORP. LP, an entity of unknown origin and domicile; DARREN DUNCKEL, an individual; DANNY RITTMAN, an individual; MANSOUR KHATIB, an individual; MICHAEL MURRAY, an individual; EMPIRE STOCK TRANSFER, INC., a Nevada corporation; PATRICK MOKROS, an individual; and DOES 1 through 25, inclusive

and

GBT TECHNOLOGIES, INC. fka GOPHER PROTOCOL, INC.,
a Nevada corporation;

Nominal Defendant.

Page **2** of **2**

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Exhibit D

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
### Central District, Spring Street Courthouse, Department 14

20STCV32709                                                September 10, 2020
ROBERT WARREN JACKSON, et al. vs MOSHE JACOB, et                    2:30 PM
al.

Judge: Honorable Kenneth R. Freeman        CSR: None
Judicial Assistant: B. Guerrero            ERM: None
Courtroom Assistant: T. Lewis              Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

NATURE OF PROCEEDINGS: Court Order Re: Complex Determination;

This case is hereby determined to be complex within the meaning of Rule 3.400 of the California
Rules of Court.

The case is ordered reassigned to Judge Kenneth R. Freeman in Department 14 at the Spring
Street Courthouse for all further proceedings and for all purposes.

The case is ordered stayed until the Initial Status Conference date. Notice of Initial Status
Conference is to be given by the Clerk in Department 14. No responsive pleadings may be filed
until further order of the Court. Parties may file a Notice of Appearance in lieu of an Answer or
other responsive pleading. The filing of a Notice of Appearance shall not constitute a general
appearance, and shall not waive any substantive or procedural challenge to the complaint.
Nothing herein stays the time for filing Affidavit of Prejudice pursuant to Code of Civil
Procedure section 170.6.

Pursuant to Government Code section 70616 subdivisions (a) and (b), each party is ordered to
pay $1,000.00 for complex fees, payable to Los Angeles Superior Court, within ten (10) calendar
days of service of this order.

Any party objecting to the complex designation must file an objection with proof of service in
Department 14 within ten (10) days of service of this minute order. Any response to the
objection must be filed in Department 14 within seven (7) days of service of the objection. This
Court will make its ruling on the submitted pleadings.

Plaintiff is ordered to forthwith serve a copy of this minute order on all parties, and to file a proof
of service in the assigned department within seven (7) days of service.

Minute Order                                                Page 1 of 2

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
### Central District, Spring Street Courthouse, Department 14

**20STCV32709**                                          September 10, 2020
**ROBERT WARREN JACKSON, et al. vs MOSHE JACOB, et**              2:30 PM
**al.**


Judge: Honorable Kenneth R. Freeman          CSR: None
Judicial Assistant: B. Guerrero              ERM: None
Courtroom Assistant: T. Lewis                Deputy Sheriff: None

Certificate of Mailing is attached.

Minute Order                                              Page 2 of 2

Exhibit E

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**09/10/2020**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ B. Guerrero _____ Deputy |
| PLAINTIFF/PETITIONER:<br>Robert Warren Jackson  et al | |
| DEFENDANT/RESPONDENT:<br>Moshe Jacob et al | |
| CERTIFICATE OF MAILING | CASE NUMBER:<br>20STCV32709 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Court Order Re: Complex Determination;) of 09/10/2020 upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Wolfgang F. Hahn
Wolfgang F. Hahn & Associates
7160 Caminito Pepino
La Jolla, CA  92037

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: <u>09/10/2020</u>                         By:  <u>B. Guerrero</u>
                                                              Deputy Clerk

**CERTIFICATE OF MAILING**

Exhibit F

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>09/10/2020<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ B. Guerrero _____ Deputy |
| PLAINTIFF/PETITIONER:<br>Robert Warren Jackson  et al | |
| DEFENDANT/RESPONDENT:<br>Moshe Jacob et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>20STCV32709 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Court Order Re: Complex Determination;) of 09/10/2020 upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Wolfgang F. Hahn
Wolfgang F. Hahn & Associates
7160 Caminito Pepino
La Jolla, CA  92037

