Wolfgang F. Hahn, Esq. (SBN. 061385)
Wolfgang F. Hahn + Associates
7160 Caminito Pepino
La Jolla, California 92037
Telephone : 858. 535. 1000
Telecopier : 858. 456. 5080
E-Mail Address: ellobo1@san.rr.com

[SPACE BELOW PROVIDED FOR FILING STAMP ONLY]

Attorneys for Plaintiffs Robert Warren Jackson and Gregory Bauer

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT COURT OF CALIFORNIA - CENTRAL DISTRICT

| | |
|---|---|
| ROBERT WARREN JACKSON, individually and derivatively; and GREGORY BAUER, individually and derivatively;<br><br>                                   Plaintiffs,<br><br>v.<br><br>MOSHE JACOB fka MOSHE SCHNAPP, an individual; GUARDIAN PATCH, LLC and, BEN CLYMER'S THE BODY SHOP PERRIS, LLC, both California limited liability companies; RANDOLPH BEN CLYMER, an individual; REKO HOLDINGS, LLC, a Nevada limited liability company; STANLEY HILLS, LLC, a Nevada limited liability company; YOSSI ATTIA, an individual; ANAT ATTIA, an individual; J.I.L. VENTURE, LLC, a Nevada limited liability company; ROSEMARIE "PINKY" CLAMOR, an individual; GLEN EAGLE ACQUISITIONS CORP. LP, an entity of unknown origin and domicile; DARREN DUNCKEL, an individual; DANNY RITTMAN, an individual; MANSOUR KHATIB, an individual; MICHAEL MURRAY, an individual; EMPIRE | Case No. 2:20-cv-09399-RGK-AGRx<br><br>Removed from Los Angeles Superior Court Case No. 20 STCV 32709<br><br><br>**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR:**<br><br>**[1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY;  [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND [4] NEGLIGENCE (VERIFIED)** |

STOCK TRANSFER, INC., a Nevada
corporation; PATRICK MOKROS, an
individual; and DOES 1 through 25,
inclusive,

                                Defendants.

and

GBT TECHNOLOGIES, INC. fka
GOPHER PROTOCOL, INC., a Nevada
corporation;

                                Nominal Defendant.

Plaintiffs ROBERT WARREN JACKSON and GREGORY BAUER, individually and derivatively on behalf of nominal defendant GBT TECHNOLOGIES, INC., a Nevada corporation, fka GOPHER PROTOCOL, INC. seek damages against certain officers, directors, executive consultants and/or affiliates of nominal defendant GBT TECHNOLOGIES, INC.'s ("nominal defendant GBT", or "GBT") that received material nonpublic information about GBT's financial results and exploited their respective executive positions in committing violations of law, including breaches of fiduciary duties, waste of corporate assets, unjust enrichment and violations of California Corporations Code that occurred between November 2017 and the present, including a series of coordinated illegal private stock sales that have caused substantial monetary losses and other damages to nominal defendant GBT and its shareholders.

## NATURE AND SUMMARY OF THE ACTION

Touting itself as both an "emerging growth company" and "a development-stage company", over a period of years, nominal defendant GBT(Gopher),[1] trading as a

---

[1]    Until its most recent name change on or about 29 July 2019, the series of events complained of herein occurred primarily while nominal defendant GBT was conducting business solely under the name of Gopher Protocol, Inc. Accordingly, in the context of this Complaint, the terms "nominal defendant GBT", "nominal defendant GBT(Gopher)" or "GOPHER are used interchangeably to describe nominal defendant GBT.

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND  [4] NEGLIGENCE**

"penny stock" [2] on the OTCQB, entered into a plethora of business transactions, seeking debt and equity growth financing through acquisitions and joint ventures funded primarily by the sale and transfer of large volumes of GBT(Gopher's) issued, but unregistered securities, routinely relying upon exemptions allegedly available  under Section 4(a)(2) of the Securities Act and/or Rule 506 of Regulation D.[3] Each of the named Individual Insider Defendants owed nominal defendant GBT(Gopher) and its shareholders the highest fiduciary duties of loyalty, good faith, fair dealing, due care, and oversight in managing and administering GBT(Gopher's) business affairs, ensuring strict compliance with all applicable laws, rules and regulations, particularly the Company's insider trading policy, and establishing appropriate criteria for officers, directors, executive consultants and affiliated entities restricted from trading in GBT(Gopher's) stock, thereby avoiding the illegal sale of nominal defendant GBT(Gopher's) common shares by any insiders around and in between quarterly earnings announcements. On a regular basis, each of the named Individual Insider Defendants had access to and received material nonpublic information pertinent to GBT(Gopher's) periodic earnings, financial results and their relative sustainability. Each of these Individual Insider Defendants was responsible, to some degree, in the preparation and filing of federally mandated Form 10-Q's (quarterly reports), [4] 10-K's (Annual Reports) and Form 8-K's, when required,[5] with the Securities and Exchange

---

[2]  Historically, "penny stocks" in micro or nano cap public companies have always been considered  highly risky investments due to their size, stability, and potential for manipulation.

[3]  Under the federal securities laws, any offer or sale of a security must either be registered with the SEC or meet an exemption. Historically, a majority of  GBT's issuance unregistered securities and their offer and sale of securities were made in reliance upon the exemptions contained in Section 4(a)(2) of the Securities Act ("Private Placement") and/or Rule 506 of Regulation D promulgated thereunder.

[4]  Form 10-Q Reports include unaudited financial statements and provide a continuing view of a company's financial position during the year, which must be filed for each of the first three (3) fiscal quarters of a company's fiscal year.

[5]  Form 8-K Reports provide updates of certain material corporate events on a more current basis and are used to announce major events or developments that shareholders should know about.

Commission ("SEC") and press releases, that responsibly disseminated GBT(Gopher's) management's comprehensive assessments and summaries of GBT's financial performance, finances, financial outlook, risks, opportunities and current operations in candid and transparent manner.

Instead, starting in the fourth quarter of 2017 and continuing to the present, these Individual Insider Defendants have engaged in the following fraudulent acts and conduct:

(i)    Engaging in a continuous pattern of "assembly line-like" illusory transactions sorely lacking true value, fashioned and structured to appear as legitimate business transactions, either (1) seeking debt financing through the issuance of promissory notes convertible to Gopher shares of common stock; or (ii) acquisitions and joint ventures whereby GBT(Gopher) allegedly obtained part-ownership and/or exclusive licensing rights to allegedly valuable intellectual  the equity convertible and equity growth financing through utilizing Securities Purchase Agreements or funded primarily by the sale and transfer of large volumes of GBT(Gopher's) issued, but unregistered securities and regularly and routinely reported in GBT's press releases and its 8-K, 10-Q and 10-K Forms ("Reports") filed with the SEC.

(a)    GBT(Gopher) touted itself as "an emerging growth company that is creating and patenting innovative mobile microchip (ICs) and software technologies based on the GopherInsight ™ technology platform." [6]

(b)    By way of example, GBT(Gopher) entered into a transaction with defendant Guardian Patch, LLC, an entity solely controlled by insider defendant Moshe,  whereby "on 29 March 2016, the Company Gopher "contributed  all of its rights relating to its proprietary microchip that is within a sticky patch package (the "Patch") to Guardian in consideration of 50% of the profits generated by Guardian LLC, and a commitment from Guardian LLC" to invest "all needed funds for the purpose of developing the

---

[6]    See, p. 4, (or, p. 5/108, GBT's 2018 Annual Report dated 27 March 2019.

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND  [4] NEGLIGENCE

GREGORY BAUER + ROBERT WARREN JACKSON v.  MOSHE JACOB, ET AL.      PAGE  4

Patch and related products to the Patch, as well as funding the working capital needs of the Company." [7]

(c)   Albeit that its GopherInsight™ technology had never generated any income whatsoever, on 25 September 2018, GBT(Gopher) "entered into a Joint Venture Interest Purchase Agreement with Guardian, LLC pursuant to which the Company purchased Guardian LLC's 50% interest in a joint venture ('JV Interest') previously entered between the parties in March 2016 . . ." In return, Guardian was issued 12,500,000 shares of GBT(Gopher's) common stock valued at $11,750,000 "based on the closing stock price of the Company's common stock at the date of the Agreement." [8]

(ii)   Fraudulently hyped and artificially "puffed up" GBT(Gopher's) financial viability, through false and misleading Form 8-K, 10-Q and 10-K filings and press releases, intentionally misleading investors by concealing and failing to honestly report that, while GBT's 1 September 2017 acquisition of the "Preway/UGO (Assets) generated what would appear to be considerable gross income, when all expenses were considered", GBT(Gopher's) Preway/UGO operations were neither "actually profitable" nor sustainable; [9]

(iii)   Concurrently, orchestrating, managing and systematically coordinating a "market manipulation fraud" scheme (commonly referred to as a "pump-and-dump") designed to artificially inflate and boost the price of GBT's stock through the dissemination of false, misleading, positive and highly exaggerated public reports, statements, press releases and promotions;

(a)   Included in GBT's promotional activities, a "stealth promotional network" by hiring and compensating a small army of writers, both real and imaginary, who systematically posted hundreds of bullish and highly favorable analysis pieces about GBT across numerous investment sites, surreptitiously touting GBT's stock, without disclosing that they had been compensated. In effect, members of the public, in reading and reviewing these posted

---

[7]   See, p. 53 (or, p. 72/114, GBT's 2017 Annual Report dated 11 April 2018.
[8]   See, p. 9 (or, p. 10/108, GBT's 2018 Annual Report dated 27 March 2019.
[9]   p. 29, ¶ 60 A, ll. 17-18; p. 35, ¶ 83 C., ll. 11-12, GOPHER's SACC filed 12 November 2019 in related matter (Case No. 19 STCV 03320).

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND  [4] NEGLIGENCE**

bullish and highly favorable analysis, were lead to believe that these were impartial analysis rather than paid advertising;

(iv)   Coupled with various manipulative trading stratagems, all with the intended purpose of giving the market the false impression that there was real demand for GBT(Gopher's) securities, thereby manipulating the price of nominal defendant GBT(Gopher's) publicly-traded common shares in the marketplace higher through their coordinated plan of short-term hype ("pump"); and

(v)   Then selling their purportedly unrestricted shares at the top of the market ("dump") for their own illicit personal financial gain and benefit, ultimately leaving those who bought on the ascent with huge losses as GBT(Gopher's) shares of common stock inevitably crashed, all to the direct detriment of nominal defendant GBT(Gopher), its  shareholders, including plaintiffs JACKSON and BAUER.[10]

By engaging in these acts and pattern of conduct, the named Individual Insider Defendants, and each of them, collectively orchestrated a series of transactions in nominal defendant GBT(Gopher's) shares of common stock creating actual or apparent active trading in GBT(Gopher's) securities, raising and/or depressing the price of nominal defendant GBT(Gopher's) securities for the purpose of inducing the purchase or sale of such securities by others, while concurrently selling and unloading their unregistered GBT(Gopher's) shares of common stock. In this manner, the named Individual Insider Defendants artificially created and manufactured the false or misleading appearance of active trading in nominal defendant GBT(Gopher's) shares of common stock and crafted a false and misleading appearance with respect to the market for GBT(Gopher's) shares of common stock.

---

[10]   "Pump and dump" ("P + D") is a form of securities fraud that involves artificially inflating the price of an owned stock through false and misleading positive statements, in order to sell the cheaply purchased stock at a higher price. Once the operators of the scheme "dump" (sell) their overvalued shares, the price falls and investors lose their money. This is most common with small cap and very small corporations, i.e. "microcaps". Typically, P + D schemes target the category of stocks most often associated with this scheme, namely, "penny stocks".

# PRELIMINARY ALLEGATIONS

## Plaintiffs

1.      Plaintiff ROBERT WARREN JACKSON ("plaintiff JACKSON", or "JACKSON") is  an individual, who is, and at all times relevant to this action, was a resident of the State of Alabama and is currently the owner of Three Million (3,000,000) shares of nominal defendant GBT's common stock (CUSIP 38268V108/Share Certificate No. B75637; No. 451451) and presently has an executed Stock Warrant Agreement dated 31 August 2017 s for the purchase of an additional Five Million (5,000,000) shares of nominal defendant GBT's common stock.

2.      Plaintiff GREGORY BAUER ("plaintiff BAUER", or "BAUER") is an individual, who is, and at all times relevant to this action, was a resident of conducted business in Cobb County, State of Georgia, is currently the owner of Two Million (2,000,000) shares of nominal defendant GBT's common stock (CUSIP 38268V108/ Certificate No. B75630; No. 447) and presently holds an executed Stock Warrant Agreement also dated 1 September 2017 for the purchase of an additional Four Million (4,000,000) shares of nominal defendant GBT's common stock.

## Nominal Corporate Defendant

3.      Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that, at all times relevant herein, defendant MO JACOB fka MOSHE SCHNAPP ("defendant JACOB", or "JACOB") formed or caused to be formed three (3) Nevada corporations, namely: (1) Forex International Trading Corp. ("FOREX") on 22 July 2009, serving as its Incorporator and its initial Chief Executive Officer ("CEO"); (2) GBT Technologies, Inc. also on 22 July 2009; and (3) subsequently on 13 February 2015 (after FOREX's expulsion from the second tier OTCBQ trading platform by the OTC Markets Group), defendant Gopher Protocol, Inc. ("GOPHER"). Each of these corporations were organized under the laws of the State of Nevada with their principal places of business in Los Angeles County, State of California, most recently at 2500

Broadway, Suite F-125, Santa Monica, California 90404. Initially, both GOPHER and GBT were wholly owned subsidiaries of FOREX. In February 2015, FOREX entered into a merger with GOPHER with FOREX the "surviving corporation", which then changed its name to GOPHER, Subsequently, on 29 July 2019, again after a merger with GBT, defendant GOPHER, as the "surviving corporation", filed an amendment to its Articles of Incorporation amending its name to GBT Technologies, Inc.

4.     Through its Individual Insider Defendants, at all times relevant herein, nominal defendant GBT held itself out as "a development-stage" and "emerging growth technology company" focusing on wireless communications infrastructure through advanced chip design that has developed a portfolio of Intellectual Property integral to the rollout of the Internet of Things ("IoT"), as well as applications relating to artificial intelligence. GBT(Gopher's) openly claimed that it owned and controlled a portfolio of Intellectual Property that when commercialized would include smart microchips, mobile application software and supporting Cloud software. GBT(Gopher's) technology contemplates the creation of a global network with the core of its system to hinge and depend upon its advanced microchip technology that would be able to be installed in any mobile device worldwide. GBT(Gopher's) envisioned this system as an internal, private network between all enabled mobile devices providing shared processing, advanced mobile database management/sharing and enhanced mobile features.

5.     At all times relevant herein, defendant GBT(Gopher's), given its desire that its common shares be traded publicly, filed regular and periodic reports with the Securities and Exchange Commission's ("SEC") EDGAR filing system, the SEC's required filing format, containing financial results and other material information typically through its filing of SEC Forms 10-Q, 10-K and 8-K. At all relevant times, until 22 May 2019, defendant GBT(Gopher's) stock was publicly traded under the symbol (OTCQB; GOPH)

6.      Headquartered in New York, OTC Markets Group is the owner and operator of the largest U.S. electronic quotation and trading system for the over-the-counter ("OTC") securities providing price and liquidity information for almost 10,000 over-the-counter securities. The OTC Markets Group designates securities in one of three (3) markets to indicate the level of financial and corporate disclosure provided by the companies using its quotation system.

(i)    The OTCQX market includes both multinational companies seeking access to U.S. investors and domestic growth companies. To be traded on this tier, companies must undergo a qualitative review by OTC Markets Group. Companies are not required to be registered with or reporting to the SEC, but they must post financial information with OTC Markets Group. In addition, U.S. companies must be ongoing operations (i.e., no shells) and may not be in bankruptcy, while foreign issuers must meet the requirements of qualified foreign exchanges. Additional oversight of OTCQX securities is provided by requiring every issuer to be sponsored by approved third-party investment banks or law firms, called OTCQX Sponsors.

(ii)   The OTCQB® Venture Market contains a one penny ($0.01) bid price requirement "intended to remove companies that are most likely to be the subject of dilutive stock fraud schemes and promotions". Each company verifies via an annual OTCQB Certification, signed by the company CEO or CFO, that their company information is current, including information about a company's reporting status, company profile, information on management and boards, major shareholders, law firms, transfer agents, and IR/PR firms. Investor confidence improves when there is more information about a company's ownership structure, professional advisors and service providers. This certification will be required for any security newly qualified to be publicly quoted by a broker-dealer under SEC Rule 17 CFR § 240.15c2-11, or when a Pink traded company becomes a current SEC reporting company, beginning May 1, 2014. International Reporting companies are also allowed to upgrade from Pink to OTCQB if they publish their Rule § 12g3-2(b) compliant disclosure online and verify their company profile.

NB   The SEC only recognizes the OTCQX and OTCQB as established public markets.