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: 09/10/2020

By:  B. Guerrero
        Deputy Clerk

**CERTIFICATE OF MAILING**

Exhibit G

14

ORIGINAL

1  Wolfgang F. Hahn, Esq. (SBN. 061385)
   Wolfgang F. Hahn + Associates
2  7160 Caminito Pepino
   La Jolla, California 92037
3  Telephone : 858. 535. 1000
   Telecopier : 858. 456. 5080
4  E-Mail Address: ellobo1@san.rr.com

5  Attorneys for Plaintiffs Robert Warren Jackson and Gregory Bauer

[SPACE BELOW PROVIDED FOR FILING STAMP ONLY]

**FILED**
Superior Court of California
County of Los Angeles

SEP 1 4 2020

Sherri R. Carter, Executive Officer/Clerk
By _____ , Deputy
        Maisha Pryor

6          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

7           **COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

                                                            **BY FAX**

8    ROBERT WARREN JACKSON, individually        Case No. 20 STCV 32709
9    and derivatively; and GREGORY BAUER,
     individually and derivatively;             Assigned For All Purposes:
10                            Plaintiffs,        Hon. Kenneth R. Freeman
11   v.

12   MOSHE JACOB fka MOSHE SCHNAPP, an         **PROOF OF SERVICE RE MINUTE ORDER**
     individual; GUARDIAN PATCH, LLC and,      **DATED 10 SEPTEMBER 2020**
13   BEN CLYMER'S THE BODY SHOP PERRIS,
     LLC, both California limited liability companies;
14   RANDOLPH BEN CLYMER, an individual;
     REKO HOLDINGS, LLC, a Nevada limited
15   liability company; STANLEY HILLS, LLC, a
     Nevada limited liability company; YOSSI
16   ATTIA, an individual; ANAT ATTIA, an
     individual; J.I.L. VENTURE, LLC, a Nevada
17   limited liability company; ROSEMARIE
     "PINKY" CLAMOR, an individual; GLEN
18   EAGLE ACQUISITIONS CORP. LP, an entity
     of unknown origin and domicile; DARREN
19   DUNCKEL, an individual; DANNY RITTMAN,
     an individual; MANSOUR KHATIB, an
20   individual; MICHAEL MURRAY, an individual;
     EMPIRE STOCK TRANSFER, INC., a Nevada
21   corporation; PATRICK MOKROS, an
     individual; and DOES 1 through 25, inclusive,
22
23                            Defendants.        Complaint Filed :   30 January 2019
24   and                                         Trial Date     :   None Set
25
26   GBT TECHNOLOGIES, INC. fka GOPHER
     PROTOCOL, INC., a Nevada  corporation;
27
28                       Nominal Defendant.

1  I, the undersigned, declare: that I am, and was at the time of service of the papers herein referred

2  to, over the age of eighteen years of age and not a party to the action: and I am employed in the County

3  of San Diego, California, in which county the within-mentioned mailing occurred. My business address

4  is 7160 Caminito Pepino, La Jolla, California  92037. On **14 September 2020,** I served the documents

5  listed below on the parties in this action in the manner prescribed below:

6  <center>**MINUTE ORDER DATED  10 SEPTEMBER 2020**</center>

7  <center>**__X__   BY REGULAR U.S. MAIL DELIVERY OR U.S. PRIORITY MAIL PRIORITY.**</center>

8  I caused a separately sealed envelope with postage thereon fully prepaid to be placed in the United
States mail at La Jolla, California. I am readily familiar with this firm's business practice for collecting,

9  processing and mailing correspondence and pleadings for mailing, said practice being that in the
ordinary course of business, mail is deposited with United States Postal Service the same day as it is

10  placed for collection, addressed as follows:

11  <center>**SEE, SERVICE LIST (ATTACHED)**</center>

12

13  <center>__X__   **BY E-MAIL TRANSMISSION.**     On **14 September 2020,** prior to the close</center>
of business, pursuant to an written e-correspondence agreement between counsel, authorizing electronic
service pursuant to Section 1010.6(a)(6), Code of Civil Procedure and Rule § 2.251, Rules of Court, I

14  caused to be transmitted the document(s) described herein to counsels' offices via e-mail transmission

15  to e-mail addresses listed above: Robert Yaspan @ ryaspan@yaspanlaw.com: Joe McCarty
@jmccarty@yaspanlaw.com; Debbie Brand@ dbrand@yaspanlaw.com; and Thomas Sardoni @

16  tsardoni@yahoo.com.