(iii)   The Pink® Open Market is the lowest and most speculative tier of the three marketplaces for the trading of OTC stocks. **It is an open market that has no financial standards or reporting requirements.** The stock of companies in the Pink tier are not required to be registered with the SEC. Companies in this category are further categorized by the level and timeliness of information they provide to investors and may have current, limited, or no public disclosure. *(emp. add.)*

7.     It is important to note that, <u>apart from the OTCQX market</u>, which has rules that include financial requirements, the designations do not signify issuer quality or merit of any security. Designation is based on the level and timeliness of a company's disclosure and OTCQB and any of the Pink categories can include both high quality as well as speculative, distressed, or highly questionable companies. Strict promotion policies have been enacted to flag these companies and deny their application for trading if they engage actively in campaigns marked by misleading information or manipulative promotions. *(emp. add.) Wikipedia, OTC Markets Group.*

**<u>Director, Officer and Executive Consultant Defendants</u>**

8.     Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that defendant MO JACOB fka MOSHE SCHNAPP ("defendant JACOB") is an individual, who is, and at all relevant to this action, was a resident of the County of Los Angeles and conducted business in the County of Los Angles, State of California. At all times relevant herein, defendant JACOB possessed and exercised, directly or indirectly, the power to control, direct and/or cause the direction of nominal defendant GBT's management, its Board of Directors and its executive consultant in the implementation of GBT(Gopher's) policies, business transactions and all corporate decisions whether through the ownership of voting securities and practices, by contract or otherwise. Since

its inception on 22 July 2009, defendant JACOB has had an intimate knowledge of GBT(Gopher), participated in its day-to-day affairs and has had, and exercised, the powers to control GBT(Gopher's) corporate actions. Intentionally avoiding any official corporate title or office to skirt liability, defendant JACOB provided GBT(Gopher's) leadership, acted as nominal defendant GBT(Gopher's) chief executive officer and in sworn testimony, testified that he acted as "a consultant to (Gopher's) officers and board of directors . . "regarding (any and all) potential transactions for the past 4 or 5 years." [11]

9.     Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that defendant MICHAEL MURRAY ("defendant MURRAY") is an individual, who is, and at all relevant to this action, was a resident of the County of Los Angeles and has acted as nominal defendant GBT's President/Chief Executive Officer, Chairman of the Board, Chief Financial Officer, Corporate Secretary and Director.

10.     Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that defendant DANNY RITTMAN ("defendant RITTMAN") is an individual, who is, and at all relevant to this action, was a resident of the County of San Diego and regularly conducts business in the County of Los Angeles, at times acting as GBT(Gopher's) Chief Executive Officer, Chief Technology Officer and Director.

11.     Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that defendant MANSOUR KHATIB ("defendant KHATIB") is an individual, who is, and at all times relevant to this action, was a resident of the County of Los Angeles, has acted in various official capacities on nominal defendant GBT(Gopher's) behalf, including that of Interim Chief Executive Officer, Corporate Treasurer and Secretary,[12] while conducting GBT(Gopher's) business operations in the Los Angeles

---

[11]     p. 4, ¶ 2, Final Award dated 31 January 2020 (JAMS Case Reference No. 126005395) reported by GBT on 3 February 2020 in its Form 8-K with Award attached as Exh. 99-1.

[12]     Interestingly, as of date of this Complaint, Mr. Khatib is listed as the Corporate Secretary and Treasurer on the Nevada Secretary of State's Website, while on the California Secretary of State's Website, he is unlisted.

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND  [4] NEGLIGENCE

GREGORY BAUER + ROBERT WARREN JACKSON v.  MOSHE JACOB, ET AL.                    PAGE  11

County as defendant GBT(Gopher's) Chief marketing Officer ("CMO"), Interim Chief Executive Officer, Chief Marketing Officer, Corporate Secretary and Treasurer and Director. Defendant KHATIB is, and was, and at all times relevant to this action, responsible for overseeing and maintaining GBT(Gopher's) internal control system to ensure compliance with  was being properly and continuously enforced and implemented, as evidenced by GBT's press release and information provided by GBT(Gopher) to the OTC Markets Group on or about 13 December 2017.

12.    Plaintiffs JACKSON and BAUER are informed and believe and thereon that defendant DARREN DUNCKEL ("defendant DUNCKEL", or "DUNCKEL") is an individual, who is, and at all times relevant to this action, was a resident of the County of Los Angeles and conducted business in the County of Los Angeles. , since 1 April 2018 acting in the capacity of defendant GBT(Gopher's) Chief Executive Officer. In addition, commencing sometime in 2011 through a date presently unknown,  defendant DUNCKEL served as FOREX's Chief Executive Officer. Since the summer of 2017, prior to its name change, he, according to his sworn testimony, provided "shareholder analytics to evaluate shareholder movements with respect to" nominal defendant GBT(Gopher).

13.    Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that defendant ROSEMARIE "PINKY" CLAMOR ("defendant CLAMOR", or "CLAMOR") is an individual, who is, and at all times relevant to this action, was a resident of the County of Los Angeles and conducted business in the County of Los Angeles, acting as executive consultant and agent of defendant GBT(Gopher).

14.    Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that defendant RANDOLPH BEN CLYMER ("defendant CLYMER") is an individual, who is, and at all relevant to this action, was a resident of the County of Riverside and has acted as defendant GUARDIAN PATCH, LLC's Manager since 11 August 2017 and conducted business

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND  [4] NEGLIGENCE

GREGORY BAUER + ROBERT WARREN JACKSON v.  MOSHE JACOB, ET AL.          PAGE  12

with nominal defendant GBT in the City and County of Los Angeles.

15.     Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that defendant defendants YOSSI ATTIA and ANAT ATTIA (collectively, "defendants ATTIA") are each  individuals, who are, and remain, at all relevant to this action, residents of the County of Los Angeles and conducting business in the County of Los Angles and wholly controlled and dominated defendant STANLEY HILLS, LLC.

**Controlling and Affiliate Shareholder Defendants**

16.     Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that defendant GUARDIAN PATCH, LLC ("defendant GUARDIAN", or "GUARDIAN") is a California liability company, formed and organized on 1 March 2016 under the laws of the State of California by defendant JACOB, as its organizer, with its principal place of business at 12203 Magnolia Avenue, Riverside, California 92503, conducting business in the County of Los Angeles and wholly controlled and dominated by defendant JACOB with the assistance and full cooperation of defendant CLYMER, who became defendant GUARDIAN's Manager on 11 August 2017.

17.     Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that defendant BEN CLYMER'S THE BODY SHOP PERRIS, LLC ("defendant BODY SHOP", or "BODY SHOP") is a California liability company, formed and organized on 6 July 2016 under the laws of the State of California by defendant BEN CLYMER, as its organizer, with its principal place of business at 12203 Magnolia Avenue, Riverside, California 92503, conducting business in the County of Los Angeles and wholly controlled and dominated by defendant CLYMER with the assistance and full cooperation of defendant JACOB, who became defendant GUARDIAN's Manager on 11 August 2017.

18.     Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that, at all times relevant herein, defendant REKO HOLDINGS, LLC ("defendant REKO") is and remains a Nevada limited liability company, formed and organized

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND  [4] NEGLIGENCE**

**GREGORY BAUER + ROBERT WARREN JACKSON v.  MOSHE JACOB, ET AL.                    PAGE  13**

1   under the laws of the State of Nevada with Robert M. Yaspan as its Manager, as of 25

2   January 2018. Although defendant REKO is not qualified to do business in the State of

3   California, REKO is wholly controlled by defendant MOSHE JACOB who owns

4   100.0% of its membership interest are owned by conducts regular business activities in

5   the City and County of Los Angeles. Plaintiffs JACKSON AND BAUER are further

6   informed, believe and thereon allege that defendant REKO, at one point, prior to  its sale

7   of approximately of 33,000,000 shares of GBT common stock owned or controlled

8   approximately 70,000,000 shares of GBT's common  stock, representing a significant

9   percentage of GBT(Gopher's) total issued and outstanding shares, while its equitable

10   ownership of defendant REKO's membership interest structure is not publicly

11   manifested.

12        19.     Plaintiffs JACKSON and BAUER are informed and believe and thereon

13   allege that defendant GLEN EAGLE ACQUISITIONS, LP aka GLEN EAGLE

14   ACQUISITIONS CORP., LP ("defendant GLEN EAGLE, or, "GLEN EAGLE") is an

15   entity of unknown origin, specializing in building and consolidating synergist businesses

16   within the Internet of Things (IoT), Artificial Intelligence ("AI") and mobile

17   technologies and wholly controlled and dominated by defendant DUNCKEL, as its

18   managing partner.

19        20.     Plaintiffs JACKSON and BAUER are informed and believe and thereon

20   allege that defendant STANLEY HILLS, LLC ("defendant S. HILLS") is a Nevada

21   limited liability company, formed and organized under the laws of the State of Nevada,

22   qualified to do business in California with its principal place of business at 10611/2 N.

23   Spaulding Avenue, West Hollywood, California 90046, wholly controlled and

24   dominated by defendants ATTIA.

25        21.     Plaintiffs JACKSON and BAUER are informed and believe and thereon

26   allege that defendant J.I.L. VENTURE**,** LLC ("defendant JIL") is and remains a Nevada

27   limited liability company, formed and organized under the laws of the State of Nevada

28

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND  [4] NEGLIGENCE**

**GREGORY BAUER + ROBERT WARREN JACKSON v.  MOSHE JACOB, ET AL.**                                    **PAGE  14**

1    and, although conducting business in Los Angeles, California, is not qualified to do

2    business in the State of California and is wholly controlled and dominated by defendant

3    CLAMOR.

4    **Corporate Transfer Agent + Controlling Executive/Principal Defendants**

5         22.    Plaintiff  JACKSON and BAUER are informed and believe and thereon

6    allege that, at all times relevant herein, defendant EMPIRE STOCK TRANSFER, INC.

7    ("defendant EMPIRE", or "EMPIRE") is a Nevada corporation, formed and organized

8    under the laws of the State of Nevada, with its principal place of business in the City of

9    Henderson, Clark County, Nevada, regularly doing business with California corporations

10   and their executives. Stock transfer agents, such as EMPIRE,  are regulated by the SEC

11   pursuant to Section 17A of the Securities Act of 1934 ("Exchange Act"), which

12   regulations are designed to ensure that transfer agents act promptly and adhere to their

13   duties and responsibilities to both the issuer and its shareholders. In addition, State laws

14   governing the activities of a transfer agent are based on Article 8, California's

15   Commercial Code, which covers investment securities and spells out the rights and

16   liabilities of the buyer, seller, and transfer agent in transactions involving securities. At

17   all times relevant herein until on or around 19 March 2019, defendant EMPIRE was

18   GBT(Gopher's) appointed stock transfer agent and in that capacity processed all of its

19   common and preferred stock transfers.

20        23.    Plaintiffs JACKSON and BAUER are informed and believe and thereon

21   that defendant PATRICK MOKROS ("defendant MOKROS") is an individual, who is,

22   and at all times relevant to this action, while a resident of the State of Ohio, conducts

23   business in both Henderson, Nevada and the City and County of Los Angeles, State of

24   California acting in the capacity of defendant GOPHER's Chief Executive Officer.

25   "**Alter Ego" Allegations As To Certain Individual Insider Defendants**

26        24.    Plaintiffs JACKSON and BAUER are informed and believe and thereon

27   allege that, at all times relevant herein, defendant GUARDIAN was the "alter ego" of

28

defendants JACOB and CLYMER either as the sole managers and owners of all of defendant GUARDIAN 's membership interests and/or wholly controlled all legal and/or equitable interests of defendant GUARDIAN, such that there now exists, and has at all times relevant herein, existed, a unity of interest in ownership between defendants JACOB and CLYMER and defendant GUARDIAN, such that any individuality and separateness between these defendants, such that defendant GUARDIAN is a mere shell and sham without capital, assets, stock or stockholders. Defendants JACOB and CLYMER have completely, totally and unqualifiedly controlled, dominated, managed and operated defendant GUARDIAN and intermingled its assets with their own. Defendant GUARDIAN was conceived, intended and used by defendants JACOB, CLYMER and possibly others, as a device and/or artifice intentionally designed to avoid individual liability and for the purpose of substituting a financially insolvent corporate entity in the place and stead of individual defendants JACOB and CLYMER to assist in diverting and secreting assets for defendants JACOB and CLYMER's personal benefit and economic gain and enrichment to the detriment of nominal defendant GBT and its shareholders.

25. Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that, at all times relevant herein, defendant REKO was the "alter ego" of defendants JACOB either as the sole managers and owners of all of defendant 's membership interests and/or wholly controlled all legal and/or equitable interests of defendant , such that there now exists, and has at all times relevant herein, existed, a unity of interest in ownership between defendants JACOB and CLYMER and defendant , such that any individuality and separateness between these defendants, such that defendant is a mere shell and sham without capital, assets, stock or stockholders. Defendants JACOB and CLYMER have completely, totally and unqualifiedly controlled, dominated, managed and operated defendant and intermingled its assets with their own. Defendant was conceived, intended and used by defendants JACOB,

CLYMER and possibly others, as a device and/or artifice intentionally designed to avoid individual liability and for the purpose of substituting a financially insolvent corporate entity in the place and stead of individual defendants JACOB and CLYMER to assist in diverting and secreting assets for defendants JACOB and CLYMER's personal benefit and economic gain and enrichment to the detriment of nominal defendant GBT and its shareholders.

26.    Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that, at all times relevant herein, defendant GLEN EAGLES ACQUISITIONS CORP. LP ("defendant GLEN EAGLE", or "GLEN EAGLE) is an entity of unknown origin and domicile was the "alter ego" of defendant DUNCKEL either as the sole director, officer, principal and/or owner of defendant GLEN EAGLE and/or wholly controlled all legal and/or equitable interests of defendant GLEN EAGLE, such that there now exists, and has at all times relevant herein, existed, a unity of interest in ownership between defendant DUNCKEL, such that any individuality and separateness between these two (2) defendants, such that defendant GLEN EAGLE is a mere shell and sham without capital, assets, stock or stockholders. Defendant DUNCKEL has completely, totally and unqualifiedly controlled, dominated, managed and operated defendant GLEN EAGLE and intermingled its assets with his own. Defendant GLEN EAGLE was conceived, intended and used by defendant DUNCKEL and possibly others, as a device and/or artifice intentionally designed to avoid individual liability and for the purpose of substituting a financially insolvent corporate entity in the place and stead of individual defendant DUNCKEL to assist him in diverting and secreting assets for defendant DUNCKEL's personal benefit and economic gain and enrichment to the detriment of defendant GOPHER and its shareholders.

27.    Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that, at all times relevant herein, defendant JIL was the "alter ego" of defendant CLAMOR either as the sole director, officer, principal and/or owner of defendant JIL

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND  [4] NEGLIGENCE

GREGORY BAUER + ROBERT WARREN JACKSON v.  MOSHE JACOB, ET AL.                    PAGE  17

and/or wholly controlled all legal and/or equitable interests of defendant JIL, such that there now exists, and has at all times relevant herein, existed, a unity of interest in ownership between defendant CLAMOR and defendant JIL, such that any individuality and separateness between these two (2) defendants, such that defendant JIL is a mere shell and sham without capital, assets, stock or stockholders. Defendant CLAMOR has completely, totally and unqualifiedly controlled, dominated, managed and operated defendant JIL and intermingled its assets with his own. Defendant JIL was conceived, intended and used by defendant CLAMOR and possibly others, as a device and/or artifice intentionally designed to avoid individual liability and for the purpose of substituting a financially insolvent corporate entity in the place and stead of individual defendant CLAMOR to assist him in diverting and secreting assets for defendant CLAMOR's personal benefit and economic gain and enrichment to the detriment of nominal defendant GBT and its shareholders.

28.     Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that, at all times relevant herein, defendant S. HILLS, LLC ("defendant S. HILLS ") was wholly controlled and dominated by defendants ATTIA, such that defendant S. HILLS was the "alter ego" of defendants ATTIA either as the sole director, officer, principal and/or owner of defendant S. HILLS and/or wholly controlled all legal and/or equitable interests of defendant S. HILLS, such that there now exists, and has at all times relevant herein, existed, a unity of interest in ownership between defendants ATTIA and defendant S. HILLS, such that any individuality and separateness between these two (2) defendants, such that defendant S. HILLS is a mere shell and sham without capital, assets, stock or stockholders. Defendants ATTIA have completely, totally and unqualifiedly controlled, dominated, managed and operated defendant S. HILLS and intermingled its assets with their own. Defendant S. HILLS was conceived, intended and used by defendants ATTIA and possibly others, as a device and/or artifice intentionally designed to avoid individual liability and for the purpose of substituting a financially

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND  [4] NEGLIGENCE

GREGORY BAUER + ROBERT WARREN JACKSON v.  MOSHE JACOB, ET AL.                    PAGE  18

insolvent corporate entity in the place and stead of individual defendants ATTIA to assist him in diverting and secreting assets for defendants ATTIA's personal benefit and economic gain and enrichment to the detriment of defendant GOPHER and its shareholders.

29.    Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that, at all times relevant herein, defendant BODY SHOP) was wholly controlled and dominated by defendants CLYMER and JACOB, such that defendant BODY SHOP was the "alter ego" of defendants ATTIA either as the sole director, officer, principal and/or owner of defendant BODY SHOP and/or wholly controlled all legal and/or equitable interests of defendant BODY SHOP, such that there now exists, and has at all times relevant herein, existed, a unity of interest in ownership between defendants ATTIA and defendant BODY SHOP, such that any individuality and separateness between these two (2) defendants, such that defendant BODY SHOP is a mere shell and sham without capital, assets, stock or stockholders. Defendants CLYMER and JACOB have completely, totally and unqualifiedly controlled, dominated, managed and operated defendant BODY SHOP and intermingled its assets with their own. Defendant BODY SHOP was conceived, intended and used by defendants CLYMER and JACOB and possibly others, as a device and/or artifice intentionally designed to avoid individual liability and for the purpose of substituting a financially insolvent corporate entity in the place and stead of individual defendants CLYMER and JACOB to assist him in diverting and secreting assets for defendants CLYMER and JACOB's personal benefit and economic gain and enrichment to the detriment of defendant GOPHER and its shareholders

30.    Plaintiffs JACKSON and BAUER are further informed and believe and thereon allege that defendant RITTMAN has utilized an entity of unknown name and origin operating as his "alter ego" of which he is either the sole director, officer, principal and/or owner of, which he wholly controls all legal and/or equitable interests,

1  such that there now exists, and has at all times relevant herein, existed, a unity of interest

2  in his ownership and the unknown entity, such that any individuality and separateness

3  between these two. Upon plaintiff's discovery of the unknown entity's identity utilized

4  by defendant RITTMAN, said individual or entity will be joined as a Doe defendant.