17  Executed on **14 September 2020** at La Jolla, California 92037.

18

19

20  

Wolfgang F. Hahn

21

22

23

24

25

26

27

28

## SERVICE LIST

■ **VIA EMAIL DELIVERY**
**+ REGULAR U. S. MAIL DELIVERY**

**ROBERT M. YASPAN, ESQ.**
**JOSEPH MCCARTY, ESQ.**
**DEBBIE BRAND, ESQ.**
**LAW OFFICES OF ROBERT M. YASPAN**
**21700 OXNARD STREET, SUITE 1750**
**WOODLAND HILLS, CALIFORNIA 91367**

Attorneys for Defendants GOPHER PROTOCOL,
INC., REKO HOLDINGS, LLC, J.I.L VENTURE,
LLC,  MANSOUR KHATIB, MICHAEL MURRAY,
DANNY RITTMAN, MOSHE SCHNAPP aka
MOSHE JACOB

■ **VIA EMAIL DELIVERY**
**+ REGULAR U. S. MAIL DELIVERY**

**THOMAS W. SARDONI, ESQ.**
**DANIEL L. SCHNEBLY, ESQ.**
**LAW OFFICES OF  THOMAS W. SARDONI**
**3890 11TH STREET, SUITE 104**
**RIVERSIDE, CALIFORNIA 92501**

Attorneys for Defendant GUARDIAN PATCH, LLC

Exhibit H

CM-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Wolfgang F. Hahn, Esq. (SBN. 061385)<br>Wolfgang F. Hahn + Associates<br>7160 Caminito Pepino<br>La Jolla, California 92037<br>TELEPHONE NO.: 858. 535. 1000    FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):* ellobo1@san.rr.com<br>ATTORNEY FOR *(Name):* Plaintiffs Robert Warren Jackson + GregoryBauer | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES | | |
|---|---|---|
| STREET ADDRESS: 111 North Hill Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Los Angeles, California 90012<br>BRANCH NAME: Stanley Mosk Courthouse (Central) | | |

| PLAINTIFF/PETITIONER: Robert Warren Jackson, Et Al. | CASE NUMBER: 20 STCV 32709 |
|---|---|
| DEFENDANT/RESPONDENT: Moshe Jacob, Et Al. | JUDICIAL OFFICER: Kenneth R. Freeman |
| **NOTICE OF RELATED CASE** | DEPT.: 14 |

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1. a. Title: RWJ Advanced Marketing, LLC, Et Al. v. Gopher Protocol, Inc., Et Al.
   b. Case number: 19 STCV 03320
   c. Court: [✓] same as above
         [ ] other state or federal court *(name and address):*
   d. Department: 47
   e. Case type: [ ] limited civil [ ] unlimited civil [ ] probate [ ] family law [ ] other *(specify):*
   f. Filing date: 30 January 2019
   g. Has this case been designated or determined as "complex?" [ ] Yes [✓] No
   h. Relationship of this case to the case referenced above *(check all that apply):*
         [ ] involves the same parties and is based on the same or similar claims.
         [✓] arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.
         [ ] involves claims against, title to, possession of, or damages to the same property.
         [✓] is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.
               [ ] Additional explanation is attached in attachment 1h
   i. Status of case:
         [✓] pending
         [ ] dismissed [ ] with [ ] without prejudice
         [ ] disposed of by judgment