5  **Management And "Control" Structure Of Nominal Defendant GBT**

6      31.    Plaintiffs JACKSON and BAUER are informed and believe and thereon

7  allege that, at all times relevant herein, defendants MURRAY, DUNCKEL, RITTMAN,

8  KHATIB, CLAMOR, YOSSI ATTIA, ANAT ATTIA and through the utilization of

9  various entities, including defendants REKO HOLDINGS, GUARDIAN, JIL, GLEN

10  EAGLE, S. HILLS, BODY SHOP and others presently unknown to plaintiffs – all under

11  the direct control and supervision, directly or indirectly, of defendant JACOB,

12  (collectively, at times, the "Individual Insider Defendants"), usurped control of nominal

13  defendant GBT and have been in charge of all business operations, sales, marketing and

14  promotions, implementation of all of defendant GBT(Gopher's) business strategies,

15  including but not limited to, its day-to-day operations, the implementation of all

16  financial, accounting, and budgeting of all nominal defendant GBT's business

17  operations. At all times relevant herein,  each of these Individual Insider Defendants had

18  had an intimate knowledge of GBT(Gopher), participated in its day-to-day affairs and

19  collectively, they have had, and exercised the power to control GBT(Gopher's)

20  corporate actions.

21      32.    Each of the named Individual Insider Defendants owed GBT(Gopher) and

22  its shareholders the highest fiduciary duties of loyalty, good faith, fair dealing, due care,

23  and oversight in managing and administering GBT's business affairs, ensuring strict

24  compliance with the Company's insider trading policy and determining the criteria for

25  officers, directors, executive consultants and affiliated entities restricted from trading

26  thereby avoiding the illegal sale of GBT's common shares by any insiders around and in

27  between quarterly earnings announcements.

28

33.     Under the control and leadership of the Individual Insider Defendants, particularly defendants JACOB, DUNCKEL, KHATIB and MURRAY, Touting itself as both an "emerging growth company" and "a development-stage company", over a period of years, nominal defendant GBT(Gopher), trading as a "penny stock" on the OTCQB, entered into a plethora of business transactions, seeking debt and equity growth financing through acquisitions and joint ventures funded primarily by the sale and transfer of large volumes of GBT(Gopher's) issued, but unregistered securities, routinely relying upon exemptions allegedly available  under Section 4(a)(2) of the Securities Act and/or Rule 506 of Regulation D. Each of the named Individual Insider Defendants owed nominal defendant GBT(Gopher) and its shareholders the highest fiduciary duties of loyalty, good faith, fair dealing, due care, and oversight in managing and administering GBT(Gopher's) business affairs, ensuring strict compliance with all applicable laws, rules and regulations, particularly the Company's insider trading policy, and establishing appropriate criteria for officers, directors, executive consultants and affiliated entities restricted from trading in GBT(Gopher's) stock, thereby avoiding the illegal sale of nominal defendant GBT(Gopher's) common shares by any insiders around and in between quarterly earnings announcements. On a regular basis, each of the named Individual Insider Defendants had access to and received material nonpublic information pertinent to GBT(Gopher's) periodic earnings, financial results and their relative sustainability. Each of these Individual Insider Defendants was responsible, to some degree, in the preparation and filing of federally mandated Form 10-Q's (quarterly reports), 10-K's (Annual Reports) and Form 8-K's, when required, with the Securities and Exchange Commission ("SEC") and press releases, that responsibly disseminated GBT(Gopher's) management's comprehensive assessments and summaries of GBT's financial performance, finances, financial outlook, risks, opportunities and current operations in candid and transparent manner.

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND  [4] NEGLIGENCE**

**GREGORY BAUER + ROBERT WARREN JACKSON v.  MOSHE JACOB, ET AL.**                    **PAGE  21**

34.     Instead, starting in the fourth quarter of 2017 and continuing to the present, these Individual Insider Defendants have engaged in the following acts and conduct:

(i)     Engaging in a continuous pattern of "assembly line-like" illusory transactions sorely lacking true value, fashioned and structured to appear as legitimate business transactions, either (1) seeking debt financing through the issuance of promissory notes convertible to Gopher shares of common stock; or (ii) acquisitions and joint ventures whereby GBT(Gopher) allegedly obtained part-ownership and/or exclusive licensing rights to allegedly valuable intellectual  the equity convertible and equity growth financing through utilizing Securities Purchase Agreements or funded primarily by the sale and transfer of large volumes of GBT(Gopher's) issued, but unregistered securities and regularly and routinely reported in GBT's press releases and its 8-K, 10-Q and 10-K Forms ("Reports") filed with the SEC;

(a)     GBT(Gopher) touted itself as "an emerging growth company that is creating and patenting innovative mobile microchip (ICs) and software technologies based on the GopherInsight ™ technology platform."  [13]

(b)     By way of example, GBT(Gopher) entered into a transaction with defendant Guardian Patch, LLC, an entity solely controlled by insider defendant Moshe,  whereby "on 29 March 2016, the Company Gopher "contributed  all of its rights relating to its proprietary microchip that is within a sticky patch package (the "Patch") to Guardian in consideration of 50% of the profits generated by Guardian LLC, and a commitment from Guardian LLC" to invest "all needed funds for the purpose of developing the Patch and related products to the Patch, as well as funding the working capital needs of the Company."  [14]

(c)     Albeit that its GopherInsight™  technology had never generated any income whatsoever, on 25 September 2018, GBT(Gopher) "entered into a Joint Venture Interest Purchase Agreement with Guardian, LLC pursuant to which the Company purchased Guardian LLC's 50% interest in a joint venture ('JV Interest')

---

[13]     See, FN 6 above (GBT's 2017 Annual Report dated 11 April 2018.
[14]     See, FN 7 above (GBT's 2017 Annual Report dated 11 April 2018).

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND  [4] NEGLIGENCE**

GREGORY BAUER + ROBERT WARREN JACKSON v.  MOSHE JACOB, ET AL.                    **PAGE  22**

previously entered between the parties in March 2016 . . ." In return, Guardian was issued 12,500,000 shares of GBT(Gopher's) common stock valued at $11,750,000 "based on the closing stock price of the Company's common stock at the date of the Agreement." [15]

(ii)    Fraudulently hyped and artificially "puffed up" GBT(Gopher's) financial viability, through false and misleading Form 8-K, 10-Q and 10-K filings and press releases, intentionally misleading investors by concealing and failing to honestly report that, while GBT's 1 September 2017 acquisition of the "Preway/UGO (Assets) generated what would appear to be considerable gross income, when all expenses were considered", GBT(Gopher's) Preway/UGO operations were neither "actually profitable" nor sustainable;

(iii)   Concurrently, orchestrating, managing and systematically coordinating a "market manipulation fraud" scheme (commonly referred to as a "pump-and-dump") designed to artificially inflate and boost the price of GBT's stock through the dissemination of false, misleading, positive and highly exaggerated public reports, statements, press releases and promotions, creating the false impression that GBT(Gopher's) stock was being actively traded by independent investors and that its stock was in high market demand;

(a)    Included in GBT's promotional activities, a "stealth promotional network" by  hiring and compensating a small army of writers, both real and imaginary, who systematically posted hundreds of bullish and highly favorable analysis pieces about GBT across numerous investment sites, surreptitiously touting GBT's stock, without disclosing that they had been compensated. In effect, members of the public, in reading and reviewing these posted bullish and highly favorable analysis, were lead to believe that these were impartial analysis rather than paid advertising;

(iv)   Coupled with various manipulative trading stratagems, all with the intended purpose of giving the market the false impression that there was real demand for GBT(Gopher's) securities, thereby manipulating the price of nominal defendant GBT(Gopher's) publicly-traded common

---

[15]    See, FN 8 above (GBT's 2018 Annual Report dated 27 March 2019).

1 shares in the marketplace higher through their coordinated plan of short-term hype ("pump");" and

2

3 (v) Then selling their purportedly unrestricted shares at the top of the market ("dump") for their own illicit personal financial gain and benefit, ultimately leaving those who bought on the ascent with huge losses as GBT(Gopher's) shares of common stock inevitably crashed, all to the direct detriment of nominal defendant GBT(Gopher), its shareholders, including plaintiffs JACKSON and BAUER.

4

5

6

7 35.   By engaging in these acts and pattern of conduct, the named Individual

8 Insider Defendants, and each of them, orchestrated a series of transactions in nominal

9 defendant GBT(Gopher's) shares of common stock creating actual and/or apparent

10 active trading in GBT(Gopher's) securities, raising and/or depressing the price of

11 nominal defendant GBT(Gopher's) securities for the purpose of inducing the purchase or

12 sale of such securities by others, while concurrently selling and unloading their

13 unregistered GBT(Gopher's) shares of common stock. In this manner, the named

14 Individual Insider Defendants artificially created and manufactured the false or

15 misleading appearance of active trading in nominal defendant GBT(Gopher's) shares of

16 common stock and crafted a false and misleading appearance with respect to the market

17 for GBT(Gopher's) shares of common stock.

18 **Doe Allegations**

19 36.   Plaintiffs JACKSON and BAUER are informed and believe and thereon

20 allege that, at all times relevant hereto, plaintiffs are ignorant of the true names and

21 capacities of the defendants sued herein and DOES 1 through 25, inclusive and therefore

22 sue these defendants by such fictitious names. Plaintiffs will amend this complaint to

23 allege their true names and capacities when ascertained.

24 37.   Plaintiffs JACKSON and BAUER are informed and believe and thereon

25 allege that, at all times relevant hereto, plaintiffs are ignorant of the true names and

26 capacities of the defendants sued herein and DOES 1 through 25, inclusive and therefore

27 sues these defendants by such fictitious names. Plaintiffs will amend this complaint to

28

allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that these DOE defendants are liable for the damages alleged in this complaint. Plaintiffs JACKSON and BAUER are further informed and believe and thereon allege that each of the above named defendants was and is now the agent, servant, employee and/or representative of each of the other defendants and, in doing the things herein alleged, was acting within the scope of such defendant's authority as agent, servant, employee, and/or representative with the permission, consent, and ratification of each of the defendants. Each of the fictitiously named defendants is proximately responsible, either through negligence, intentional misconduct, or contractually, for plaintiff JACKSON and BAUER's injuries and damages, as alleged herein, and that each such fictitiously named defendant acted as the agent of each of the other defendants in this action and actively participated in the conduct and acts complained of herein and advance the scheme complained of herein in order to benefit the named defendants and themselves to the detriment of nominal defendant GBT.

## JURISDICTION AND VENUE

38.    This Court has concurrent jurisdiction with the Los Angeles Superior Court and not under 28 U.S.C. 1331 (sole and original jurisdiction) as it alleges violations under California Securities Law or 1968 as set forth in Corporations Code §§ 25000, et seq.[16] Contrary to counsel's argument in defendant REKO's Notice of Removal, the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") is inapplicable here as all "covered securities" class actions must proceed under federal law alleging 1934 Act claims, while those alleging 1933 Act claims may proceed in state court. Venue is proper because (i) at all times relevant, since its formation on 22 July 2009, nominal defendant GBT's principal place of business was in the City and County of Los Angeles, California and GBT conducts substantially all of his operations in this jurisdiction.; (ii) a majority

---

[16]    No violations are alleged that cite the Securities Act of 1933.

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND  [4] NEGLIGENCE**

of the defendant GBT's officers, directors, executive consultants and insiders reside in the City and/or County of Los Angeles and have sufficient contacts with California to make proper the exercise of personal jurisdiction over them; and  (iii) a vast majority of the events giving rise to plaintiffs JACKSON and BAUER's derivative claims occurred and are continuing to occur in the City and County of Los Angeles, California; and (iv) this matter was not brought for a collusive one to confer jurisdiction that the court would otherwise lack.

## GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

**Nominal Defendant GBT fka Gopher Protocol, Inc. fka Forex International Trading Corp.'s Frenetic Stock Trading History Involving Third-Party Promotional Newsletters (Styled As "Paid Announcements" Coinciding With Higher Than Average Trading Volume And Fluctuations Of Its Stock Price, Irregularities And Machinations Including Two (2) Highly Suspicious Name Changes [17] - All Orchestrated Under The Governance And Leadership Of Defendant JACOB And His Core Of  Individual Insider Defendants And Affiliated Entities**

39.    On 9 September 2009 – shortly after its formation on 22 July 2009 – headquartered in El Segundo, California, nominal defendant GBT(Gopher) then known as Forex International Trading Corp. ("FOREX") filed its Form S-1 Registration Statement to provide for the registration of a portion of its securities. Subsequently, on 29 December 2010, FOREX began trading its common stock on the OTCBQ under the symbol "FXIT" maintained by the OTC Markets Group. At the time, the Company's principal business activities were "to engage in foreign currency market trading for non-US resident professionals and retail clients over's web-based trading systems", operation that were subsequently ceased and abandoned. [18, 19]

---

[17]    Both names changes (1) FOREX to Gopher on 23 February 2015 and (2) Gopher to GBT on 29 July 2019 were effectuated after the OTC Markets Group had demoted the Company to the Pink® Open Market and had stopped quoting its stock on the OTCQB due to stock trading irregularities.

[18]    See, p. 15, FOREX Form 10-Q dated 14 August 2014.

[19]    Subsequently, on 12 August 2014, FOREX admitted publicly that these currency trading operations "ha(d) been closed" and had ceased. See, *p. 16, Form 10-Q dated 14 August 2014 filed with the SEC*.

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND  [4] NEGLIGENCE**

GREGORY BAUER + ROBERT WARREN JACKSON v.  MOSHE JACOB, ET AL.                    PAGE  26

40.     At all times relevant herein, nominal defendant GBT(Gopher) fka FOREX's common stock was a "penny stock" under the rules the SEC under the Securities Exchange Act of 1934. By definition, penny stocks are generally equity securities with a price of less than $5.00. The SEC has adopted an extensive set for specific rules, regulations and practices regulating their sale by broker-dealer practices in connection with transactions, including the preparation and delivery of a standardized risk disclosure document containing, including but not limited to, a description of (i) the nature and level of risks in the market for penny stocks in both public offerings and secondary trading; (ii) the broker's or dealer's duties to the customer and of the rights and remedies available to the customer with respect to a violation to such duties or other requirements of Securities' laws; (iii) a brief, clear, narrative description of a dealer market, including bid and ask prices for penny stocks and the significance of the spread between the bid and ask price; and (iv) monthly account statements showing the market value of each penny stock held in the customer's account. As a direct intended consequence and result, these disclosure requirements may have the effect of reducing the trading activity in the secondary market for an issuer's "penny stock".

41.     On 1 May 2014, FOREX was dropped from trading on the OTCQB and moved from to OTC Pink® Sheets by the OTC Markets Group for non-compliance, as of which date, FOREX reported 538,871,629 in total shares issued and outstanding.

42.     Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that,  undeterred by its demotion and relegation to the OTC® Open Market fka "Pink Sheets" - the lowest and most speculative tier of OTC trading - and after "laying low" for a few months, FOREX, initiated a series of machinations, including amending its Articles of Incorporation, executing a "reverse stock" split, merging with a company (Gopher Protocol, Inc.) also formed on 13 February 2015 and controlled by defendant JACOB and changing its post-merger name to Gopher Protocol, Inc. ("GOPHER"). On 23 February 2015, after implementation of its "reverse stock" split, GOPHER was issued

a new CUSIP number and a changed trading symbol  GOPH by Financial Industry Regulatory Authority ("FINRA"). As a result of these machinations, as of 1 March 2015, GBT(Gopher's) shares of common stock were again trading on the OTCBQ with roughly the same management, same executives, same beneficial owners, same related stockholders and same New York securities counsel.

**Nominal Defendant GBT's History Of Operational Non-Profitability**

43.    Historically, from 2013 through mid-2017, trading as a "penny stock" on the OTCQB, GBT(Gopher) had routinely experienced difficulties in generating sufficient operating capital seriously inhibiting its growth. As a result of its ongoing liquidity struggles, GBT was constantly seeking debt and/or equity financing fueled by the issuance and sale of unregistered stock in order to propel its projects and their development forward. As reported repeatedly over the years by GBT, its dilemma was:

> "inadequate capital to pay significant additional expenses (it) expected to incur as a public company and as a result, (it) (would) be required to raise additional capital further diluting investors that participated in prior offerings."

44.    Nominal defendant GBT's 2013-2017 financial statements illustrated GBT's historical dilemma:

**Chart 1**       **GBT'S Reported Operational Income/Loss**
                  **(Prior To Preway/UGO Asset Purchase)**

| Fiscal Year | Gross Income | | Net Loss |
|---|---|---|---|
| Ending 12.31.2013 | $ | 100,000 | (291,777) |
| Ending 12.31.2014 [20] | | 120,000 | (295,569) |
| Ending 12.31.2015 | | 90,000 | (96,116) |

---

[20]      See, p. F-4 (or, 35/50), Form 10-K dat. 15 April 2015 (Gopher Annual Report – Fiscal Year ending 31 Dec. 2014) filed with the SEC ("GBT's 2016 Annual Report", or "2014 Annual Report").

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND  [4] NEGLIGENCE

GREGORY BAUER + ROBERT WARREN JACKSON v.  MOSHE JACOB, ET AL.                    PAGE  28

Ending 12.31.2016 [21]  165,000  (1,586,226)

45. Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that, after it again began trading on the OTCBQ on or about 1 March 2015, defendants JACOB, DUNCKEL KHATIB and MURRAY renewed their activities and efforts in a myriad of stratagems and transactions to raise sufficient operating capital, actively seeking debt financing utilizing convertible notes, equity financing and/or an acquisition on GBT(Gopher's) behalf through the issuance and sale of unregistered stock hoping to dramatically increase GBT's reportable revenue and cash flow to remedy GBT's history of poor income and revenue generation.

**Nominal Defendant GBT's Pivotal Acquisition Of**
**Preway/UGO Assets From RWJ Advanced Marketing On 1 September 2017**

46. Established in 1898 as a retail mercantile business, Alabama-based W.L. Petrey Wholesale, Inc. ("Petrey") is engaged in the sale of groceries, candy, tobacco products, novelty items, prepaid telephone and prepaid telephone plans, gift cards and numerous other items primarily to convenience stores throughout the United States. Over the years, Petrey serviced over 15,000 merchants and stores nationwide [22] and as such, Petrey has developed a reputation as a leader in distribution through its state-of-the-art technology and 350,000 square feet of warehouse space in warehouses located in Montgomery, Birmingham and Petrey, Alabama.