2. a. Title:
   b. Case number:
   c. Court: [ ] same as above
         [ ] other state or federal court *(name and address):*
   d. Department:

| Form Approved for Optional Use<br>Judicial Council of California<br>CM-015 [Rev. July 1, 2007] | **NOTICE OF RELATED CASE** | Page 1 of 3<br>Cal. Rules of Court, rule 3.300<br>www.courtinfo.ca.gov |
|---|---|---|

CM-015

| PLAINTIFF/PETITIONER: Robert Warren Jackson, Et Al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Moshe Jacob, Et Al. | 20 STCV 32709 |

**2.** *(continued)*

e. Case type: ☐ limited civil  ☐ unlimited civil  ☐ probate  ☐ family law  ☐ other *(specify)*:

f. Filing date:

g. Has this case been designated or determined as "complex?" ☐ Yes  ☐ No

h. Relationship of this case to the case referenced above *(check all that apply)*:

☐ involves the same parties and is based on the same or similar claims.

☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

☐ involves claims against, title to, possession of, or damages to the same property.

☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

☐ Additional explanation is attached in attachment 2h

i. Status of case:

☐ pending

☐ dismissed  ☐ with  ☐ without prejudice

☐ disposed of by judgment

**3.** a. Title:

b. Case number:

c. Court: ☐ same as above

☐ other state or federal court *(name and address)*:

d. Department:

e. Case type: ☐ limited civil  ☐ unlimited civil  ☐ probate  ☐ family law  ☐ other *(specify)*:

f. Filing date:

g. Has this case been designated or determined as "complex?" ☐ Yes  ☐ No

h. Relationship of this case to the case referenced above *(check all that apply)*:

☐ involves the same parties and is based on the same or similar claims.

☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

☐ involves claims against, title to, possession of, or damages to the same property.

☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

☐ Additional explanation is attached in attachment 3h

i. Status of case:

☐ pending

☐ dismissed  ☐ with  ☐ without prejudice

☐ disposed of by judgment

**4.** ☐ Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: 14 September 2020

Wolfgang F. Hahn
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

► _____
(SIGNATURE OF PARTY OR ATTORNEY)

**NOTICE OF RELATED CASE**

CM-015

| PLAINTIFF/PETITIONER: Robert Warren Jackson, Et Al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Moshe Jacob, Et Al. | 20 STCV 32709 |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

**(NOTE: You cannot serve the Notice of Related Case if you are a party in the action. The person who served the notice must complete this proof of service. The notice must be served on all known parties in each related action or proceeding.)**

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is (specify):

     7160 Caminito Pepino, La Jolla, California 92037

2. I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and (check one):
    a. [✓] deposited the sealed envelope with the United States Postal Service.
    b. [ ] placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Related Case* was mailed:
    a. on (date):   14 September 2020
    b. from (city and state):   La Jolla, California 92037

4. The envelope was addressed and mailed as follows:
    a. Name of person served:                                    c. Name of person served:

        See, Service List (Attached hereto)

        Street address:                                               Street address:
        City:                                                              City:
        State and zip code:                                          State and zip code:


    b. Name of person served:                                    d. Name of person served:

        Street address:                                               Street address:
        City:                                                              City:
        State and zip code:                                          State and zip code:

[✓] Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: [ 14September 2020 ]

_____                    ►  _____
Wolfgang F. Hahn
         (TYPE OR PRINT NAME OF DECLARANT)                         (SIGNATURE OF DECLARANT)

## SERVICE LIST

■  **VIA EMAIL DELIVERY**
   **+ REGULAR U. S. MAIL DELIVERY**

**ROBERT M. YASPAN, ESQ.**
**JOSEPH MCCARTY, ESQ.**
**DEBBIE BRAND, ESQ.**
**LAW OFFICES OF ROBERT M. YASPAN**
**21700 OXNARD STREET, SUITE 1750**
**WOODLAND HILLS, CALIFORNIA 91367**

Attorneys for Defendants GOPHER PROTOCOL,
INC., REKO HOLDINGS, LLC, J.I.L VENTURE,
LLC,  MANSOUR KHATIB, MICHAEL MURRAY,
DANNY RITTMAN, MOSHE SCHNAPP aka
MOSHE JACOB