47. Petrey, a family-owned business, is primarily owned and controlled by two (2) brothers, plaintiff JACKSON and James W. Jackson, while plaintiff BAUER was a tenured and longtime employee of Petrey.

---

[21] See, p. F-4 (or, 41/61), Form 10-K dat. 31 March 2017 (Gopher Annual Report – Fiscal Year ending 31 Dec. 2016) filed with the SEC ("GBT's 2015 Annual Report", or "2015 Annual Report"). .

[22] For clarification purposes, while Petrey has an extensive list exceeding 15,000 nationwide merchants and stores, each of whom it has transacted business; its standard core of regular monthly customers number in the 5,000 to 6,000 range.

48.     Preway Communications ("Preway"), a wholly-owned subsidiary and division of Petrey, marketed telephone-related items as well as gift cards and other prepaid programs and items through its network of approved neighborhood-based retail payment centers providing electronic pre-paid telecommunication and other financial services-type products to paying customers, while Softgate Systems, Inc. through its web-based "pay exchange" software and terminals platform enabled Preway to electronically capture and transmit the data in conjunction with the marketing and sale of various Preway various products and product lines.

49.     More specifically, Preway's business entailed the sale of phones and phone card products, including PINS for cell minutes, SIM cards for cell minutes, as well as gift cards. Its transferable assets consisted primarily of racks with 9-12 items per rack that were displayed in retail locations, mainly convenience stores with their payment terminals at those same points of sale. Rack items in the various "brick and mortar" locations offered (1) new and refurbished cellular handsets and SIM cards; (b) prepaid gift cards; (c) prepaid long distance cards; and (d) prepaid wireless cards, for both foreign and domestic calls.[23]

50.     At some point in time, Petrey, and most particularly James W. Jackson – one of Petrey's two (2) major shareholders, arrived at the belief and opinion that Petrey's continued operation of Preway was not compatible with Petrey's overall primary businesses and based thereon, Petrey was open to divesting itself of Preway.

51.     In late 2016 and/or early 2017, defendants JACOB, DUNCKEL, MURRAY

---

[23]     When any of these items are brought to the counter, the customer's method of payment is swiped into a payment terminal machine. The Company records the revenue from the purchase and the cost of goods sold at the point of sale, and the net is booked as gross profit by the Company. When a customer purchases a gift card, for example, a value is assigned to a digital PIN number which puts a certain value on their gift card, to be redeemed by the purchaser at their convenience. There are various fees that get added to the cost of the gift card, including commissions and a transaction fee. The transaction fee is split between the store and the Company. The volume of transactions for each customer in a given month varies, with some points of sale more active in certain months than others.

and KHATIB initially through conversations with plaintiff BAUER and subsequently plaintiff JACKSON, became aware of Petrey and Preway and Petrey's interest in divesting itself of its Preway division.

52.     Petrey's overall business operations were highly profitable; however, since Preway was a wholly-owned subsidiary of Petrey, Preway's financial performance was not reported independently, but rather under Petrey's highly profitable umbrella of combined business operations; in short, no financial statements or separate accounting as to Preway's "stand-alone" financial performance existed.

53.     While both plaintiffs BAUER and JACKSON were interested in acquiring Preway and its assets, they were both mindful of the serious hurdle Preway's lack of "stand-alone" financial statements posed for any potential buyer and an eventual sale. Accordingly, in their sale and marketing efforts, plaintiffs JACKSON and BAUER openly and definitively represented to defendants JACOB, DUNCKEL KHATIB and MURRAY that, while Preway generated multi-millions of dollars in monthly gross revenue, they had no actual knowledge as to Preway's "stand-alone" profitability and consequently, they could not, and would not, make any representations or warranties whatsoever as to either Preway's profitability or non-profitability.

54.     Despite the unavailability of any financial records, defendants JACOB, DUNCKEL, KHATIB and MURRAY were undeterred and remained highly motivated and continued to aggressively pursue the transaction, ostensibly believing, in part, that by acquiring Preway with its impressive high monthly gross sales revenue and its nationwide presence in convenience stores providing access to thousands of merchants, GBT(Gopher) would be able to "marry" its two (2) business arms and "roll out" its proprietary technology, namely its Internet of Things (" IoT") and Artificial Intelligence and its products to a newly-created universe of customers.

55.     While discussion had commenced in late 2016, they were protracted over a lengthy period of time due, in part, to GBT's inability to locate and lock down sufficient

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND [4] NEGLIGENCE

GREGORY BAUER + ROBERT WARREN JACKSON v.  MOSHE JACOB, ET AL.                    PAGE  31

financing for its purchase of Preway from RWJ Advanced Marketing, LLC ("RWJ"), a Georgia limited liability company, plaintiffs JACKSON and BAUER had formed in early March 2017 in anticipation of the proposed transaction.

56.    In June and early July 2017, defendants JACOB, DUNCKEL KHATIB and MURRAY, on behalf of GBT, requested documentation verifying the gross revenues generated by Preway. In response to their requests, plaintiff BAUER obtained Petrey's Preway Bank of America bank statements for the period of 1 June 2016 through 31 May 2017 and provided them to defendant DUNCKEL.

57.    Preway's Bank of America bank statements, as set forth in accompanying Chart, reflected  gross deposits of $503,321,948.00 and monthly deposits averaging $4,193,495.00 over the twelve (12) month period:

**Chart 2**    **Preway Communications' Bank of America Monthly Deposits**
**[Period of 1 June 2016 Through 31 May 2017]**

| Period Ending | Deposited Amount | No. of Deposits |
|---|---|---|
| 06.01.2016 –  06.30.2016 | $   5,690,864.00 | 303 |
| 07.01.2016 – 07.29.2016 | 4,744,260.00 | 287 |
| 07.30.2016 – 08.31.2016 | 5,468,977.00 | 286 |
| 09.01.2016 – 09.30.2016 | 4,912,083.00 | 266 |
| 10.01.2016 – 10.31.2016 | 4,991,324.00 | 292 |
| 11.01.2016 – 11.30.2016 | 5,926,914.00 | 281 |
| 12.01.2016 – 12.30.2016 | 4,763,004.00 | 269 |
| 12.31.2016 – 01.31.2017 | 5,260,476.00 | 272 |
| 02.01.2017 – 02.28.2017 | 4,385,176.00 | 242 |

| 03.01.2017 – 03.31.2017 | 4,773,562.00 | 286 |
| 04.01.2017 – 04.28.2017 | 4,312,479.00 | 241 |
| 04.29.2017 – 05.31.2017 | 5,108,265.00 | 318 |

58.     By early June 2017, the general terms of a deal had taken shape and been generally agreed to by the parties and plaintiffs JACKSON and BAUER's counsel had commenced drafting a written agreement, setting forth the terms of the transaction. In light of GBT(Gopher's) motivation to proceed with the transaction despite the unavailability of any Preway financial statements documenting Preway's "stand-alone" financial performance, the parties, to addressing the issue, agreed to provide GBT(Gopher), as buyer, a contractual "escape hatch", namely, in their written agreement, GBT(Gopher) would be provided with a twelve (12) month option period commencing from the close of the transaction during which it could  cancel the transaction and unwind the "carryback" $2,600,000 RWJ promissory note in the event that GBT(Gopher) experienced "an operating net loss . . . .  for three (3) consecutive months" from GBT(Gopher's) newly-acquired business related to the Preway Assets at any time during this twelve (12) month option period and the Preway Assets failed to generate a net operating profit ("Unwind Note Option").[24]

59.     On 9 June 2017 and again on 28 June 2017, plaintiffs JACKSON and BAUER's counsel circulated two (2) (Draft) Asset Purchase Agreements between the parties. Most tellingly, no representations and warranties relative to Preway's "stand-alone" financial performance appeared in either of the two (2)(Draft) Asset Purchase Agreements (or, for that matter, in the final Asset Purchase Agreement dated 1 September 2017 and executed by the parties); however, each of the three (3) Asset Purchase Agreements contained the Unwind Note Option.

---

[24]     See, p. 8, ¶ 7, (Draft) June 2017 APA; p. 8, ¶ 7 (Draft) July 2017 APA; p. 8, ¶ 7, APA (Final) dated 1 September 2017 (Final).

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND  [4] NEGLIGENCE**

60.     As had been agreed by the parties at a March 2017 meeting held in Atlanta, Georgia in plaintiffs JACKSON and BAUER's counsel's offices, plaintiffs JACKSON and BAUER had entered into negotiations with Petrey for the sale and assignment of Preway's assets to RWJ in anticipation of the proposed RWJ-Gopher transaction. Ultimately, the Petrey-RWJ negotiations, conducted by RWJ's principals JACKSON and BAUER, culminated in Petrey's Board of Directors approval of the sale of Preway's assets to RWJ on 7 August 2017 and subsequently, Petrey and RWJ entered into an Asset Purchase Agreement dated 22 August 2017 ("Petrey-RWJ APA"), closing concurrently, effectively  selling and transferring the Preway assets and its related and associated contractual rights to RWJ.

61.     Since the RWJ sale to GBT(Gopher) was expressly contingent upon RWJ's prior or simultaneous acquisition of Petrey's Preway/UGO Assets,[25] shortly thereafter, on 1 September 2017, GOPHER entered into an Asset Purchase Agreement ("RWJ-Gopher APA") with RWJ, which closed concurrently, pursuant to which GBT(Gopher) purchased RWJ's recently acquired Preway assets ("Preway/UGO Assets") [26] directly from RWJ, on a "pass-through basis", including all inventory, terminals, licenses and permits and intangible assets in consideration of $400,000, an unsecured promissory note in the amount of $2,600,000 ("RWJ Note") accruing interest at the rate of 3.5% per annum due and payable in full on 31 December 2019, an aggregate of 5,000,000 shares of GBT(Gopher's) common stock, warrants to purchase 9,000,000 shares of GBT(Gopher's) common stock and the assumption of certain liabilities incurred by RWJ after the effective date as set forth in the Agreement.

62.     Concurrently, as part of the transaction, to address the dearth of financial reporting, the parties entered into an Addendum to the RWJ-Gopher APA, in which

---

[25]     p. 8, ¶ 8, RWJ-GOPHER APA dated 1 September 2017.
[26]     As part and parcel of the transaction, on 18 August 2017 GBT had incorporated a wholly-owned subsidiary, UGopherServices Corp. to house and operate the newly-acquired Preway/UGO Assets,

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND  [4] NEGLIGENCE

GREGORY BAUER + ROBERT WARREN JACKSON v.  MOSHE JACOB, ET AL.          PAGE  34

GBT(Gopher) openly acknowledged their collective lack of knowledge and their keen awareness and acceptance that RWJ "ha(d) not owned the ("Preway/UGO) Assets for a long period of time and (was) not in possession of (any) financial statements" reflecting the Preway/UGO Assets' "stand-alone" financial performance. To resolve the issue, RWJ contractually agreed to provide GBT(Gopher) Preway's "financial statements"  . . . (on a carve-out basis or otherwise)" prepared by Petrey's public accountancy firm Warren Averett, together with "an unqualified opinion of (Petrey's) independent auditor", namely "not later than sixty (60) days following (the) closing."

63.    Also on 1 September 2017, GOPHER executed an Executive Employment Agreement hiring plaintiff BAUER for an initial term of three (3) years, providing an annual salary of $250,000, together with a quarterly bonus in the amount of 10% of the net profit of GBT(Gopher's) business generated by the assets purchased from plaintiff RWJ ("Executive Employment Agreement").

**Individual Insider Defendants Orchestrated, Managed And Systematically Coordinated A Fraudulent Market Manipulation Scheme Designed To Artificially Inflate And Boost The Price Of GBT's Stock Through False, Misleading, Positive And Highly Exaggerated Public Reports, Statements, Press Releases And Promotions, Resulting In Higher Than Average Trading Volume And Upward Fluctuations In GBT's Stock Price**

64.    Commencing from 1 September 2017 and continuing through approximately mid-2019, the Individual Insider Defendants, on behalf of GBT(Gopher), issued a series of Form 8-K's, 10-Q's and 10-K's, multiple press releases and announcements, including promotional newsletters styled as "paid announcements" relative to its business operations touting its newly-invigorated opportunities in the newly-acquired Preway/UGO Assets, its expansion into prepaid services products and prepaid services markets as well as promising developments in its Artificial Intelligence ("AI") and Drones technology, including, but not limited to:

[i]    On or about 6 September 2017, GBT(Gopher) filed its Form 8-K with the SEC announcing its acquisition of the Preway/UGO Assets, together

with press releases language touting its acquisition, emphasizing the dramatic increase in GBT(Gopher's) gross revenue;

[ii]   The recent Gopher acquisition was expected to generate revenues as a retail partner of the major telecoms through the distribution of financial products as well as cellular "top-off" cards - **a "gamechanger for Gopher with the goal of placing Gopher on the path to a cash flow positive company" a**nd providing "the company with more flexibility in developing and deploying its technology portfolio into the marketplace and to take advantage of the disruptive products developed by (Gopher's) CTO Danny Rittman"; *(emp.add.)*

[iii]  The acquisition of the Preway/UGO Assets provided the Company with the opportunity to establish an infrastructure for its IoT communication technology as well as a distribution avenue to market products that GBT(Gopher) was developing and marketing to an expanded customer base with enabled networking and tracking technologies, including its GopherInsight™ wireless mesh network technology platform and its Avant! AI, for both mobile and fixed solutions;

[iv]   On 21 November 2017, under the banner headline <u>Gopher Protocol Reports  over $4 Million in Revenue in 3rd Quarter Financials,</u> GBT(Gopher) publicly announced and reported "earnings for the three months ended 30  September 2017 of **$4,471,626 compared to $45,000 for the three months ended 30 September 2016**. In addition, the Company's total liabilities and stockholder's equity rose from $18,543 for the period ended 31 December 2016 (audited) to $9,380,486 for the period ended 30 September 2016"; *(emp. add.)*

[v]    On 4 December 2017, GBT filed its amended Form 8-K/A with the SEC relative to its acquisition of the Preway/UGO Assets, which included a copy of Petrey's CPA firm of Warren Averett's Independent Auditor's Report dated 31 October 2017 ("Auditor's Report"),[27] which included:

(a)   "the balance sheets as of 26 August 2017, 28 January 2017 and 30 January 2016 and the related statements operations and cash flows for the period ended 26 August 2017 and for the years ended 28

---

[27]     As expressly required under the APA's Addendum to the APA.

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND  [4] NEGLIGENCE**

January 2017 and 30 January 2016 and related notes to the financial statements"; and

(b) The Auditor's Report reflected gross sales of **$32,329,172**, **$66,610,847** and **$80,826,825** for the periods ending on 26 August 2017, 28 January 2017 and 30 January 2016;

[vi] On 5 December 2017, GBT, in a press release, announcing that the Preway audited financials showed "**$66,000,000 in sales for the year ending in January 2017**" directly attributable to the acquisition of the Preway/UGO Assets; *(emp. add.)*

[vii] Also, on 5 December 2017, GBT announced that its filed pro-forma financials illustrated sales for six months ended 30 June 2017 and for the year ended 31 December 2016 of **$28,108,616** and **$66,775,847** with gross profit of $1,408,597 and $3,278,144; net loss of ($1,768,952) and ($2,028,,608)which includes acquisition costs . . .The audited financial statements of the Preway division stands alone for the period ended on 18 August 2017 (period prior to closing) report revenue of **$32,329,952** with  gross profit of **$1,521,458** and net loss for the period of $170,636; *(emp. add.)*

[viii] On 11 April 2018, GBT(Gopher) filed its 2017 Annual Report (Form 10-K), reporting $9,192,354 in Gross Sales Revenue for its fourth quarter results (p. 50);

[ix] On 14 May 2018, GBT(Gopher) filed its 10-Q Report, reporting Gross Sales Revenue of $7,859,606 in its 1st Quarter (2018);

[x] On 13 August 2018, GBT(Gopher) filed 10-Q Report, reporting Gross Sales Revenue of $13,466,410 in its 2nd Quarter (2018);

[xi] On 14 November 2018, GBT(Gopher) filed its 10-Q Report, reporting Gross Sales Revenue of $15,536,196 in its 3rd Quarter (2018);

[xii] On 27 March 2019, GBT(Gopher) filed its 2018 Annual Report (Form 10-K),  reporting $51,569,605 in Gross Sales Revenue (p. F-4);

[xiii] On 15 April 2019, GBT(Gopher) filed its 10-Q Report, reporting Gross Sales Revenue of $13,393,313 in its 1st Quarter (2019);

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND  [4] NEGLIGENCE

GREGORY BAUER + ROBERT WARREN JACKSON v.  MOSHE JACOB, ET AL.          PAGE  37

[xiv]   On 19 August 2019, GBT(Gopher) files 10-Q Report, reporting Gross Sales Revenue of $12,431,774 in its 2nd Quarter (2019); and

[xv]   On 19 November 2019, GBT(Gopher) filed its 10-Q Report, reporting Gross Sales Revenue of $4,467,800 in its 3rd Quarter of 2019)

65.   Utilizing GBT's stock in conjunction with its acquisition of the Preway/UGO Assets , the Individual Insider Defendants, through an exhaustive litany of false, positive and misleading promotions and highly exaggerated statements orchestrated and manipulated the OTCQB marketplace, artificially boosting the price of GBT's stock higher and higher. In spam-like fashion, the Individual Insider Defendants routinely touted breakthrough technology, an extensive array of business transactions, including acquisitions and joint ventures with various and multiple companies utilizing the sale and transfer of large volumes of GBT's issued, but unregistered securities, regularly and routinely reported in GBT's press releases and its 8-K, 10-Q and 10-K Forms ("Reports") filed with the SEC. In GBT's 2017 fiscal year, it filed twenty (20) such Reports, the bulk of which, namely seventeen (17), were filed in the last six (6) months of the calendar year, primarily in the third and fourth quarter when sales increased to $9,192,354 – an increase of 5,471.1% of the prior year's $165,000 revenue. In 2018 fiscal year with gross revenues exploding to a record $51,569,605, it filed fifty-one (51) such Reports, while in its 2019 fiscal year, it filed forty-five (45) such Reports, reporting $30,292,887 in gross sales. In summary,  from June 2017 through November 2019 – a span of thirty (30 months - GBT(Gopher) filed one hundred thirteen (113) 8-K, 10-Q and 10-K Reports with the SEC, in effect, averaging almost four (4) Reports per month, exclusive of  press releases and public announcements.