■   **VIA EMAIL DELIVERY**
    **+ REGULAR U. S. MAIL DELIVERY**

**THOMAS W. SARDONI, ESQ.**
**DANIEL L. SCHNEBLY, ESQ.**
**LAW OFFICES OF  THOMAS W. SARDONI**
**3890 11TH STREET, SUITE 104**
**RIVERSIDE, CALIFORNIA 92501**

Attorneys for Defendant GUARDIAN PATCH, LLC

Exhibit I

1

2

3

4

5

6

7

8

9

10

11 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12 **FOR THE COUNTY OF LOS ANGELES**

13

14 ROBERT WARREN JACKSON, et al.   )   Case No.: 20STCV32709

15               Plaintiffs,   )

                       )   **INITIAL STATUS CONFERENCE**

16                        )   **ORDER (COMPLEX LITIGATION**

                       )   **PROGRAM)**

17 VS.                   )

                       )   Case assigned for all purposes to

18                    )   HON. KENNETH R. FREEMAN

19                    )

                       )   Department: 14

20 MOSHE JACOB, fka MOSHE SCHNAPP,  )   Date: January 15, 2021

an individual, *et al.*             )   Time: 10:00 a.m.

21             Defendants.  )

22 _____)

23

24       This case has been assigned for all purposes to Judge Kenneth R. Freeman in the Complex

25 Litigation Program. An Initial Status Conference is set for January 15, 2021 at 10:00 a.m. in

26 Department 14, located at the Spring Street Courthouse, 312 N. Spring Street, Los Angeles, CA

27 90012. Counsel for all parties are ordered to attend.

28

---

INITIAL STATUS CONFERENCE ORDER

Prior to the Initial Status Conference, Counsel for all parties are ordered to meet and confer in person (no later than 21 days before the Conference) and discuss the following areas. Additionally, counsel must be prepared to discuss these issues with the Court at the Initial Status Conference.

1.     Consideration of any issues of recusal or disqualification;

2.     Issues of law and/or potentially dispositive or significant threshold issues that, if considered by the Court, may simplify or further resolution of the case;

3.     Appropriate alternative dispute resolution (ADR) mechanisms (e.g., mediation, mandatory settlement conference, arbitration, mini-trial, etc.);

4.     A plan for preservation of evidence and uniform system for identification of documents throughout the course of this litigation;

5.     A plan for document disclosure/production and additional discovery; which will generally be conducted under court supervision and by court order;

6.     Whether it is advisable to address discovery in phases so that information needed to conduct meaningful ADR is obtained early in the case;

7.     Any issues involving the protection of evidence and confidentiality;

8.     The selection of the required electronic service provider;[1]

9.     The handling of any potential publicity issues.

Counsel for the Plaintiff is to take the lead in preparing a Joint Initial Status Conference Report to be filed ten (15) court days prior to the hearing date.   The Joint Initial Status Conference Report must include the following:

---

[1] Case Anywhere (www.caseanywhere.com), File & Serve Express (www.fileandserveexpress.com). Or Case Homepage (www.casehomepage.com)

-2-

INITIAL STATUS CONFERENCE ORDER

1.  A statement as to whether additional parties are likely to be added and a proposed date by which all parties must be served;

2.  Service list (service list should identify all primary and secondary counsel, firm names, addresses, telephone numbers, email addresses and fax numbers for all counsel). The Court will issue an Order requiring electronic service.

    While the parties are free to choose one of the services shown below, this Court (Department 14) prefers that the parties select:

    - **Case Anywhere (http://www.caseanywhere.com).**

      The parties are not required to select Case Anywhere, but may chose instead either

    - File & Serve Xpress (https://secure.fileandservexpress.com) or

    - CaseHomePage (http://www.casehomepage.com).

Please agree on one and submit the parties' choice when filing the Joint Initial Status Conference Report. If there is agreement, please identify the vendor. If parties cannot agree, the Court will select the vendor at the Initial Status Conference. Electronic service is not the same as electronic filing. Only traditional methods of filing by physical delivery of original papers or by fax filing are presently acceptable.