66.   Conspicuously absent from any of GBT's Form 8-K, 10-Q, 10-K Reports, press releases,  announcements and promotional materials was any discussion or even mention of the actual non-profitability of the newly-acquired Preway/UGO Assets on a "stand-alone" basis, GBT's ability to cancel the $2,600,000 RWJ Note and the

underlying reasoning for its need, GBT's ability to cancel the $2,600,000 RWJ Note and the underlying reasoning for its need and most importantly, while GBT's 1 September 2017 acquisition of the "Preway/UGO (Assets) generated what would appear to be considerable gross income, when all expenses were considered", GBT's Preway/UGO operations were neither "actually profitable" nor was GBT(Gopher's) business model sustainable. [28]

67.    As a direct result of its aggressive promotional activities, GBT(Gopher) began to see an increase in the trading activity of its common stock following its September 2017 acquisition of Preway/UGO's significant asset base, which was further complemented in mid-March/early April 2018  by GBT(Gopher's) acquisition of two (2) companies with a complementary asset base, namely Electronic Checks Services and Central State Legal Services.

68.    Interestingly, on 11 December  2017, amidst this flurry of promotional activity touting the GBT(Gopher's) common stock, nominal defendant GBT(Gopher) was notified and made aware by the OTC Markets Group that it had detected "recent promotional activities surrounding the Company's common stock" involving unauthorized and illegal "promotional newsletters, styled as 'paid announcements'" by third parties [29] that were compensated "$15,000 by a(n) (anonymous) third party." OTC Markets Group's notification was based upon "the results of continued analysis into certain trading patterns of GBT(Gopher's) stock in light of its recent (uptick) in record trading volume and price levels." As a result, the OTC Markets Group ordered GBT(Gopher) to issue a press release regarding this "most recent Stock Trading Activity" .

69.    On 13 December 2017, GBT(Gopher), at the behest of the OTC Markets Group, issued a press release, claiming that the Company and "none of its officers,

---

[28]        See, p. 29, ¶ 60 A, ll. 17-18; p. 35, ¶ 83 C., ll. 11-12, GOPHER's SACC filed 12 November 2019 in related matter (Case No. 19 STCV 03320.

directors, employees, consultants, and, to the Company's knowledge, its controlling or affiliated stockholders . . . ha(d), directly or indirectly, authorized or been involved in any way" in these promotional activities and pointing out that as part of GBT(Gopher's) insider trading policy:

> "if an officer, director, manager, employee or consultant has material nonpublic information relating to the Company, it is the Company's policy that neither that person nor any related person may buy or sell securities of the Company or engage in any other action to take advantage of, or pass on to others, this information. This policy also applies to information relating to any other company, including our customers or suppliers, obtained in the course of that person's relationship with the Company. In order to provide assistance in preventing inadvertent violations and to avoid even the appearance of improper transaction, the company has implemented the following procedure and restrictions:

> [i]   All transaction and company securities (acquisitions, dispositions, transfers, etc.) by officers, directors, managers, and accounting and administrative personnel (the "Pre-clearance Individuals") must be pre-cleared by the Company's Chief Financial Officer; and

> [ii]   Such persons are required to refrain from making any trades in company securities in the period commencing 15 days prior to the end of each quarter and ending on the third business day after results for the quarter are publicly released ("Blackout Period").  The Company may notify such persons of other, when necessary."

70.    From the fourth quarter of 2017 onward through 30 September 2019, as depicted below, GBT's Preway/UGO Assets coupled with ECS's complementary assets acquired in March 2018 assets generated phenomenal gross income figures, dwarfing GBT's previously anemic gross income figures:

.      .      .

.      .      .

.      .      .

**Chart 3**        **GBT's Reported Gross Income**
                   **[Period of 2013 Through 30 September 2019]**

| Fiscal Year | Gross Income | Gross Profit/Net Loss | Net Change Before Loss | |
|---|---|---|---|---|
| | | | $ | % |
| Ending 12.31.2013 [30] | $ 100,000 | (291,777) | | |

NB    See, p. 4, (or, p. 5/108, GBT's 2018 Annual Report dated 27 March 2019

| | | | | |
|---|---|---|---|---|
| Ending 12.31.2014 | 120,000 | (295,569) | | |

NB    See, p. F-4 (or, 35/50), GBT's 2014 Annual Report.

| | | | | |
|---|---|---|---|---|
| Ending 12.31.2015 | 90,000 | (96,116) | | |
| Ending 12.31.2016 | 165,000 | (1,586,226) | | |

NB    See, p. F-4 (or, 41/61), Form 10-K dat. 31 March 2017 (Gopher Annual Report – Fiscal Year ending 31 Dec. 2016) filed with the SEC ("GBT's 2016 Annual Report", or "2016 Annual Report").

| | | | | |
|---|---|---|---|---|
| Ending 12.31.2017 | 9,192,354 | (540,550) | 9,027,354 | 5471.1 |

NB    See, p. 23 (or, 24/89), Form 10-K dat. 11 April 2018 Gopher Annual Report – Fiscal Year ending 31 Dec. 2017) filed with the SEC (GBT's 2018 Annual Report).

| | | | | |
|---|---|---|---|---|
| Ending 12.31.2018 | 51,569,605 | (1,892,841) | 1,352,291 | 250.2 |

See, p. 27 (or, 29/108), Form 10-K dat. 27 March 2019 (Gopher Annual Report – Fiscal Year ending 31 Dec. 2018) filed with the SEC ("GBT's 2018 Annual Report", or "2018 Annual Report").    .

---

[30]    See, FN 6 above.
[31]    See, Quarterly Breakdown (2018) Gross Sales: (1) $7,859,606 (10-Q filed 14 May 2018); (2) $13,466,410 (10-Q filed 13 August 2018 (3) $15,536,196 (10-Q filed 14 November 2018); and (4) $5,884,912.

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND  [4] NEGLIGENCE**

**GREGORY BAUER + ROBERT WARREN JACKSON v.  MOSHE JACOB, ET AL.**                    **PAGE   41**

Ending 09.30.2019                    30,292,887              **(246,957)**

NB      In its Form 10-Q's filed in 2019, GBT reported the following quarterly income figures – Gross Sales: (1) **$13,393,313** (p. 4) (10-Q filed 15 May 2019); (2) **$12,431,774** (p. 4)(10-Q filed 19 August 2019); and (3) **$4,467,800** (p. 4)(10-Q filed 19 November 2019), totaling $30,292,887. However, in its Form 10-K Annual Report filed with the SEC on 27 May 2020, in direct and dramatic conflict with its previously filed 10-Q's, GBT reported annual gross income in sales of $**19,277,058 - a differential of $11,015,829.** See, p. F-4, GBT's 2019 Annual Report.

71.     Anticipatorily, as part of their overall market manipulation plan and scheme, the Individual Insider Defendants, under defendant JACOB's tutelage and direction, ramped up and accelerated GBT(Gopher's) issuance of unregistered stock as reflected in the Chart below – the bulk of which was issued in reliance upon allegedly available exemptions under Section 4(a)(2) of the Securities Act and/or Rule 506 of Regulation D, solely targeting "accredited investors, as defined under Section 501(a), Regulation D:

**Chart  4**   **GBT's Historical And Exponential Issuance Of Outstanding Stock**
**[Period of 31 December 2015 Through 20 June 2019]**

| <u>**Date**</u> | **Common Shares** | **Preferred Shares** | | | | |
|---|---|---|---|---|---|---|
| | | <u>**Series A**</u> | <u>**Series B**</u> | <u>**Series C**</u> | <u>**Series D**</u> | <u>**Series G**</u> |
| 12.31.2015 [32] | 5,894,342 | -0- | 45,000 | 700 | 94,750 | |
| 12.31.2016 [33] | 41,420,372 | -0- | 45,000 | 700 | 66,000 [34] | |

---

[32]    See, p. 9, GBT's 2016 Annual Report.
[33]    See, p. 15, GBT's 2016 Annual Report.
[34]    REKO's Series D Preferred Shares were convertible to 66,000,000 Gopher common shares at REKO's discretion.

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND  [4] NEGLIGENCE**

| Date | Amount | | | | | |
|---|---|---|---|---|---|---|
| 12.31.2017 [35] | 58,715,406 | -0- | 45,000 | 700 | 66,000 | 2,000,000 |
| 04.11.2018 [36] | 125,132,072 [3] | -0- | 45,000 | 700 | | 2,000,000 |
| 12.31.2018 [38] | 182,224,264 | -0- | 45,000 | 700 | -0- | -0- |
| 03.27.2019 [39] | 207,409,616 | -0- | 45,000 | 700 | -0- | -0- |
| 06.20.2019 | 220,866,271 [4] | | | | | |

72.     As a direct result, shortly after the announcement of GBT(Gopher's) acquisition of the Preway/UGO's Assets on 1 September 2017 in conjunction with the feverish plethora of 8-K Reports, press releases and announcements, as illustrated below, GBT(Gopher's) stock started moving upward:

**Chart 5     GBT's Stock Trading History (Partial)**
**<u>Chronologically Tied To Selected Corporate Events</u>**
**(Period of 1 September 2017 Through 30 March 2020)**

| <u>Date</u> | <u>Open</u> | <u>Close</u> | <u>Selected Event</u> |
|---|---|---|---|
| 09.01.2017 | $  0.36 | $ 0.37 | Closing of GBT(Gopher)-RWJ Preway/UGO's Assets transaction |
| 09.07.2017 | 0.435 | 0.434 | GBT(Gopher) reports acquisition of Preway/UGO's Assets on 6 September 2017 and files Form 8-K with SEC |
| 10.__.2017 | Ranging between 0.286  +   0.315 | | Guardian + Insider Consultant issued 2,025,000 Shares of  GBT(Gopher) Common Stock "for services rendered valued at $766,500" related to assisting |

---

[35]     See, p. 14, GBT's 2017 Annual Report.
[36]     See, Footnote 29 above.
[37]     Of the listed 125,132,072 shares, 66,000,000 were owned and controlled by defendant REKO as it had exercised its option to convert its 66,000 Series D Preferred Shares to 66,000,000 common shares.
[38]     See, p. 17, GBT's 2018 Annual Report.
[39]     See, p. 41, GBT's 2018 Annual Report.
[40]     Correspondence dated 20 June 2019 from GBT Counsel Robert M. Yaspan.

| | | | |
|---|---|---|---|
| | | | GBT with the acquisition of the Preway/UGO's Assets from RWJ |
| 11.21.2017 | 0.7109 | 0.70 | GBT(Gopher) reports $4,000,000 in Revenue in Third Quarter |
| 12.04.2017 | 0.95 | 1.00 | GBT(Gopher) files Amended Form 8-K and reports Acquisition of Preway/UGO's significant asset base on 6 September 2017 and Files with the SEC |
| 12.13.2017 | 1.25 | 1.15 | Gopher Issues Press Release Re Unauthorized + Illegal Promotional Activities and Materials touting common stock per OTC Markets Group Request |
| 12.22.2017 | 1.12 | 1.15 | Stanley Hills converts all of its principal and interest of its Stanley Note totaling $31,775.25 into 4,221,334 of GBT(Gopher) shares of common stock |
| 12.29.2017 | 1.11 | 1.12 | Guardian converts its 6% Convertible Note ($660,131.80) dated into 2,000,000 shares of Series G Preferred Stock convertible to 2,000,000  GBT(Gopher) common stock |
| 01.23.2018 | 1.60 | 1.533 | REKO converts its 66,000 shares of Series D Preferred Stock to 66,000,000 GBT(Gopher) shares of common stock |
| 04.11.2018 | 3.635 | 3.47 | GBT(Gopher) files 2017 Annual Report: $9,192,354 in Gross Sales Revenue |
| 05.14.2018 | 3.14 | 3.14 | GBT(Gopher) files 10-Q Report: Gross Sales Revenue: $7,859,606 (1st Quarter) |
| 08.13.2018 | 1.45 | 1.318 | GBT(Gopher) files 10-Q Report: Gross Sales Revenue: $13,466,410 (2nd Quarter) |

| | | | |
|---|---|---|---|
| 08.30.2018 | 1.04 | 1.07 | Guardian converts its 2,000,000 shares of Series G Preferred Stock into 2,000,000 Shares of GBT(Gopher) common stock |
| 09.25.2018 [41] | 0.97 | 0.94 | Guardian Issued 12,500,000 shares of GBT(Gopher) common stock in connection the termination of its 50% interest in the profits of certain of GBT's products . . . The shares were valued at $11,750,000 which was determined based on the closing stock price of the Company's common stock at the date of the Agreement." |
| 11.14.2018 | 0.32 | 0.335 | GBT(Gopher) files 10-Q Report: Gross Sales Revenue: $15,536,196 (3rd Quarter) |
| 03.27.2019 | 0.429 | 0.42 | GBT(Gopher) files 2018 Annual Report (Form 10-K): $51,569,605 in Gross Sales Revenue |
| 05.15.2019 | 0.39 | 0.365 | GBT(Gopher) files 10-Q Report Gross Sales Revenue: $13,393,313 (1st Quarter) |
| 05.22.2019 | 0.158 | 0.133 | OTC Markets Group stops quoting GOPH on OTCQB® Venture Market; GBT(Gopher) demoted to Pink® Open Market |
| 07.29.2019 | 0.0491 | 0.049 | Gopher Merger and Name Change to GBT Technologies |
| 08.05.2019 | | 1:100 Stock Split | |
| 08.19.2019 | 0.053 | 0.0461 | GBT(Gopher) files 10-Q Report Gross Sales Revenue: $12,431,774 (2nd Quarter) |

---

[41]     A true and correct copy of a Chart illustrating the GOPHER stock pricing and volume of GOPHER stock for the period of October 2017 through September 2018 is marked as Exhibit A, is attached hereto and by this reference is incorporated herein.

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND [4] NEGLIGENCE**

| | | | |
|---|---|---|---|
| 11.19.2019 | 1.92 | | GBT(Gopher) files 10-Q Report |
| | | | Gross Sales Revenue: $4,467,800 (3rd Quarter) |
| 03.30.2020 | 0.04 | | |
| 07.31.2020 | 0.02 | | Current Quote |

**GBT's Historical Issuance Of Unregistered Stock To Its Directors, Executive Officers, Beneficial Owners, Affiliates And Related Insider Stockholders For Illusory And/Or Manufactured Consideration Providing Financially Insignificant Benefits To GBT**

> **[A]   Defendant GUARDIAN's Acquisition of Sizeable Caches Of Both GBT's Common and Preferred Shares In Return for Loans, Future Funding Commitments and Consulting Services**

73.     On 1 March 2016, defendant GUARDIAN was formed "to provide initial funding. . . for product development of the Patch technology" in return for GBT's assignment to GUARDIAN of all right, title and interest to the Patch technology. GBT and GUARDIAN "formed a Joint Venture ('JV') for the purposes of developing and marketing the (Guardian)Patch." In addition, GUARDIAN committed itself to providing GBT "with working capital as needed" to implement the JV. [42]

74.     Subsequently, on 23 May 2017, GBT executed a 6% Convertible Note bearing interest as of 31 December 2016 and due on 31 May 2019, documenting GBT's indebtedness to GUARDIAN in the amount of $660,131.80 and providing GUARDIAN the opportunity to convert GBT's indebtedness into shares of GBT common stock.[43]

75.     On 1 August 2017, GBT(Gopher) and defendant GUARDIAN entered into a Consulting Agreement dated 31 August 2017 (effective retroactively to 1 August 2017) for defendant JACOB's assistance, apparently through GUARDIAN, in

---

[42]     See, p. 62 (or, 84/114), GBT's 2017 Annual Report.
[43]     See, FN. 40 above.

structuring and negotiating the RWJ-GOPHER APA transaction. Under the terms of the Consulting Agreement, in consideration for defendants JACOB's services, GBT(Gopher) agreed to issue GUARDIAN "2,000,000 shares of common stock and warrants to purchase 9,000,000 shares of common stock". In addition, GBT(Gopher) was contractually obligated to pay GUARDIAN "an additional 3,000,000 million shares of GOPH(ER) common stock", "(i)f and when the assets of (RWJ/Petrey) generate(d) revenues of $10,000,000".

76. Pursuant to its existing JV Agreement, defendant GUARDIAN agreed to provide the $400,000 in funding needed for the cash down payment due to RWJ under the terms of the RWJ-GOPHER APA. As required, GUARDIAN also agreed to provide the needed $100,000 working capital designated to UGopherServices Corp.

77. In September-October 2017, GBT(Gopher) "issued an aggregate of 2,025,000 shares of (GBT ) shares" to GUARDIAN and an unnamed consultant "for services rendered valued at $766,500. . . principally related to assisting GBT with the acquisition of the RWJ assets. . .The value of the common stock was determined based on the closing stock price of (GBT's) common stock on the date of the grant." *(emp. add)* [44]

78. On 29 December 2017, GBT(Gopher) agreed to amend the Lock-Up and Leak-Out Agreement with defendant GUARDIAN and executed an amendment to the Lock-Up and Leak-Out Agreements, in effect, releasing any and all transfer restrictions and permitting each defendant to exercise their conversion rights under their respective Notes.[45]

79. Concurrently, that same day, GUARDIAN converted all of the principal and interest of its 6% Convertible Note into 2,000,000 shares of Series G Preferred

---

[44] p. 68, (or, 93/114), GBT's 2017 Annual Report.
[45] On 29 June 2017, GBT entered into Lock-Up and Leak-Out Agreements ("LULO") with both defendants GUARDIAN, limiting and restricting their ability to exercise their conversion rights for a period of nine (9) months and expiring on 28 March 2018.