3.  Whether any issues of jurisdiction or venue exist that might affect this court's ability to proceed with this case.

4.  Applicability and enforceability of arbitration clauses, if any;

5.  A list of all related litigation pending in other courts, a brief description of any such litigation, and a statement as to whether any additional related litigation is anticipated;

6.  A description of core factual and legal issues – the parties should address any specific contracts, or contract provisions, on which Plaintiff's claims are based; any specific statutes the interpretation of which will be required to adjudicate Plaintiff's claims; and

-3-

1   any specific Regulations the interpretation of which will be required to adjudicate

2   Plaintiff's claims;

3   7.  The parties' tentative views on an ADR mechanism and how such mechanism might be

4   integrated into the course of the litigation;

5   8.  A discovery plan, including whether discovery should be conducted in phases or

6   limited; and if so, the order of phasing or types of limitations of discovery;

7   9.  A plan for discovery of electronically stored information.  Regarding the production of

8   electronically stored information, the parties are encouraged to have their respective IT

9   consultants/employees participate in the meet and confer process.  At a minimum, the

10   following issues should be addressed with respect to the production of electronically

11   stored information: (1) the information management systems employed by the parties;

12   (2) the location and custodians of information that is likely to be subject to production

13   (including the identification of network and email servers and hard drives maintained

14   by target custodians); (3) the format in which electronically stored information will be

15   produced; (4) the type of ESI that will be produced, i.e., data files, emails, etc.; (5)

16   appropriate search criteria for focused requests;

17   10.  Whether the parties are prepared to stipulate that discovery and/or pleading stays

18   entered by the Court for case management purposes shall not be considered in

19   determining the statutory period for bringing the case to trial under Code of Civil

20   Procedure Section 583.310.

21   11.  Recommended dates and times for the following:

22   a.  The next status conference;

23   b.  A schedule for alternative dispute resolution, if it is relevant;

-4-

INITIAL STATUS CONFERENCE ORDER

c.   A filing deadline (and proposed briefing schedule) for anticipated non-

discovery motions, if any.

To the extent the parties are unable to agree on the matters to be addressed in the Joint Initial

Status Conference Report, the positions of each party or of various parties shall be set forth

separately in the Joint Statement.  The parties are encouraged to propose, either jointly or

separately, any approaches to case management that they believe will promote the fair and

efficient handling of this case.  The Court is particularly interested in identifying potentially

dispositive or significant threshold issues the early resolution of which may assist in moving the

case toward effective ADR and/or a final disposition.

Pending further order of this Court, and except as otherwise provided in the Initial Status

Conference Order, these proceedings are stayed in their entirety.  This stay shall preclude the

filing of any answer, demurrer, motion to strike, or motions challenging the jurisdiction of the

Court; however, each defendant is directed to file a Notice of Appearance for purposes of

identification of counsel and preparation of a service list.  The filing of such a Notice of

Appearances shall be without prejudice to any challenge to the jurisdiction of the Court,

substantive or procedural challenges to the Complaint, without prejudice to any affirmative

defense, and without prejudice to the filing of any cross-complaint in this action. This stay is

issued to assist the Court and the parties in managing this "complex" case through the

development of an orderly schedule for briefing and hearings on procedural and substantive

challenges to the complaint and other issues that may assist in the orderly management of this

case.  This stay shall not preclude the parties from continuing informally exchange documents that

may assist in their initial evaluation of the issues presented in this case, however shall stay all

outstanding discovery requests.

Hereafter, all management stays, including stays of discovery issued by the Court, shall not be

-5-

INITIAL STATUS CONFERENCE ORDER

considered as a stay per Code of Civil Procedure section 583.310 unless they comply with the

requirements of *Warner Bros. Entertainment v. Superior Court (2018)* 29 Cal.App.5th 243, or

specifically stipulated to by the parties.

Plaintiffs' counsel is to serve this Initial Status Conference Order on counsel for Defendant, or if

counsel is not known, on Defendant within five (5) days of the date of this Order.