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND [4] NEGLIGENCE**

**GREGORY BAUER + ROBERT WARREN JACKSON v. MOSHE JACOB, ET AL.**                    **PAGE 47**

1   Stock, of which each share was  convertible into one (1) share of GBT's common stock
2   with standard anti-dilution rights.[46]

3   80.   Also, on or about 23 January 2018, GBT(Gopher) "issued 3,000,000
4   shares" to GUARDIAN "for services related to assisting (GBT) with the acquisition of
5   the RWJ asset" as these "shares were earned when the operations of the RWJ assets
6   produced revenue in excess of $10,000,000" – a milestone that was reached on 23
7   January 2018 at which point GBT(Gopher's) stock was trading at $1.53 per share. "The
8   value of the common stock of $4,590,000 was determined based on the closing stock
9   price of (GBT's) common stock on the date the shares were earned." [47, 48]  *(emp. add)*
10  *See, p. 31, Chart 5, above.*

11  81.   On 30 August 2018, GUARDIAN converted its 2,000,000 shares of Series
12  G Preferred Stock into 2,000,000 shares of GOPHER common stock, at which point in
13  time, GBT's common shares were trading at $1.03-1.04 per share.[49] *See, p. 31, Chart 5,*
14  *above.*

15  82.   Shortly thereafter on 25 September 2018, GBT issued defendant
16  GUARDIAN 12,500,000 shares of its common stock in connection the termination of its
17  50% interest in the profits of certain of GBT's products . . . The shares were valued at
18  $11,750,000 which was determined based on the closing stock price of the Company's
19  common stock at the date of the Agreement**.**" *(emp. add)* [50] AT which time, GBT's
20  common shares were trading at $0.94 to $0.97 per share *See, p. 32, Chart 5, above*

21  83.   In summary, from September 2017 through 25 September 2018,
22  GBT(Gopher) issued GUARDIAN approximately 19,500,000 shares of Gopher common
23  stock and warrants for an additional 9,000,000 shares.

24

---

25  [46]      p. 22, (or, 24/108), GBT's 2017 Annual Report.
    [47]      See, E-Correspondence dated 1 May 2018 from Gopher's CFO Kevin Picard to
26  defendant Jacob.
    [48]      See, p. F-24, (or, 93/108), GBT's 2018 Annual Report.
27  [49]      See, p. 22, (or, 24/108), GBT's 2017 Annual Report.
    [50]      See, p. F-24, (or, 93/108), GBT's 2018 Annual Report.
28  **PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR**
    **[1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD**
    **– CONCEALMENT AND SUPPRESSION; AND  [4] NEGLIGENCE**

**[B]     Defendant REKO's Conversion Of Its 66,000 Preferred Shares
To 66,000.000 of Gopher's Common Shares**

84.     As of 11 April 2018, defendant REKO, secretly and clandestinely owned
and controlled by defendant JACOB and was the beneficial owner of 70,969,000 shares
of GBT(Gopher) common stock, which included 66,000,000 shares of common stock
issuable upon conversion of 66,000 Series D Preferred Shares.[51]

85.     On 23 January 2018, defendant REKO "converted its Series Preferred
Stock into 66,000,000 restricted common shares." [52]

**[C]     Defendants Stanley Hills, LLC./Yossi and Anat Attia's Receipt
of Roughly 6,551,509 and 1,250,000 Shares Of GBT(Gopher's)
Common Stock From  2017 Through 2018**

86.     On 22 January 2017, GBT executed a 10% Convertible Debenture
("Stanley Note"), documenting GBT's indebtedness to defendant S. HILLS in the
amount of $75,272.43 and providing S. HILLS the opportunity to convert GBT's
indebtedness into shares of GBT common stock.[53] From 26 April 2017 through 15
November 2017, defendant S. HILLS was issued 4,567,509 shares of GOPHER's
common stock.

87.     According to the defendant S. HILL's Notice of Conversion dated 22
December 2017, defendant S. HILLS converted the remaining indebtedness of
$31,775.25, consisting of its principal and interest due under its Stanley Note, as
follows: (i) $16,795.92 in exchange of 2,231,334 shares of GBT(Gopher) common stock
(roughly $0. 0075273/share); and (ii) $ 14,979.33 in exchange of 1,990,000 shares of
GBT(Gopher) common stock (roughly $0.0075273/share). On 29 December 2017 -
seven (7) days later - GBT(Gopher) agreed to amend the Lock-Up and Leak-Out
Agreement with defendant S. HILLS and executed an amendment to the Lock-Up and
Leak-Out Agreement, in effect, releasing any and all transfer restrictions as to defendant

---

[51]     See, p. 36, (or, 48/114), GBT's 2017 Annual Report.
[52]     See, p. F-27, (or, 96/108), GBT's 2018 Annual Report.
[53]     See, p. 3, GBT's Form 8-K dated 29 December 2017.

S. HILLS' GBT(Gopher) common shares of stock.[54]  In short, all of S. HILLS'
4,221,334 shares were cleared for "free trading" through Rule § 144, which is confirmed
in GBT(Gopher's) Form 8-K dated 29 December 2017. [55, 56]  Plaintiffs JACKSON and
BAUER are informed and believe and thereon allege that defendant S. HILLS was
issued an additional 1,250,000 shares GBT(Gopher) common shares of stock in 2018,
increasing S. HILLS' total number of shares received to 7,807,509.

   **[D]   Defendants JIL and CLAMOR's Receipt
            and Ownership Of Approximately 6,270,000 GOPHER's
            Common Shares**

   88.   As of 22 March 2017, defendant JIL, an entity wholly controlled by
defendant CLAMOR, GOPHER, owned 1,780,000 shares of GBT(Gopher's) common
stock and 28 September , 2017, defendant JIL was issued an additional 500,000 shares
of GBT(Gopher's) common stock. On or about 12 December 2017, defendant JIL
purchased an additional 1,990,000 "free trading" shares of Gopher's common stock from
defendant S. HILLS pursuant to a Stock Purchase Agreement. Subsequently, on or about
1 March 2018, pursuant to a Consulting Agreement with defendant JIL, in connection
with its Company's acquisition of the assets of ECS Prepaid, defendant JIL received an
additional "1,000,000 shares of GOPHER common stock and 1.5 million warrants with a
fixed share number and strike price of $1.85". (It is believed that defendant JIL received
a total 2,000,000 shares for its consulting services in this transaction.) Coupled with her
prior holdings, as of 1 March 2018, defendant JIL had been issued and/or purchased a
total of roughly 6,270,00 shares of GBT(Gopher's) common stock.

---

[54]   See, Notice of Conversion dated 13 December 2017 executed by defendant
Yossi Attia on behalf of defendants. HILLS.

[55]   See, p. 3, GBT's Form 8-K dated 29 December 2017 and Exhibit 10-2. On 29
June 2017, GBT entered into Lock-Up and Leak-Out Agreements ("LULO") with defendant S.
HILLS, limiting and restricting their ability to exercise their conversion rights for a period of
nine (9) months and expiring on 28 March 2018.

[56]   From 26 April 2017 through 15 November 2017, defendant S. HILLS was issued
4,567,509 shares of GOPHER's common stock. See, GOPHER Transaction Journal dated 13
December 2017.

**[E]   President/CEO Michael Murray 6,503,726 Shares Of GBT(Gopher's) Common Stock**

89.   As of 11 April 2018, defendant MURRAY beneficially owned 13,900,000 shares of GBT(Gopher's) common stock with a warrant to acquire 4,000,000 additional shares.[57]

**[F]   Defendant BODY SHOP's Receipt of 2,000,000 Common Shares**

90.   As of 4 August 2017, defendant BODY SHOP owned 2,000,000 shares of GBT(Gopher's) common stock; it is unclear how defendant BODY SHOP acquired these shares and   Gopher's 2017 Annual Report dated 11 April 2018 provides no provides no discussion or explanation.

As of 20 March 2018, defendant BODY SHOP ownership of GBT(Gopher's) shares of common stock.

had dwindled down to 600,000 shares.

**[G]   Defendants Glen Eagle/Darren Dunckel's Consulting Fee: 2,000,000 Shares Of GBT(Gopher's) Common Stock**

91.   On 19 November 2018,  GBT(Gopher) "issued 2,000,000 shares  of common stock to defendant GLEN EAGLE in consideration of its consulting services associated with the negotiation  of the number of shares to be delivered to Mobiquity upon exercise of the Mobiquity Warrants." [58]

**OTC Markets Group Again Stops Quoting GOPH On Its OTCQB® Venture Market And Again Demotes Its Pink® Open Market Due To Apparent Third-Party Promotional Activities Coincided With Higher Than Average Trading Volume And Fluctuations In The Company's Stock Price**

92.   On 20 May 2019 and as had occurred previously on or about 13 December 2017, GOPHER was again notified and was made aware by OTC Markets Group of "recent promotional activities surrounding the Company's common stock" and as a

---

[57]   See, p. 36, GBT's 2017 Annual Report.
[58]   See, p. F-17, (96/108), GBT's 2018 Annual Report.

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND  [4] NEGLIGENCE**

1  result of these promotional activities, OTC Markets Group decided, effective 22 May

2  2019, to once again stop quoting GOPH on its OTCQB® Venture Market and instead

3  were relegated to the Pink® Open Market for its quotations.

4  93.  On 24 May 2019, GBT(Gopher), again  claiming that it was unaware of any

5  such promotional activity until so informed by OTC Markets Group, issued a press

6  release pertaining to promotional activity and the change in quotation platforms for its

7  common stock and stating, in part, that:

8

9  The activities may involve promotional newsletters, styled as "paid announcements"
   of Stellar Media Group, LLC, which was compensated $15,000 by a third party –

10  WWMG, LLC. The paid announcements were released under the names,
    PennyPicks, DamnGood Penny Picks, and BeatPennyStocks. Each of the paid

11  announcements encouraged investors to put the Company's common stock on their

12  watch list. **These apparent third-party promotional activities coincided with
    higher than average trading volume and fluctuations in the Company's stock**

13  **price**. . . . None of the Company, its officers, directors, employees, consultants,
    and, to the Company's knowledge, its controlling or affiliated stockholders (*i.e.*,

14  stockholders who own 10% or more of the Company's issued and outstanding

15  common stock) has, directly or indirectly, authorized or been involved in any way

16  (including any payments to one or more third-parties) with the authorization,
    creation, or distribution of any promotional materials, including those noted above;

17  and that none of the Company, its officers, directors, employees, consultants, and,

18  to the Company's knowledge, the only potentially controlling or affiliated
    stockholder who sold or purchased shares of common stock of the Company within

19  the last 30 days is an institutional investor that, effective 3 December 2018,

20  purchased a Senior Secured Redeemable Convertible Debenture from the Company.
    The Company believes that investor meets the criteria to be considered to be an

21  "affiliate" of the Company.

22  94.  Subsequently, on 30 August 2019, once again after the detection of illegal,

23  unauthorized and paid promotional activities "surrounding the Company's common

24  stock", nominal defendant GBT(Gopher) was once again unceremoniously dropped from

25  trading on the OTCQB® Venture Market and again moved to the lowly OTC Pink®

26  Sheets by the OTC Markets Group.

27

28

95.     Undismayed  and without shame, like an "old dog", GBT(Gopher) executives and Individual Insider Defendants, after "laying low" for a few months, once again executed a series of manipulative machinations, again amending its Articles of Incorporation, again executing a "reverse stock" split, again merging with GBT Technologies, Inc., a company also formed on 22 July 2009 and wholly controlled by defendant JACOB and again changing its name and adopting the "merged out" company's name GBT Technologies, Inc. ("GBT"). As a result of these machinations, as of 1 March 2015, GBT(Gopher's) shares of common stock were again trading with roughly the same management, same executives, same beneficial owners, same related stockholders and same New York securities counsel in place.

96.     As a result of GBT's most recent "reverse split, effective 29 July 2019, nominal defendant  GBT reported, "as of *, 2019", a total of 2,166,592 shares of its common stock outstanding, evidencing roughly a 216,659,200 re-reverse stock split amount of outstanding shares.[59] GBT also listed its post "reverse stock" split Stock Ownership of Management and Principal Shareholders. Most noteworthy were not the remaining principal stockholders, but the missing erstwhile principal stockholders and major players and their respective corresponding missing shares of nominal defendant GBT's common stock, reflected partially below:

**Chart  6      GBT Insider Shareholdings  [As of 6 August 2019]**
**[Post Most Recent Reverse Stock Split ("1 per 100")]**

| Principal Shareholders | Shareholdings Fiscal Years 2016 + 2017 | Fiscal Year  201{ | Schedule 14 C Filing |
|---|---|---|---|
| | | | |

---

[59]     See, p. 6, (or, 6/14), Schedule 14C (Rule 14C-101) Re Notice of Action undated (" *, 2019) filed with SEC on 30 August 2019.

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND  [4] NEGLIGENCE

GREGORY BAUER + ROBERT WARREN JACKSON v.  MOSHE JACOB, ET AL.                    PAGE  53

| | | | | |
|---|---|---|---|---|
| Guardian Patch [60] | -0- | 11,900,000 [61] | 16,500,000 | -0- |
| Reko Holdings | 69,321,000 | 70,960,000 | 69,321,000 | 393,210 [62] |
| Stanley Hills | -0- | 6,557,509 | 1,250,000 | -0- |
| J.I.L. Venture | | 4,270,000 | 2,000,000 | -0- |
| Glen Eagle | | | 2,000,000 | -0- |
| Latinex Casa de Cambio | | | 20,026,702 | 200,268 |
| Ben Clymer's Body Shop | | 2,000,000 | 600,000 | -0- |
| Michael Murray | 9,900,000 | 13,900,000 | 10,900,000 | 4,069,000 |
| Danny Rittman | 9,900,000 | 9,900,000 | 9,900,000 | 99,000 |
| Douglas Davis | | | 2,300,000 | 23,000 |
| Robert M. Yaspan | | | 500,000 | 5,000 |

97.  Plaintiffs JACKSON and BAUER are informed and believe that, in summary, based upon the Stock Ownership of Management and Principal Stockholders List, the Individual Insider Defendants i.e. GBT(Gopher's) officers, directors, executive consultants, affiliates and fiduciaries, sold in excess of 69,000,000 shares of nominal

---

[60]  As of 27 March 2019, Guardian Patch held 7,500,000 shares of Gopher's common stock and a warrant for 9,000,000 shares. See, pp. 41, 42 (or, 46-47/108), GBT's 2018 Annual Report.

[61]  As of 27 March 2019, Guardian Patch held 7,500,000 shares of Gopher's common stock and a warrant for 9,000,000 shares.

[62]  According to the 14C Statement: "REKO Holdings, LLC hold the shares of common stock through Continental CYC Limitada. Robert Yaspan, former Chairman of the Board of Directors, is the attorney in fact for REKO Holdings LLC holding voting and dispositive control over the securities held by REKO Holdings and its subsidiary." See, p. 4, (or, 5/16) Schedule 14C (Rule 14C-101) Re Notice of Action undated (" *, 2019) filed with SEC on 30 August 2019.

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND [4] NEGLIGENCE**

GREGORY BAUER + ROBERT WARREN JACKSON v. MOSHE JACOB, ET AL.                    PAGE 54

defendant GBT(Gopher's) common stock previously held by them into the OTCQB marketplace in a roughly nineteen (19) month period (1 January 2018 through July 2019) – a company is now totally worthless without net worth or valuable assets and whose shares currently trade at $0.02 to $0.03 per shares.

98.    Due to the coronavirus disease COVID-19, the filing of nominal defendant GBT's Annual Report for 2019 was delayed until 27 May 2020.

**Sale And Transfer of GBT(Gopher) Common Shares By Various Insider Affiliate Defendants** [63]

99.    Plaintiffs JACKSON and BAUER are informed and believe that, from 2017 through 2018, defendant REKO had been issued a total of approximately 70,969,000 shares of GBT(Gopher) shares of common stock. As of 6 August 2020, according to the Stock Ownership of Management and Principal Stockholders List, defendant REKO held only 393,210 in post "reverse split" shares of GBT common stock (significantly down from 693,210 post-split figure), signifying that REKO had sold or transferred approximately 31,648,000 "pre-reverse split" shares of its GOPHER common stock.

100.    Plaintiffs JACKSON and BAUER are informed and believe that, through 25 September 2018, defendant GUARDIAN had been issued approximately 19,500,000 shares of Gopher common stock and held warrants for an additional 9,000,000 shares. As of 6 August 2020, according to the Stock Ownership of Management and Principal Stockholders List, defendant GUARDIAN was not  listed as a shareholder, meaning that all of GUARDIAN's shares of GBT(Gopher) have been sold or transferred

101.    Plaintiffs JACKSON and BAUER are informed and believe that, from 2017 through 2018, defendant S. HILLS had been issued a total of approximately 7,807,000 shares of GBT(Gopher) shares of common stock. As of 6 August 2020, according to the

---

[63]    A Chart summarizing the sale and transfer of GBT(Gopher) Common Shares by various Insider and Affiliate Defendants from 2016 through 2019 as set forth in paragraphs 97 through 103 is marked as Exhibit B, is attached hereto and by this reference is incorporated herein.

1   Stock Ownership of Management and Principal Stockholders List, neither defendant S.

2   HILLS nor either defendants ATTIA are listed as shareholders, meaning that all of their

3   shares of GBT(Gopher) have been sold or transferred

4   102.   Plaintiffs JACKSON and BAUER are informed and believe that, from 2017

5   through 2018, defendant JIL had been issued a total of approximately 6,270,000  shares

6   of GBT(Gopher) shares of common stock and held warrants for an additional 1,500,000

7   shares of GBT(Gopher) common stock. As of 6 August 2020, according to the Stock

8   Ownership of Management and Principal Stockholders List, defendant JIL is no longer

9   listed as shareholder, meaning that defendant JIL has sold or transferred all of its shares

10   of GOPHER common stock.