If the Complaint has not been served as of the date of this Order, Counsel for Plaintiff is to serve

the Complaint within five (5) days of the date of this Order.


Dated:   9.23.20


_____

Judge Kenneth R. Freeman

-6-

Exhibit J

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Spring Street Courthouse, Department 14

**20STCV32709**                                      September 23, 2020
**ROBERT WARREN JACKSON, et al. vs MOSHE JACOB, et**            1:45 PM
**al.**

Judge: Honorable Kenneth R. Freeman          CSR: None
Judicial Assistant: B. Guerrero              ERM: None
Courtroom Assistant: T. Lewis                Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Court Order Re: Notice of Related Case;

The Court has reviewed the Notice of Related Case filed by the Plaintiffs on 9/14/2020.

Pursuant to Los Angeles Superior Court Rule 3.3(f), where one of the cases listed in the Notice of Related Case has been assigned to a Complex Litigation department, that Judge shall determine the issue.

The Court finds that the following cases, 20STCV32709 and 19STCV03320, are related within the meaning of California Rules of Court, rule 3.300(a). 19STCV03320 is the lead case. For good cause shown, said cases are assigned to Judge Kenneth R. Freeman in Department 14 at the Spring Street Courthouse for all purposes.

All future hearing dates set in the related case 19STCV03320 in Department 47 are VACATED.

Initial Status Conference is scheduled for 01/15/2021 at 10:00 AM in Department 14 at Spring Street Courthouse.

The parties are ordered to file a Joint Status Report by 12/31/2020 for this case.

The Court makes further orders pursuant to the "Initial Status Conference Order" signed and filed this date.

The stay imposed in this case on 9/10/2020, remains in effect.

Counsel for Plaintiff, Wolfgang F. Hahn is ordered to give notice to all parties in all cases and is to provide a copy of the attached Initial Status Conference Order.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Spring Street Courthouse, Department 14

**20STCV32709**                                                September 23, 2020
**ROBERT WARREN JACKSON, et al. vs MOSHE JACOB, et**                    1:45 PM
**al.**


Judge: Honorable Kenneth R. Freeman          CSR: None
Judicial Assistant: B. Guerrero               ERM: None
Courtroom Assistant: T. Lewis                 Deputy Sheriff: None

Certificate of Mailing is attached.

Exhibit K

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>09/23/2020<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ B. Guerrero _____ Deputy |
| PLAINTIFF/PETITIONER:<br>Robert Warren Jackson  et al | |
| DEFENDANT/RESPONDENT:<br>Moshe Jacob et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>20STCV32709 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Court Order Re: Notice of Related Case;) of 09/23/2020  upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Wolfgang F. Hahn
Wolfgang F. Hahn & Associates
7160 Caminito Pepino
La Jolla, CA  92037

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: <u>09/23/2020</u>

By:   <u>B. Guerrero</u>
         Deputy Clerk

**CERTIFICATE OF MAILING**

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is 21700 Oxnard Street, Suite 1750, Woodland Hills, California 91367.

On the below date, I electronically filed the **NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION** with the Clerk if the United States District Court for the Central District of California, using the CM/ECF System. The Court's CM/ECF System will send an email notification of the foregoing filing to the following parties and counsel of record who are registered with the Court's CM/ECF System:

**(BY ELECTRONIC SERVICE VIA CM/ECF SYSTEMS)**
    In accordance with the electronic filing procedures of the Court, service has been effected on the aforesaid party(s) above, whose counsel of record is a registered participant of CM/ECF, via electronic service through the CM/ECF systems.


**X (SERVED BY UNITED STATES MAIL):**
On October 13, 2020, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Wolfgang F. Hahn
Wolfgang F. Hahn & Associates
7160 Caminito Pepino
La Jolla CA 92037

**X (FEDERAL)**
I declare under penalty of perjury that the foregoing is true and correct, and that I am employed at the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 13, 2020, at Woodland Hills, California.

/s/ Tatyana Menachian
**Tatyana Menachian**