11   103.   Plaintiffs JACKSON and BAUER are informed and believe that, from 2017

12   through 2018, defendant MURRAY had been issued approximately 13,900,000 shares of

13   GBT(Gopher's) common stock and held a warrant to acquire and additional 4,000,000

14   **s**hares. According to the Stock Ownership of Management and Principal Stockholders

15   List, as of 6 August 2019, defendant MURRAY's only holds his unexercised warrant for

16   4,000,000 shares, apparently having sold 9,900,000  of his previously held shares of

17   GBT(Gopher's) common stock

18   104.   Plaintiffs JACKSON and BAUER are informed and believe that, from 2017

19   through 2018, defendant GLEN EAGLE had been issued a total of at least 2,000,000

20   shares of GBT(Gopher) common stock.  As of 6 August 2020, according to the Stock

21   Ownership of Management and Principal Stockholders List, neither defendants GLEN

22   EAGLE nor DUNCKEL are listed as shareholders, meaning that that defendants GLEN

23   EAGLE and  DUNCKEL's shares of GBT(Gopher) common stock have been sold or

24   transferred

25   105.   Plaintiffs JACKSON and BAUER are informed and believe that, from

26   2017 through 2018, defendants BODY SHOP and CLYMER had been issued a total of

27   at least 2,000,000 shares of GBT(Gopher) common stock. As of 6 August 2020,

28   **PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND  [4] NEGLIGENCE**

**GREGORY BAUER + ROBERT WARREN JACKSON v.  MOSHE JACOB, ET AL.**                                      **PAGE  56**

according to the Stock Ownership of Management and Principal Stockholders List,
neither defendants BODY SHOP nor CLYMER are listed as shareholders, meaning that
that defendants BODY SHOP and CLYMER's shares of GBT(Gopher) common stock
have been sold or transferred.

## FIRST CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY

**[As and Against Defendants MO JACOB, GUARDIAN PATCH, LLC,   REKO HOLDINGS, LLC, RANDOLPH BEN CLYMER, BEN CLYMER'S THE BODY SHOP PERRIS, LLC, STANLEY HILLS, LLC,  J.I.L. VENTURE, LLC MICHAEL MURRAY, YOSSI ATTIA, ANAT ATTIA, DARREN DUNCKEL, DANNY RITTMAN, ROSEMARIE "PINKY" CLAMOR, MANSOUR KHATIB, GLEN EAGLE, EMPIRE STOCK TRANSFER, INC., PATRICK MOKROS]**

106.     Plaintiffs JACKSON and BAUER reallege and incorporate herein by reference each and every allegation hereinabove set forth, including the Preliminary Allegations and the General Allegations set forth in paragraphs 1 through 105, respectively, of this Complaint as though fully set forth herein.

105.   It has been the law in California that directors have a fiduciary relationship and the duty to act in the best interests of all shareholders, including minority shareholders. *Remillard Brick Co. v. Remillard-Danhini (1952) 109 Cal.App.2d 405; Jones v. H. F. Ahmanson & Co. (1969) 1 Cal.3d 93.*
As the California Supreme Court stated:

> The extensive reach of the duty of controlling shareholders and directors to the corporation and its other shareholders was described by the Court of Appeal in *Remillard Brick* . . . . where, quoting from the opinion of the United States Supreme Court in *Pepper v. Litton, 308 U.S. 295* the court held: 'A director is a fiduciary. . . . Their powers are powers in trust'. . . . Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director

or stockholder not only to prove the good faith of the transaction but also
to show its inherent fairness from the viewpoint of the corporation and those
interested therein. . . . He cannot utilize his inside information and his strategic
position for his own preferment. . . . He cannot use his power for his personal
advantage and to the detriment of the stockholders and creditors no matter how
absolute in terms that power may be and no matter how meticulous he is to
satisfy technical requirements. For that power is at all times subject to the
equitable limitation that it may not be exercised for the aggrandizement,
preference, or advantage of the fiduciary to the exclusion or detriment of
(his constituency)' . . . . In *Remillard* the Court of Appeal clearly indicated
that the fiduciary obligations of directors and shareholders are neither
limited to specific statutory duties and avoidance of fraudulent practices nor
are they owed solely to the corporation to the exclusion of other shareholders."
*Jones, supra, 1 Cal.3d @ 108-109*

107.   Officers  of a corporation similarly owe a fiduciary duty to the corporation.
See, e.g. *Jones v. H. F. Ahmanson & Co. (1969) 1 Cal.3d 93*; *GAB Business Services,
Inc. v. Lindsey & Newsom Claim Services (2000) 83 Cal.App. 4th 409, 419*, overruled on
other grounds by *Reeves v. Hamilton (2004) 33 33 Cal.4th 1140, 1148* ("an officer who
participates in management of the corporation, exercising some discretionary authority,
has a fiduciary of the corporation as a matter of law"; *Burt v. Irvine Co. (1965) 237
Cal.App.2d 828, 850* ("all corporate officers and directors have the same fiduciary duty
of good faith of the corporation and shareholders*"); Daniel Orifice Fitting Co. v.
Whalen (1962) 198 Cal.App.2d 791, 794* (An officer who had participated in
management was held to necessarily owe a fiduciary duty to that company).

**Each Named Individual Insider Defendant Breached His/Her/Its
Fiduciary Duties And Good Faith To Nominal Defendant GBT And Its Shareholders**

108.   Each of the named Individual Insider Defendants, particularly defendants
JACOB, individually and in his capacity as the "control person" for GBT, defendants REKO
and GUARDIAN, in conjunction with DUNCKEL KHATIB and MURRAY, because of
their positions of leadership and authority as officers, directors, executive consultants,
affiliates and fiduciaries of GBT, were able to, and did, directly and/or indirectly, exercise

1   control over the wrongful acts complained of herein.

2       109.   Each of the named Individual Insider Defendants, particularly defendants

3   JACOB, individually and in his capacity as the "control person" for GBT, defendants

4   REKO and GUARDIAN, and in conjunction with DUNCKEL KHATIB and MURRAY,

5   by reason of their respective positions as officers, directors, executive consultants,

6   affiliates, fiduciaries and "control persons" of GBT, together with the ability conferred

7   thereby to control the business and corporate affairs of nominal defendant GBT, owed,

8   and continue to owe, nominal defendant GBT and its stockholders the fiduciary

9   obligations of trust, loyalty, good faith, and due care, and were required to do their

10  utmost to control and manage the affairs of GBT in a fair, just, honest, and equitable

11  manner. By virtue of such duties, each of the named Individual Insider Defendants,

12  particularly defendants JACOB, individually and in his capacity as the "control person"

13  for GBT, defendants REKO and GUARDIAN, and in conjunction with DUNCKEL

14  KHATIB and MURRAY, were required to, among other things:

15  [1]   Conducting the affairs of the Company in an efficient, business-like

16        manner in compliance with all applicable laws, rules, and regulations

        so as to make it possible to provide the highest quality performance of

17        GBT's business, reasonably designed to prevent fraudulent,

18        deceptive, or manipulative acts or practices;

19  [2]   Ensuring that the Company complied with applicable legal

20        obligations, requirements and regulations, including acting only

        within the scope of its legal authority and disseminating truthful and

21        accurate statements to the investing public in the nominal defendant

22        GBT's Form 8-K's, 10-Q's, 10-K's, press releases and

        announcements, including;

23

24  (a)   Reporting and notifying investors and shareholders in an honest

          and forthright manner of any Material Event or corporate

25        change affecting GBT and it business operations, most

26        importantly, GBT's profitability or non-profitability of its

          operations and the  sustainability of its ongoing operations -  a

27

28  **PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR**
    **[1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD**
    **– CONCEALMENT AND SUPPRESSION; AND  [4] NEGLIGENCE**
    **GREGORY BAUER + ROBERT WARREN JACKSON v.  MOSHE JACOB, ET AL.**                     **PAGE  59**

matter of utmost importance to GBT's shareholders, the SEC and potential investors;

    i.    "Material Event" means and is defined as any addition or loss of a large customer, falling or rising sales, a merger agreement, financial results above or below expectations, or important change in an important company's policy;

[3]    Acting in furtherance of the best interests of GBT and its stockholders so as to benefit all stockholders equally, and not in furtherance of any individual shareholder's own personal interest or benefit;

[4]    Remaining informed as to how GBT conducted its operations and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith and take steps to correct such conditions or practices and make such disclosures as necessary to comply with the law;

[5]    Diligently overseeing and maintaining GBT's internal control system to ensure strict compliance with GBT's adopted insider trading policy making sure that it was being properly and continuously enforced and implemented;

[6]    Ensuring that GBT was operated in a diligent, honest and prudent manner in compliance with applicable laws, rules and regulations, particularly in its compliance with all securities laws, in accordance with both State and Federal laws and regulations;

[7]    Ensuring and monitoring in a proactive and reasonably designed manner to prevent GBT's officers, directors, executive consultants, affiliates and/or insiders from engaging in any fraudulent, deceptive, manipulative acts, conduct or practices involving any illegal, unwarranted promotion and manipulation of GBT's stock or trading of GBT's stock for their own personal financial benefit or gain, including but not limited to;

    (a)    Engaging in the creation and distribution of unauthorized and illegal "paid announcements" promoting and touting GBT(Gopher's) common stock through a third-party;

[8]   Implementing and maintaining adequate internal controls to monitor and ensure that any and all consulting agreements proposed or entered into by GBT have been reviewed and approved by independent and disinterested officers and directors in an "independent and disinterested manner" to ensure that GBT pays "fair market value" and does not overpay, in a wasteful and excessive manner, for the services contracted for; and

[9]   Protecting and safeguarding the Company's assets from loss or waste.

111.   However, each of the named Individual Insider Defendants, particularly defendant JACOB, individually and in his capacity as the "control person" for GBT, defendants REKO and GUARDIAN and in conjunction with defendants DUNCKEL KHATIB and MURRAY in their respective capacities as GBT(Gopher's) officers, directors, executive consultants, affiliates and insiders, with full awareness and actual knowledge of their respective wrongful acts and conduct with mutual substantial assistance breached their respective breaches of their respective fiduciary duties of good faith and loyalty by acting in a disloyal manner by preferring and putting their own personal financial interests before nominal defendant GBT and its shareholders' interests and failing to live up to their fiduciary obligations by engaging in the wrongful acts and conduct alleged herein, including but not limited to:

[1]   Engaging in a continuous pattern of "assembly line-like" illusory transactions sorely lacking true value, fashioned and structured to appear as legitimate business transactions, either (1) seeking debt financing through the issuance of promissory notes convertible to Gopher shares of common stock; or (ii) acquisitions and joint ventures whereby GBT(Gopher) allegedly obtained part-ownership and/or exclusive licensing rights to allegedly valuable intellectual the equity convertible and equity growth financing through utilizing Securities Purchase Agreements or funded primarily by the sale and transfer of large volumes of GBT(Gopher's) issued, but unregistered securities and regularly and routinely reported in GBT's press releases and its 8-K, 10-Q and 10-K Forms ("Reports") filed with the SEC.

(a)   GBT(Gopher) touted itself as "an emerging growth company that is creating and patenting innovative mobile microchip (ICs) and software technologies based on the GopherInsight ™ technology platform." [64]

(b)   By way of example, GBT(Gopher) entered into a transaction with defendant Guardian Patch, LLC, an entity solely controlled by insider defendant Moshe, whereby "on 29 March 2016, the Company Gopher "contributed all of its rights relating to its proprietary microchip that is within a sticky patch package (the "Patch") to Guardian in consideration of 50% of the profits generated by Guardian LLC, and a commitment from Guardian LLC" to invest "all needed funds for the purpose of developing the Patch and related products to the Patch, as well as funding the working capital needs of the Company." [65]

(c)   Albeit that its GopherInsight™ technology had never generated any income whatsoever, on 25 September 2018, GBT(Gopher) "entered into a Joint Venture Interest Purchase Agreement with Guardian, LLC pursuant to which the Company purchased Guardian LLC's 50% interest in a joint venture ('JV Interest') previously entered between the parties in March 2016 . . ." In return, Guardian was issued 12,500,000 shares of GBT(Gopher's) common stock valued at $11,750,000 "based on the closing stock price of the Company's common stock at the date of the Agreement." [66]

[2]   Fraudulently hyping and artificially "puffing up" GBT(Gopher's) financial viability, through false and misleading Form 8-K, 10-Q and 10-K filings and press releases, intentionally misleading investors by concealing and failing to honestly report that, while GBT's 1 September 2017 acquisition of the "Preway/UGO (Assets) generated what would appear to be considerable gross income, when all expenses were considered", GBT(Gopher's) Preway/UGO operations were neither "actually profitable" nor sustainable,

---

[64]   See FN 6 above (GBT's 2018 Annual Report dated 27 March 2019).
[65]   See, FN 7 above (GBT's 2017 Annual Report dated 11 April 2018).
[66]   See, FN 8 above (GBT's 2018 Annual Report dated 27 March 2019).

thereby failing to ensure that the sale of GBT(Gopher's) shares of common stock were traded and sold with full disclosure and without the issuance of any false and/or misleading statements;

[3]    Orchestrating, managing and systematically coordinating a "market manipulation fraud" scheme (commonly referred to as a "pump-and-dump") designed to artificially inflate and boost the price of GBT's stock through the dissemination of false, misleading, positive and highly exaggerated public reports, statements, press releases and promotions, creating the false impression that GBT(Gopher's) stock was being actively traded by independent investors and that its stock was in high market demand;

(a)    In effect, managing a program and scheme of promotional activities i.e. a "stealth promotional network" by hiring and compensating a small army of writers, both real and imaginary, who systematically posted hundreds of bullish and highly favorable analysis pieces about GBT across numerous investment sites, surreptitiously touting GBT's stock, without disclosing that they had been compensated. In effect, members of the public, in reading and reviewing these posted bullish and highly favorable analysis, were lead to believe that these were impartial analysis rather than paid advertising;

(b)    Utilizing various manipulative trading stratagems, all with the intended purpose of giving the market the false impression that there was real demand for GBT(Gopher's) securities, thereby manipulating the price of nominal defendant GBT(Gopher's) publicly-traded common shares in the marketplace higher through their coordinated plan of short-term hype ("pump");" and

(c)    Concurrently, selling their purportedly unrestricted shares at the top of the market ("dump") for then Individual Insider Defendants' own illicit personal financial gain and benefit, ultimately leaving those who bought on the ascent with huge losses as GBT(Gopher's) shares of common stock inevitably crashed, all to the direct detriment of nominal defendant GBT(Gopher), its shareholders, including plaintiffs JACKSON and BAUER.

[4]   Failing to ensure and monitor in a proactive manner and aggressive manner that none of GBT's officers, directors, executive consultants, affiliates and/or insiders engaged in any illegal activity, acts or conduct relative to the unwarranted and illegal promotion and manipulation of GBT's stock and/or , its trading on the OTCQB trading platform for their own personal  financial benefit or gain, including but not limited to;
an issuer or any person who is an officer, director or controlling person of an

[5]   Failing to diligently oversee and maintain the integrity of GBT's internal control system to ensure strict compliance with GBT's adopted "insider trading" policy making sure that it was being properly and continuously enforced and implemented; and

[6]   Failing to ensure that GBT was operated in a diligent, honest and prudent manner in compliance with applicable laws, rules and regulations, particularly in its compliance with all securities laws, in accordance with both State and Federal laws and regulations; and

112.   As a result of each of the named Individual Insider Defendants' conscious acts and conduct and awareness of their respective breaches of their respective fiduciary duties, Individual Insider Defendants i.e. GBT(Gopher's) officers, directors, executive consultants, affiliates and fiduciaries, sold in excess of 69,000,000 shares of nominal defendant GBT(Gopher's) common stock previously held by them into the OTCQB marketplace in a roughly nineteen (19) month period (1 January 2018 through July 2019) – a company is now totally worthless without net worth or valuable assets and whose shares currently trade at $0.02 to $0.03 per share. As a direct and proximate cause,  nominal defendant GBT(Gopher) and its shareholders, including plaintiffs JACKSON and  BAUER have incurred damages, the exact sum of which shall be proven at trial, but which is believed to easily exceed Five Million Dollars ($5,000,000).

113.   Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that each of the named Individual Insider Defendants' acts and conduct in

breaching their respective fiduciary duties, as nominal defendant GBT(Gopher's) officers, directors, executive consultants, affiliates and insiders, is despicable conduct carried on with a willful and conscious disregard for the rights of GBT and its shareholders and constitutes an intentional misrepresentation, deceit, and concealment of the material nonpublic facts utilized by these Individual Insider Defendants' for their own personal benefit depriving GBT and its shareholders, all of which was known to these Individual Insider Defendants' and intentionally concealed with the intent to deprive GBT and its shareholders of their property and legal rights. Based on the above allegations, plaintiffs JACKSON and BAUER, on behalf of GBT and its shareholders, allege that the aforementioned conduct of the named Individual Insider Defendants was carried out with malice and fraud as specifically defined by Civil Code § 3294 so as to justify an award of punitive damages.

## SECOND CAUSE OF ACTION

### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

**As and Against Defendants MO JACOB, GUARDIAN PATCH, LLC,   REKO HOLDINGS, LLC, RANDOLPH BEN CLYMER, BEN CLYMER'S THE BODY SHOP PERRIS, LLC, STANLEY HILLS, LLC,  J.I.L. VENTURE, LLC MICHAEL MURRAY, YOSSI ATTIA, ANAT ATTIA, DARREN DUNCKEL, DANNY RITTMAN, ROSEMARIE "PINKY" CLAMOR, MANSOUR KHATIB, GLEN EAGLE, EMPIRE STOCK TRANSFER, INC., PATRICK MOKROS**

114.    Plaintiffs JACKSON and BAUER reallege and incorporate herein by reference each and every allegation hereinabove set forth, including the Preliminary Allegations, the General Allegations and the First Cause of Action set forth in paragraphs 1 through 105 and 106 through 113, respectively, of this Complaint as though fully set forth herein.

115.   Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that each of the named Individual Insider Defendants, particularly defendant JACOB, individually and in his capacity as the "control person" for GBT, defendants REKO and GUARDIAN and in conjunction with defendants DUNCKEL KHATIB and MURRAY in their respective capacities as GBT(Gopher's) officers, directors, executive consultants, affiliates and insiders, with full awareness and actual knowledge of their respective wrongful acts and conduct with mutual substantial assistance engaged in the wrongful acts and conduct alleged herein, that their actions and conduct constituted an ongoing breach of the fiduciary duties owed to nominal defendant GBT and its shareholders under both State and Federal law.

116.   Each of these named Individual Insider Defendants, particularly defendants JACOB, individually and in his capacity as the "control person" for GBT, defendants REKO and GUARDIAN and in conjunction with defendants DUNCKEL KHATIB and MURRAY in their respective capacities as GBT(Gopher's) officers, directors, executive consultants, affiliates and insiders, with full awareness and actual knowledge of their respective wrongful acts and conduct with mutual substantial assistance has aided and abetted each and every other named Individual Insider Defendants in the breach of their respective fiduciary duties of good faith and loyalty by concealing such breaches and providing substantial assistance and encouragement to each and every other named Individual Insider Defendant and by acting in such disloyal manner  preferred and put their own personal financial interests before nominal defendant GBT and its shareholders' interests.

117.   As a result of each of the named Individual Insider Defendants' breach of fiduciary duty, nominal defendant GBT(Gopher) and its shareholders, including plaintiffs JACKSON and  BAUER have incurred damages, the exact sum of which shall be proven at trial, but which is believed to exceed Five Million Dollars ($5,000,000).

118.   Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that each of the named Individual Insider Defendants' acts and conduct in breaching their respective fiduciary duties, as nominal defendant GBT(Gopher's), as GBT's officers, directors, executive consultants, affiliates and insiders, is despicable conduct carried on with a willful and conscious disregard for the rights of GBT and its shareholders and constitutes an intentional misrepresentation, deceit, and concealment of the material nonpublic facts utilized by these Individual Insider Defendants for their own personal benefit depriving GBT and its shareholders, all of which was known to these Individual Insider Defendants' and intentionally concealed with the intent to deprive GBT and its shareholders of their property and legal rights. Based on the above allegations, plaintiffs JACKSON and BAUER, on behalf of GBT and its shareholders, allege that the aforementioned conduct of the named Individual Insider Defendants was carried out with malice and fraud as specifically defined by Civil Code § 3294 so as to justify an award of punitive damages.

## THIRD CAUSE OF ACTION

**FRAUD  –  CONCEALMENT AND SUPPRESSION OF MATERIAL FACT**

**[As and Against Defendants MO JACOB, GUARDIAN PATCH, LLC,   REKO HOLDINGS, LLC, RANDOLPH BEN CLYMER, BEN CLYMER'S THE BODY SHOP PERRIS, LLC, STANLEY HILLS, LLC,  J.I.L. VENTURE, LLC MICHAEL MURRAY, YOSSI ATTIA, ANAT ATTIA, DARREN DUNCKEL, DANNY RITTMAN, ROSEMARIE "PINKY" CLAMOR, MANSOUR KHATIB, GLEN EAGLE, EMPIRE STOCK TRANSFER, INC., PATRICK MOKROS]**

119.   Plaintiffs JACKSON and BAUER reallege and incorporate herein by reference each and every allegation hereinabove set forth, including the Preliminary Allegations and the General Allegations and the First Cause of Action, set forth in paragraphs 1 through 103 and 105 through 11, respectively, of this Complaint as though

fully set forth herein.

120.   As alleged herein, each of the named Individual Insider Defendants, particularly defendants JACOB, individually and in his capacity as the "control person" for GBT, defendants REKO and GUARDIAN and in conjunction with DUNCKEL KHATIB and MURRAY in their respective capacities as GBT(Gopher's) officers, directors, executive consultants, affiliates and insiders, with full awareness and actual knowledge of their respective wrongful acts and conduct with mutual substantial assistance have suppressed and concealed certain material facts which they had a duty to disclose. In particular, each of the named Individual Insider Defendants, particularly defendants JACOB, DUNCKEL KHATIB and MURRAY were aware of, knew and intentionally concealed the fact that (a) while GBT's 1 September 2017 acquisition of the "Preway/UGO (Assets) generated what would appear to be considerable gross income, when all expenses were considered", GBT's Preway/UGO operations were neither "actually profitable" nor was GBT(Gopher's) business model sustainable; [67] (b) conducting, orchestrating and managing a "stealth promotional network" systematically posting hundreds of bullish and highly favorable analysis pieces about GBT across numerous investment sites, surreptitiously touting GBT's stock, without disclosing that these parties had been compensated, leading stock investors to believe that these were impartial analysis rather than paid advertising, creating the false impression that GBT(Gopher's) stock was being actively traded by independent investors and that its stock was in high market demand; and (c) concurrently selling their purportedly unrestricted shares into the OTCBQ marketplace for their own illicit personal financial gain and benefit ("Material Nonpublic Information"), ultimately leaving those who bought on the ascent with huge losses as GBT(Gopher's) shares of common stock inevitably crashed, all to the direct detriment of nominal defendant GBT(Gopher), its shareholders, including plaintiffs JACKSON and BAUER. (As the Individual Insider

---

[67]   See, FN 22 above (Case No. 19 STCV 03320).

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND [4] NEGLIGENCE**

**GREGORY BAUER + ROBERT WARREN JACKSON v.  MOSHE JACOB, ET AL.**          **PAGE  68**

Defendants are well aware, insider trading by directors, officers, executive consultants or employees is not permitted, whether or not in an open trading window, if they possess or have access to material information that has not been disclosed publicly. Such trading is illegal and normally results  in criminal and civil penalties.)

121.  Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that, each of the named Individual Insider Defendants, particularly defendants JACOB, DUNCKEL KHATIB and MURRAY instead of publicly disclosing this Material Nonpublic Information, made no public announcement in regard to these Material Nonpublic Information to either any regulatory agency or its shareholders.

122.  Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that, commencing in late 2017 through to the present, instead of disclosing this Material Nonpublic Information, and anticipating the stock market's negative reaction to the undisclosed Material Nonpublic Information, if it were disclosed, GBT(Gopher's) named officers, directors, executive consultants, affiliates and insiders, instead of publicly disclosing this Material Nonpublic Information, have been illegally and wrongfully trading on the undisclosed Material Nonpublic Information into a declining market, selling millions and millions of shares of GBT(Gopher's) securities held and controlled by them to unsuspecting members of the general public thereby benefitting their own personal financial interests, resulting in a dramatic loss of share value.

123.  Concurrently, during this period, GBT(Gopher's) named officers, directors, executive consultants, affiliates and insiders, with the assistance of defendants EMPIRE and MOKROS acting as defendant GBT's stock transfer agent, have sold and transferred unregistered shares of GBT(Gopher's) stock and have violated Rule §144 in their dissemination and distribution of shares of GOPHER stock

124.  Each of the named Individual Insider Defendants, particularly defendants JACOB, individually and in his capacity as the "control person" for GBT, defendants REKO and GUARDIAN and in conjunction with defendants DUNCKEL KHATIB and

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND [4] NEGLIGENCE

GREGORY BAUER + ROBERT WARREN JACKSON v.  MOSHE JACOB, ET AL.                    PAGE  69

MURRAY in their respective capacities as GBT(Gopher's) officers, directors, executive consultants, affiliates and insiders, with full awareness and actual knowledge of their respective wrongful acts and conduct with mutual substantial assistance have, directly or indirectly, personally benefitted from their collective and intentional non-disclosure of the Material Nonpublic Information

125.   By engaging in the acts and conduct described above, particularly in paragraph 109 above, GBT(Gopher's) Individual Insider Defendants, namely its officers, directors, executive consultants, and affiliates have, in connection with their illegal sale and transfer of nominal defendant GBT's unregistered shares of common stock, by use of the means and instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange:

    (i)        Employed devices, schemes or artifices to defraud GOPHER shareholders;

    (ii)       Made untrue statements of material facts or omitted to state  material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

    (iii)      Engaged in acts, practices or courses of business which operated or would
operate as a fraud or deceit upon any person in connection with the purchase
or sale of any GOPHER shares or securities.

126.   By engaging in the foregoing wrongful acts and conduct, each of GBT(Gopher's) named officers, directors, executive consultants, affiliates and insiders has violated and continue to violate both applicable Federal and state securities laws and, unless enjoined, will continue to so violate these laws.

127.   By engaging in the wrongful acts and conduct of GBT(Gopher's) named officers, directors, executive consultants, affiliates and insiders, nominal defendant GBT(Gopher) and its shareholders, including plaintiffs JACKSON and BAUER, have suffered injury and incurred damages, the exact sum of which shall be proven at trial,

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND  [4] NEGLIGENCE

GREGORY BAUER + ROBERT WARREN JACKSON v.  MOSHE JACOB, ET AL.                    PAGE  70

but which is believed to exceed Five Million Dollars ($5,000,000).

128.   Plaintiffs JACKSON and BAUER are informed and believe and thereon allege that each of the named Individual Insider Defendants' acts and conduct in their respective capacities as nominal defendant GBT(Gopher's) officers, directors, executive consultants, affiliates and insiders, in breaching their respective fiduciary duties, constitutes despicable conduct carried on with a willful and conscious disregard for the rights of nominal defendant GBT and its shareholders and constitutes intentional misrepresentation, deceit, and concealment of the material nonpublic facts utilized by these Individual Insider Defendants' for their own personal benefit depriving nominal GBT and its shareholders, all of which was known to these Individual Insider Defendants' and intentionally concealed with the intent to deprive GBT and its shareholders of their property and legal rights. Based on the above allegations, plaintiffs JACKSON and BAUER, on behalf of GBT and its shareholders, allege that the aforementioned conduct of the named Individual Insider Defendants was carried out with malice and fraud as specifically defined by Civil Code § 3294 so as to justify an award of punitive damages.

## FOURTH CAUSE OF ACTION

## NEGLIGENCE

**As and Against Defendants MO JACOB, GUARDIAN PATCH, LLC, REKO HOLDINGS, LLC, RANDOLPH BEN CLYMER, BEN CLYMER'S THE BODY SHOP PERRIS, LLC, STANLEY HILLS, LLC,  J.I.L. VENTURE, LLC MICHAEL MURRAY, YOSSI ATTIA, ANAT ATTIA, DARREN DUNCKEL, DANNY RITTMAN, ROSEMARIE "PINKY" CLAMOR, MANSOUR KHATIB, GLEN EAGLE, EMPIRE STOCK TRANSFER, INC., PATRICK MOKROS]**

129.   Plaintiffs JACKSON and BAUER reallege and incorporate herein by reference each and every allegation hereinabove set forth, including the Preliminary Allegations and the General Allegations set forth in paragraphs 1 through 105,

1  respectively, of this Complaint as though fully set forth herein.

2      130.  Pursuant to California Civil Code 1714(a), each of the named Individual

3  Insider Defendants, particularly defendants JACOB, DUNCKEL KHATIB and

4  MURRAY owed a duty of care to nominal defendant GBT(Gopher) and its shareholders,

5  including plaintiffs JACKSON and BAUER and  each of  them is responsible not only

6  for the result of their own intentional and wrongful acts and conduct, but also for injury

7  caused to nominal defendant GBT(Gopher) and its shareholders, including plaintiffs

8  JACKSON and BAUER by their collective want of ordinary care or skill in the

9  management and operation of nominal defendant GBT(Gopher's) business operations,

10  particularly in regard to the issuance, sale and transfer of GBT's unregistered securities .

11      131.  By engaging in the wrongful acts and conduct alleged herein, nominal

12  defendant GBT(Gopher) and its shareholders, including plaintiffs JACKSON and

13  BAUER, have suffered injury and incurred damages, the exact sum of which shall be

14  proven at trial, but which is believed to exceed Five Million Dollars ($5,000,000).

15      132.  Plaintiffs JACKSON and BAUER are informed and believe and thereon

16  allege that each of the named Individual Insider Defendants' acts and conduct in

17  breaching their respective fiduciary duties, as nominal defendant GBT(Gopher's)

18  officers, directors, executive consultants, affiliates and insiders, is despicable conduct

19  carried on with a willful and conscious disregard for the rights of nominal defendant

20  GBT and its shareholders and constitutes an intentional misrepresentation, deceit, and

21  concealment of the material nonpublic facts utilized by these Individual Insider

22  Defendants' for their own personal benefit depriving GBT(Gopher) and its shareholders,

23  all of which was known to these Individual Insider Defendants' and intentionally

24  concealed with the intent to deprive GBT and its shareholders of their property and legal

25  rights. Based on the above allegations, plaintiffs JACKSON and BAUER, on behalf of

26  GBT and its shareholders, allege that the aforementioned conduct of the named

27

Individual Insider Defendants was carried out with malice and fraud as specifically defined by Civil Code § 3294 so as to justify an award of punitive damages.

## DEMAND ALLEGATIONS

**Demand By Plaintiffs Is Futile And Therefore Excused Because A Majority Of The Board Is Unable To Conduct An Independent And Objective Investigation Of Wrongful Conduct Because They Have Served On The Board Or Remain On The Board**

133.   Plaintiffs JACKSON and BAUER bring this action derivatively and in the right of and for the benefit of nominal defendant GBT(Gopher) to redress injuries and damages suffered and to be suffered by GBT(Gopher) as a result of defendants' breaches of fiduciary duty, abuse of control and gross mismanagement. Plaintiffs and their counsel will adequately and fairly represent the interests of GBT(Gopher) and enforcing and prosecuting GBT's rights.

134.   As previously alleged, both plaintiffs JACKSON and BAUER are, were and remain shareholders of nominal defendant GBT(Gopher) at the time of the wrongdoing complained of.

135.   Robert Yaspan, GBT's long-time counsel, serves on the Board as its Chairman, while Michael Murray, who serves as President, Mansur Khatib, who serves as the Company's Chief Executive Officer and Chief Financial Officer and Danny Rittman are all listed as GBT Board members.

136.   Based upon defendants' acts and omissions in direct violation of their fiduciary duties of care, good-faith, honesty and loyalty, a pre-suit demand on GBT(Gopher's) Board of Directors to bring the claims asserted in this action is excused as a futile and useless act. A sizeable majority of GBT's officers, directors, executive consultants, affiliates and insiders have personally profited and benefitted financially from the wrongdoing alleged in this Complaint and it was these same individuals who

1  oversaw GBT's operations and benefitted from the wrongful acts and conduct

2  complained of herein.

3       137.   Plaintiffs JACKSON and BAUER have not made any demand on GBT or

4  its Board of Directors to investigate and prosecute the wrongdoing alleged herein. Such

5  demand is excused because: (i) making a demand would be a futile and useless act as the

6  majority of GBT(Gopher's) officers, directors, executive consultants, affiliates and

7  insiders have substantial financial interests and are highly unlikely, and probably

8  incapable of conducting an independent and objective investigation of the alleged

9  wrongdoing; and (ii) the wrongful conduct of the defendants is not subject to protection

10 under the business judgment rule. Under such circumstances, the demand requirement is

11 excused since making such a demand on GBT(Gopher's) officers, directors, executive

12 consultants and/or affiliates would be futile, in effect, a request for these individuals to

13 that they sue themselves. *Reed v. Norman (1957) 152 Cal.App.2nd 892; Shields v.*

14 *Singleton (1993) 15 Cal.App.4th 161, 1621-1622.*

## PRAYER FOR RELIEF

16      WHEREFORE, plaintiffs JACKSON and BAUER, on behalf of nominal

17 defendant GBT(Gophers's) and its shareholders, pray for judgment against named

18 defendants, and each of them, as follows:

## ON THE FIRST THROUGH FOURTH CAUSES OF ACTION

20      1.    General and special damages, according to proof at the time of trial, but not

21 less than Five Million Dollars ($5,000,000), which will be the subject of proof at the

22 time of trial;

23      2.    Consequential damages, including loss of profits, according to proof at the

24 time of trial;

25      3.    An award of restitution, disgorgement of all illicit proceeds generated by

26 each of the named defendants' wrongful conduct as alleged herein in an amount

27 according to proof at the time of trial;

28

4.     An award of punitive or exemplary damages to be shown according to proof at the time of trial;

**ON ALL CAUSES OF ACTION**

5.     Prejudgment interest on all damages as permitted by law on the amount of damages

incurred from the time of their occurrence at the prevailing legal rate

6.     Reasonable attorneys' fees and costs of litigation according to proof;

7.     Costs of suit herein incurred; and such other and further relief as the Court deems just and proper.

Respectfully submitted,

WOLFGANG F. HAHN + ASSOCIATES

DATED:  1 November 2020          By:   /s/  Wolfgang F.Hahn_____
                                      Wolfgang F. Hahn
                                      Attorneys for Plaintiffs Robert
                                      Warren Jackson and Gregory Bauer

## CERTIFICATE OF SERVICE

I hereby certify that on 2 November 2020, I caused the filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Fahim Farivar, Esq. @fahim@farivarlaw.com
Robert Yaspan, Esq. @ ryaspan@yaspanlaw.com
Joe McCarty, Esq. @ jmccarty@yaspanlaw.com
Debbie Brand, Esq,  @ dbrand@yaspanlaw.com

By:   /s/  Wolfgang F.Hahn_____
      Wolfgang F. Hahn
      Attorneys for Plaintiffs Robert
      Warren Jackson and Gregory Bauer

1

2

3

## **<u>VERIFICATION</u>**

4

5

I, Gregory Bauer, am the plaintiff in the above-entitled action.  I have read the

6

foregoing Complaint and know the contents thereof. The same is true of my own

7

knowledge, except as to those matters which are therein alleged on information and

8

belief, and as to those matters, I believe it to be true. I declare under penalty of perjury

9

under the laws of the State of California that the foregoing is true and correct.

10

11

Executed this 2nd of November 2020 in St. Augustine, Florida

12

/s/   Gregory Bauer_____

13

Gregory Bauer

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DERIVATIVE CLAIMS FOR: DERIVATIVE CLAIMS FOR [1] BREACH OF FIDUCIARY DUTY; [2] AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; [3] FRAUD – CONCEALMENT AND SUPPRESSION; AND  [4] NEGLIGENCE**
**GREGORY BAUER + ROBERT WARREN JACKSON v.  MOSHE JACOB, ET AL.**                              **PAGE  76**