Fahim Farivar, Esq. (SBN: 252153)
  *fahim@farivarlaw.com*
Brian Ning. Esq. (SBN: 330366)
  *brian@farivarlaw.com*
**FARIVAR LAW FIRM, APC**
18345 Ventura Blvd., Suite 518
Tarzana, CA 91356
Telephone: (818) 796 - 2060
Facsimile:  (818) 812 - 7868

Attorneys for Defendants,
Randolph Ben Clymer and Ben Clymer's
the Body Shop Perris, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT COURT OF CALIFORNIA

| | |
|---|---|
| ROBERT WARREN JACKSON, individually and derivatively; GREGORY BAUER, individually and derivatively, <br><br> Plaintiffs, <br><br> vs. <br><br> BEN CLYMER'S THE BODY SHOP PERRIS, LLC, a California limited liability company; RANDOLPH BEN CLYMER, an individual; and AFFILIATED DEFENDANTS . | Case No. 2:20-CV-09399-RGK-AGRx <br><br> Los Angeles Superior Court Case No. 20STCV32709 <br><br> *[Assigned to the Hon. R. Gary Klausner, Courtroom 850]* <br><br> **DEFENDANTS RANDOLPH BEN CLYMER AND BEN CLYMER'S THE BODY SHOP PERRIS, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6), 9, AND 23.1** <br><br> <u>Hearing Date</u> <br> Date:  December 28, 2020 <br> Time:  9:00 a.m. <br> Judge:  Hon R. Gary Klausner <br> Place:  Courtroom 850 <br>    255 E. Temple St. <br>     Los Angeles, CA 90012 |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN THAT on December 28, 2020, at 9:00 a.m., before the Honorable R. Gary Klausner in Courtroom 850 of the United States Courthouse for the Central District of California, Western Division, 255 E. Temple Street, Los Angeles, California, Defendants Randolph Ben Clymer ("Clymer") and Ben Clymer's the Body Shop Perris, LLC ("Perris, LLC") ("Clymer" and "Perris, LLC" together, the "Clymer Defendants") will and hereby do move the Court to dismiss the First Amended Complaint ("FAC") for: (1) Breach of Fiduciary Duty; (2) Aiding and Abetting Breach of Fiduciary Duty; (3) Concealment and Suppression of Material Fact; and (4) Negligence (Docket No. 23) pursuant to Federal Rules of Civil Procedure Rule ("FRCP") Rules 12(b)(6), 9(b) and 23.1, for failure to state claims against the Clymer Defendants upon which relief can be granted, for lack of standing, for failure to properly plead futility, and for failure to plead the claims with the requisite specificity.

Pursuant to Local rule 7-3, Mr. Farivar, counsel for the Clymer Defendants, sought to schedule a meet and confer with Wolfgang Hahn ("Mr. Hahn"), counsel for Plaintiffs Robert Warren Jackson ("Jackson") and Gregory Bauer ("Bauer") (collectively, the "Plaintiffs"), and sent an email regarding the same on or about October 22, 2020. Mr. Farivar and Mr. Hahn met and conferred telephonically on or about October 30, 2020, wherein the counselors agreed that the Clymer Defendants' response would be due on November 25, 2020. The two also discussed grounds for a Motion to Dismiss or whether Plaintiffs would dismiss the Clymer Defendants from the case. After receiving no follow-up from Mr. Hahn, Mr. Farivar emailed Mr. Hahn on or about November 25, 2020 regarding the Motion to Dismiss and received no meaningful response. Accordingly, the Clymer Defendants are filing this Motion to Dismiss the First Amended Complaint ("FAC") after a good faith meet and confer.

As set forth below, there is good cause for the relief requested as the Plaintiffs: (1) failed to properly plead futility;  (2) failed to plead the breach of fiduciary duty and fraud claims with sufficient particularity; and (3) failed to state a claim for relief against the Clymer Defendants.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities; the pleadings and papers filed in this action; and such further argument and matters as may be offered at the time of the hearing on this Motion.

**PLEASE TAKE NOTICE** that pursuant to Local Rule ("L.R.") 7-9, each opposing party shall, not later than ten (10) days after service of the motion in the instance of a new trial motion and not later than twenty-one (21) days before the date designated for the hearing of the motion in all other instances, serve upon all other parties and file with the Clerk either (a) the evidence upon which the opposing party will rely in opposition to the motion and a brief but complete memorandum which shall contain a statement of all the reasons in opposition thereto and the points and authorities upon which the opposing party will rely, or (b) a written statement that that party will not oppose the motion. Evidence presented in all opposing papers shall comply with the requirements of L.R. 7-6, 7-7 and 7-8.

///

///

**PLEASE TAKE FURTHER NOTICE** that the failure to file a timely response or opposition to the Motion may be deemed consent to the granting of the relief therein requested and the Court may, without further notice or opportunity to be heard, grant the Motion and waive appearances at the proposed hearing on the Motion.

Dated: November 25, 2020                    **FARIVAR LAW FIRM, APC**


By:   *Fahim Farivar*
         Fahim Farivar, Esq.
         Counsel for Defendants Randolph
         Ben Clymer and Ben Clymer's the
         Body Shop Perris, LLC.

# **Table of Contents**

I. INTRODUCTION ...................................................................................... 8

II. STATEMENT OF PERTINENT FACTS ................................................ 8

III. LEGAL STANDARD ............................................................................ 10

IV. ARGUMENT ........................................................................................ 11

    a. Plaintiffs Do Not Have Standing as to a Shareholder Derivative Suit and Fail to Properly Plead Futility. ............................................. 11

        i. Plaintiffs Have No Standing Because They Fail to Adequately Allege Continuous Stock Ownership. ..................... 11

        ii. Plaintiffs Did Not Meet the Legal Standard for the Demand Requirement ................................................................. 13

    b. Plaintiffs Fail to State Any Claims for Relief Against the Clymer Defendants ................................................................................... 16

        i. Plaintiffs Fail to Allege the Clymer Defendants Owe a Fiduciary Duty to GBT. ................................................. 16

        ii. Plaintiffs Fail to Allege the Clymer Defendants Knew of Any Duty to Plaintiffs or GBT. ................................ 17

        iii. Plaintiffs Fail to Allege How the Clymer Defendants Concealed or Suppressed any Information to GBT .................... 20

        iv. Plaintiffs Fail to Allege Negligence Against the Clymer Defendants. ......................................................... 21

V. Plaintiffs Cannot Allege "Reverse Alter Ego" ................................. 22

    a. Alter Ego Is Inapplicable Against an LLC in Nevada ........................ 22

        i. Plaintiffs have Not Alleged Any Facts to Assert a Basis for Which an Alter Ego Remedy Would Attach in Nevada ....... 23

        ii. Reverse Alter Ego Fails in Nevada ............................................ 24

    b. Reverse Alter Ego Also Fails in California ...................................... 24

VI. CONCLUSION ..................................................................................... 25

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

## **Table of Authorities**

Cases

*Adelphia Recovery Trust v. Bank of America, N.A.*, 624 F. Supp. 2d 292, 319 (S.D.N.Y. 2009) .. 17

*Arduini v. Hart,* 774 F.3d 622, 638 (9th Cir 2014) ........................................................................ 11

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) ............................................................................. 10

*Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.*, 131 Cal.App.4th 802 (2005)............ 20

*Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp.2d 1234, 1245 (D. Nev., 2008)........................ 16

*Casey v. U.S. Bank National Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005)............................. 18, 19

*Curci Investments LLC v. Baldwin*, 14 Cal.App.5[th] 214, 224 (2017).......................................... 24

*Gerard v. Ross*, 204 Cal.App.3d 968, 983 (1988)......................................................................... 20

*Goggin v. Enter. Leasing Co. -W., LLC*, 324 F. Supp. 3d 1179, 1181-82 (D. Nev. 2018) ............ 21

*Guttman v. Huang*, 823 A.2d 492, 500-5-1 (Del. Ch. 2003) ................................................... 14, 15

*Hay v. Hay,* 100 Nev. 196, 198, 678 P.2d 672, 674 (1984) ........................................................... 23

*In re Caremark Int'l Derivative Litig.,* 698 A.2d 959, 967 (Del. Ch. 1996)................................... 15

*In re Computer Scis. Derivative Litig.*, No. CV 06-05288 MRP (EX) 2007 WL 9734602, at *3
      (C.D. Cal. Aug. 9, 2007) ....................................................................................................... 16

*In re Giampietro,* 317 B.R. 841 (Bankr. D. Nev. 2004)................................................................. 22

*In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 648. ................................................................... 15

*In re Sharp Intern. Corp.*, 281 B.R. 506, 513 (Bankr.E.D.N.Y.2002)........................................... 18

*In re Sunset Tech, Inc. Derivative Litig.*, 278 F. Supp.2d 1079, 1096 (N.D. Cal.) ........................ 12

*In re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1202 (N.D. Cal. 2007)............... 12, 15

*Kirschner v. Bennett*, 648 F. Supp. 2d 525, 544-45 (S.D.N.Y. 2009)........................................... 18

*Kohls v. Duthie,* 791 A.2d 772, 779 (Del. Ch. 2000) ................................................................... 14

*Levine v. Smith*, 591 A.2d 194, 207 (Del. 1991) ........................................................................... 16

*Lomita Land & Water Co. v. Robinson* 154 Cal. 36, 47 (1908)...................................................... 20

*Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1058-59 (9th Cir. 2016).... 15

*Neilson v. Union Bank of Cal., N.A.*, 290 F.Supp.2d 1101, 1118-19 (C.D. Cal.2003) ................... 19

*North Arlington Medical Building, Inc. v. Sanchez Construction Company*, 86 Nev. 515 (1970). 23

*Ortiz v. Georgia Pacific*, 973 F. Supp. 2d 1162, 1184 (E.D. Cal. 2013) ....................................... 17

*Postal Instant Press, Inc. v. Kaswa Corp.,* 162 Cal. App. 4th 1510, 1518 (2008) ......................... 22

*Rales v. Blasband,* 634 A.2d 927, 936 (Del. 1993) ....................................................... 15

*Resolution Trust Corp. v. Rowe*, 1993 U.S. Dist. LEXIS 1497, No. C 90-20114 BAG, 1993 WL
    183512, *5 (N.D. Cal. Feb. 8, 1993) .................................................................. 18

*Resolution Trust Corp. v. Rowe*, No. C 90-20114 BAC, 1993 WL 183512, * 5 (N.D.Cal. Feb.8,
    1993) ................................................................................................ 20

*Rosenbloom v. Pyott,* 765 F.3d 1137, 1148 (9th Cir.2014) .......................................... 11

*Shoen v. SAC Holding Corp.,* 122 Nev. 621, 137 P.3d 1171, 1179–84 (2006) ...................... 11, 13

*Siegal v. Gamble*, 2015 WL 4734741, at *7 (N.D. Cal. Aug. 10, 2015) .............................. 20

*Sonora Diamond Corporation. Superior Court* 83 Cal. App. 4th 523, 539 (2000) ...................... 24

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3D 1097, 1106 (9th Cir. 2003) ............................ 11, 17

Statutes

Federal Rule of Civil Procedure Rule 9(b) ............................................................. 20

Federal Rule of Civil Procedure 12(b)(6), ......................................................... 9, 20, 21

Federal Rule of Civil Procedure 23.1(b)(1) ...................................................... 10, 11, 12

Nev. R. Civ. P. 23.1 ............................................................................. 11, 12

Nev. Rev. Stat. §41.520(2) ...................................................................... 11, 12

Nev. Rev. Stat. § 78.138 ............................................................................ 14

Nev. Rev. Stat.  § 789.138(7)(b) .................................................................... 14

Nev. Rev. Stat. § 78.747(1) ......................................................................... 21

Nev. Rev. Stat. § 86.401 ............................................................................ 23

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs' FAC is fatally lacking in specifics with regard to most, if not all of the alleged Defendants, and especially with regards to the Clymer Defendants. Plaintiffs' claims revolve primarily around the individual doings of Defendants Mo Jacobs ("Jacobs"), Darren Dunckel ("Dunckel"), Mansour Khatib ("Khatib"), and Michael Murray ("Murray") (Jacobs, Dunckel, Khatib and Murray together, the "Insider Defendants") and their interactions with the Plaintiffs. Interestingly, many of the events giving rise to the allegations in the Complaint occurred while Bauer acted as CEO of nominal defendant GBT Technologies, Inc. fka Gopher Protocol, Inc. ("GBT"). *See* the FAC, ¶ 63.

More specifically, despite the lengthy FAC, Plaintiffs fail to allege that the Clymer Defendants, in particular, (1) owed a fiduciary duty to Plaintiffs or to GBT, (2) knew or should have known about any of the other Defendants' alleged fiduciary duty to Plaintiffs or to GBT, (3) actively concealed—or even communicated with—Plaintiffs, and (4) that the Clymer Defendants otherwise possessed a duty to Plaintiffs that they later breached. As explained below, Plaintiffs entirely fail to allege the Clymer Defendants' involvement in any purported scheme between the Insider Defendants and Plaintiffs.

Plaintiffs sprinkle "alter ego" and "reverse alter ego" allegations throughout the FAC, yet fail to lay the basis to justify alter ego treatment—especially with regards to the Clymer Defendants, who were not personally involved in any of the questionable transactions in the FAC. Accordingly, the FAC must be dismissed in its entirety as to the Clymer Defendants.

## II.   STATEMENT OF PERTINENT FACTS

The gist of the FAC is that Plaintiffs and the Insider Defendants met between late 2016 and early 2017 to discuss GBT's potential purchase of Preway Communications ("Preway"), a business of telephone-related items, gift cards, and

prepaid programs through a network of approved neighborhood-based retail payment centers providing electronic pre-paid telecommunication and other financial services-type products to paying customers. *See* the FAC, ¶¶ 48, 51. Plaintiffs thereafter allege that the Insider Defendants used the acquisition of the cash-flow intensive Preway business to misrepresent the profitability of GBT, fabricate transactions, and artificially inflate its value. *See* the FAC, p. 6:12-22.

As relates to the Clymer Defendants, Plaintiffs allege only two connections: (1) Clymer became the manager of Guardian Patch, LLC ("Guardian") on or about August 11, 2017, which had previously acquired shares of GBT in connection with the acquisition of Preway and later suspiciously sold these shares (*See* FAC, ¶ 14) and (2) Clymer and/or Perris, LLC received over 2,000,000 shares of GBT stock, although Plaintiffs admit "it is unclear how [Perris, LLC] acquired these shares." *See* the FAC, ¶ 90. As explained below, Plaintiffs' timeline exonerates the Clymer Defendants from any liability to any purported scheme between the Insider Defendants and Plaintiffs.

### a.  Clymer's Involvement with Guardian.

Guardian was allegedly formed in March 2016 by Jacob to develop certain "patch" technology ("Patch"). *See* the FAC, ¶¶ 73, 16. On or about March 29, 2016, Guardian and GBT formed a joint venture (the "Joint Venture") to develop Patch. On or about May 23, 2017, Guardian and GBT executed a convertible note indicating Guardian's indebtedness to GBT in connection with formation of the Joint Venture. *See* the FAC, ¶ 74. On or about August 1, 2017, GBT and Guardian entered into a consulting agreement to structure the Preway acquisition, wherein GBT agreed to issue 2,000,000 shares of common stock to Guardian and warrants to acquire 9,000,000 more shares, in addition to conditional payment depending on the performance of Preway. *See* the FAC, ¶ 75. Plaintiffs do not allege that this is a sham agreement—Guardian provided over $500,000.00 to finance GBT's acquisition of Preway. *See* the FAC, ¶ 76. Plaintiffs allege that Clymer became the

manager of Guardian on or about August 11, 2017, well after these events occurred. *See* the FAC, ¶ 14. On or about December 29, 2017, well after Bauer became CEO of GBT on or about September 1, 2017, GBT agreed to amend its agreement with Guardian to enable Guardian to convert its note into shares. *See* the FAC, ¶¶ 79, 63. GBT thereafter issued more shares to Guardian for various purposes, including to buy out Guardian's interest in the Joint Venture, totaling approximately 19,500,000 shares from GBT to Guardian. *See* the FAC, ¶¶ 82, 83.

> **b. Perris, LLC and/or Clymer Were Issued 2,000,000 Shares at Some Point.**

Aside from Clymer's involvement with Guardian, Plaintiffs' only allegations regarding the Clymer Defendants is that as of August 4, 2017, Perris, LLC owned 2,000,000 shares of GBT common stock. *See* FAC, ¶ 90. Plaintiffs admit they do not know where Perris, LLC acquired these shares. *Id.* Plaintiffs further without more allege that Perris, LLC's holdings of GBT stock stood at 600,000 shares as of March 20, 2018. *Id.*

### III.   LEGAL STANDARD

In order to avoid dismissal under FRCP 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   In making the plausibility analysis, a district court should first identify and eliminate the conclusory "allegations that are not entitled to the assumption of truth." *Id.* at 1950-51. Second, the district court should evaluate the remaining non-conclusory allegations to determine if they are plausible. *Id.* at 1951.

Since Plaintiffs' claims in this action sound in fraud, they must also satisfy the heightened pleading requirements of FRCP Rule 9(b), which requires a plaintiff to identify not only the "who, what, when, where, and how" of the alleged misstatements, but also "what is false or misleading about a statement, and why it is

false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3D 1097, 1106 (9ᵗʰ Cir. 2003) (internal quotation marks and citations omitted, applying Rule 9(b) to state-law claims sounding in fraud).   A fraud suit against differently situated defendants must identify the role of each defendant in the alleged fraudulent scheme.  *U.S. ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018).

## IV.   ARGUMENT

### a.  Plaintiffs Do Not Have Standing as to a Shareholder Derivative Suit and Fail to Properly Plead Futility.

Under FRCP Rule 23.1 ("Rule 23.1"), a shareholder must either demand action from the corporation's directors before filing a shareholder derivative suit, or plead <u>with particularity</u> the reasons why such demand would have been futile.   A court looks to the law of the state of incorporation to determine when demand would be futile. *Rosenbloom v. Pyott,* 765 F.3d 1137, 1148 (9th Cir.2014).   <u>See</u>, *Arduini v. Hart,* 774 F.3d 622, 638 (9ᵗʰ Cir 2014).

Because GBT is incorporated in Nevada, Nevada law defines demand futility in this case. Nevada courts look to Delaware law for guidance on demand futility. *Shoen v. SAC Holding Corp.,* 122 Nev. 621, 137 P.3d 1171, 1179–84 (2006). Derivative suits allow a shareholder "to 'compel the corporation to sue' and to thereby pursue litigation on the corporation's behalf against the corporation's board of directors and officers." *Id.* at 1179. However, "because the power to manage the corporation's affairs resides in the board of directors, a shareholder must, before filing suit, make a demand on the board ... to obtain the action that the shareholder desires." *Id.; Rosenbloom,* 765 F.3d at 1147–48 (discussing demand futility under Delaware law).  *See also, Arduini, <u>supra</u>* at 638.

### i.  *Plaintiffs Have No Standing Because They Fail to Adequately Allege Continuous Stock Ownership.*

The FAC in its entirety should be dismissed because Plaintiffs have failed to comply with Rule 23.1(b)(1) which requires derivative plaintiffs to properly allege

that each was a "shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law." Rule 23.1(b)(1). *See also* Nev. Rev. Stat. ("NRS") §41.520(2) and Nev. R. Civ. P. ("NRCP") 23.1.

The Ninth Circuit has interpreted Rule 23.1 to require that the derivative plaintiff "be a shareholder at the time of the alleged wrongful acts" and "retain ownership of the stock for the duration of the lawsuit." A derivative plaintiff has no standing to sue for misconduct that occurred prior to the time he became a shareholder of the corporation. Thus, the *complaint must indicate when plaintiffs bought stock* in [the company] and must state that they have owned stock continuously since the date of the filing of the lawsuit (if they have). *In re Sunset Tech, Inc. Derivative Litig.*, 278 F. Supp.2d 1079, 1096 (N.D. Cal.) (citations omitted) (emphasis added). Alleging ownership "at all times relevant" or "during the relevant period" does not meet the requirements of Rule 23.1(b)(1). *See, In re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1202 (N.D. Cal. 2007) (holding that plaintiffs failed to adequately allege standing by continuous stock ownership where complaint alleged only that plaintiffs "have owned [] stock during the Relevant Period... and continue to own the Company's common stock" and stating that "plaintiffs must unambiguously indicate... the dates they purchased [] stock, and whether they have continuously owned [] stock from the time of purchase up to the present.").

Plaintiffs do not state when they acquired the GBT stock, nor how they acquired it. The complaint merely states that JACKSON and BAUER are, were and remain shareholders of GBT (Gopher) at the time of the wrongdoing complained of." (FAC, ¶ 134). Moreover, at paragraphs 1 and 2 of the FAC, Plaintiffs state the dates when they obtained stock warrant agreements, but they do not state they were ever exercised and do not state when they acquired stock. Thus, Plaintiffs' allegations are insufficient to satisfy the continuous ownership requirement of Rule

23.1 and NRCP 23.1).

### ii. *Plaintiffs Did Not Meet the Legal Standard for the Demand Requirement*

In a derivative action, the complaint must... state with particularity any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and the reasons for not obtaining the action or not making the effort." Rule 23.1 and NRS 41.520(2) and NRCP 23.1. This special pleading rule for derivative actions, is known as the demand requirement. *See, e.g., Shoen v. SAC Holding Corp.,* 137 P.3d 1171, 1179-80 (Nev. 2006) (abrogated on other grounds) ("a shareholder must 'set forth... particularized factual statements that are essential to the claim' that a demand has been made and refused, or that making a demand would be  futile or otherwise inappropriate") (quoting *Brehm v. Eisner,* 746 A.2d 244, 254 (Del. 2000)).

On a motion to dismiss based on the demand requirement, the standard for testing the sufficiency of the allegations is far more rigorous than ordinary notice pleading rules. See Rule 23.1 ("the complaint must... state with particularity" whether demand was made or why demand would be futile). To excuse demand, a plaintiff must meet a heightened pleading standard of particularity, and plead particularized facts demonstrating that a majority of the board of directors cannot impartially consider a demand. *See Shoen, supra* at 1179-80.  [M]ere conclusory assertions will not suffice under NRCP 23. 'with particularity' standard." (Nevada's NRCP 23.1 s almost identical to Rule 23.1, and both require that demand futility be pled "with particularity").

Here,  Plaintiffs admit they did not make a demand on GBT's directors asking them that they consider bringing claims on behalf of the Company prior to filing suit. *See* FAC ¶¶ 136-137. They assert, however, that such demand would have been futile for the following alleged reasons:

"[B]ased upon defendants' acts and omissions in direct violation of their

fiduciary duties of care, good-faith, honesty and loyalty, a pre-suit demand on GBT (Gopher's) Board of Directors to bring the claims asserted in this action is excused as a futile and useless act. A sizeable majority of GBT's officers, directors, executive consultants, affiliates and insiders have personally profited and benefitted financially from the wrongdoing alleged in this Complaint and it was these same individuals who oversaw GBT' s operations and benefitted from the wrongful acts and conduct complained of herein." (Complaint, ¶136).

None of these allegations, however, is sufficient to overcome the presumption of disinterestedness and independence to which GBT's directors are entitled under Nevada law.  Plaintiffs must plead specific facts demonstrating that, at least two of the three directors lack the independence necessary to consider their demand.

Plaintiffs allege there are four directors.  However, Plaintiffs' allegations Robert Yaspan is a board member simply fails as he resigned from the Board in June 2019.

Of the remaining three directors, Danny Rittman was not alleged to have sold any stock and Mansour Khatib was never alleged to have ownership of stock. (See, Chart 6, FAC pages 53-54).  Thus, two out of the three directors cannot be accused of any stock sales.

To determine whether demand is excused, Nevada law requires the courts to determine whether a majority of the Board faces a sufficiently great threat of liability from the derivative suit that it cannot impartially evaluate a demand.  *Guttman v. Huang*, 823 A.2d 492, 500-5-1 (Del. Ch. 2003).  Thus, simply alleging that the directors participated in the alleged wrongdoing and will not sue themselves will not suffice.  *See Kohls v. Duthie,* 791 A.2d 772, 779 (Del. Ch. 2000) ("[T]he mere fact that directors would be asked to sue themselves is not a basis for excusing demand. Nor is it sufficient to allege that the directors had voted to approve the transaction at issue.") (footnote omitted).

Rather, a court must evaluate the specific threat of liability to each individual director by determining whether particularized facts are pleaded to show that the

director is unlikely to be able to avail himself of the protection of the business judgment rule for the conduct alleged. The business judgment rule insulates directors who make unwise decisions from liability if they informed themselves adequately and acted in good faith with respect to those decisions. *See* NRS § 78.138; *In re Caremark Int'l Derivative Litig.,* 698 A.2d 959, 967 (Del. Ch. 1996) .

Under Nevada's exculpatory clause, "a director or officer is not individually liable to the corporation ... unless it is proven that ... the breach of [his fiduciary duties as a director] involved intentional misconduct, fraud or a knowing violation of law." NRS § 789.138(7)(b). Thus, to show that a majority of GBT's Board is disqualified from considering a demand because they face a substantial likelihood of liability, plaintiffs "must plead a non-exculpated claim." *In re Lear Corp. S'holder Litig.,* 967 A.2d 640, 648.

To show that a director is *not disinterested,* a derivative plaintiff must plead articulate facts to demonstrate that the director had a personal financial interest in the alleged wrongdoing. *See Rales v. Blasband,* 634 A.2d 927, 936 (Del. 1993). *See also, In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1189 (N.D. Cal. 2007).

Corporate insiders sell company stock as a matter of course, and there is no per se rule that makes a director "interest" based solely on  generalized allegations that he or she sold company stock while in possession of material, non-public information. *In re Verisign, Inc.*, *supra* at 1190-1191. *See also, Guttman*, *supra* at 502.

To show a lack of independence, shareholders must also allege "facts that show that the majority [of directors] is 'beholden to' directors who ... [are] unable to consider a demand on its merits.  The simple fact that there are some financial ties between the interested party and the director is not disqualifying. *Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1058-59 (9th Cir. 2016).

In the instant case, the only allegations are conclusory allegations.

Conclusory "allegations of facts or law not supported by allegations of specific fact may not be taken as true." *In re Computer Scis. Derivative Litig.*, No. CV 06-05288 MRP (EX) 2007 WL 9734602, at *3 (C.D. Cal. Aug. 9, 2007), citing *Levine v. Smith*, 591 A.2d 194, 207 (Del. 1991).

Further, there are no allegations that the directors approved the challenged transactions nor does it even set forth the list of directors.  Moreover, there are not any allegations pled with particularity as to why the Board could not impartially consider a demand.  There are only conclusory statements.

### b.  Plaintiffs Fail to State Any Claims for Relief Against the Clymer Defendants.

The Clymer Defendants are neither officers nor directors of GBT. The Clymer Defendants are merely shareholders and none of the allegations against it set forth any duty owed by the Clymer Defendants to other shareholders.

### i.  *Plaintiffs Fail to Allege the Clymer Defendants Owe a Fiduciary Duty to GBT.*

A breach of fiduciary duty claim requires Plaintiffs to show the existence of a fiduciary duty, the breach of that duty, and that the breach proximately caused the damages.  *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp.2d 1234, 1245 (D. Nev., 2008).

Plaintiffs' only claims against the Clymer Defendants is that Perris, LLC owned 2,000,000 shares of GBT and that Clymer was the manager of Guardian when certain shares held by Guardian were sold. *See* FAC, ¶ 97. Plaintiffs have neither alleged that the Clymer Defendants owed GBT a fiduciary duty, nor that as shareholders, Guardian or Perris, LLC somehow owed a duty to GBT as mere shareholders. Lastly, law is settled that shareholders do not owe an entity a duty by being mere shareholders.

Furthermore, Plaintiffs' claims for breach of fiduciary duty sound in fraud. The claim incorporates by reference all of Plaintiffs' allegations that there was a

"pump and dump" scheme and market manipulation. *See* FAC, ¶ 33. It alleges that all defendants engaged in a deliberate course of conduct and alleges that the defendants engaged in "fraudulent acts" (without providing any details as to the "who, when, what and where). *Id.* FRCP 9(b) requires that such claims be pled with specificity. *Vess,* 317 F.3d 1103-04. "[W]hen a breach of fiduciary duty claim is, in substance, a claim of fraud, the requirements of Rule 9(b) are triggered." *Adelphia Recovery Trust v. Bank of America, N.A.*, 624 F. Supp. 2d 292, 319 (S.D.N.Y. 2009).

The FAC fails to allege any specific claims against the Clymer Defendants. FRCP 9 requires an explanation of the "who, what, when, where, and how" of the fraud, as well as the reasons why the acts at issue were allegedly false. *Vess*, 317 F.3d at 1106. Yet, Plaintiffs fail to allege that the Clymer Defendants communicated in any regard with Plaintiffs or with GBT. Furthermore, Clymer's involvement with Guardian began only after Guardian and GBT had entered into binding agreements regarding the issuance of GBT stock. *See* the FAC, ¶ 14. Simply put, Plaintiffs have not alleged a basis for the Clymer Defendants to have committed a fraud on GBT and accordingly the claim should be dismissed pursuant to FRCP 12(b)(6) and 9(b).

### ii. Plaintiffs Fail to Allege the Clymer Defendants Knew of Any Duty to Plaintiffs or GBT.

Plaintiffs' claim of aiding and abetting a breach of fiduciary duty falls short of the necessary facts to satisfy the claim. As set forth below, aiding and abetting liability requires a showing of knowing participation in a tort with the intent to assist and provide substantial assistance. All of which is absent from the instant case.

Federal courts follow the California common law rule for subjecting a defendant to liability for aiding and abetting a tort. (*Ortiz v. Georgia Pacific*, 973 F. Supp. 2d 1162, 1184 (E.D. Cal. 2013). Under California law, there are four crucial elements plaintiffs must sufficiently plead to show the Clymer Defendants' alleged aiding and abetting in the wrongful acts; conclusory allegations will not suffice. Plaintiffs must allege *facts* that show: (1) the Clymer Defendants' *Actual*

*Knowledge* of Primary Tortfeasor's Wrongful Act; (2) the Clymer Defendants
Provided *Substantial Assistance* to Primary Tortfeasor in Commission of Wrongful
Act; (3) the Clymer Defendants' *Conscious Decision to Participate* in Primary
Tortfeasor's Wrongful Act; and (4) the Clymer Defendants' *Intent to Assist* Primary
Tortfeasor in Wrongful Act.

  Here, Plaintiffs have not and cannot plead factual allegations against the
Clymer Defendants to meet any of these necessary elements. Firstly, with regard to
Perris, LLC, Plaintiffs have made no allegations except that it owned some shares of
GBT stock.

    1. <u>Actual Knowledge and Substantial Assistance</u>

  Liability may be imposed on one who aids and abets the commission of a tort
only if the person: knows the other's conduct constitutes a breach of duty and the
person gives substantial assistance or encouragement to the other to so act.  (*Casey
v. U.S. Bank National Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005).)

  The level of knowledge Plaintiffs are required to show is that the Clymer
Defendants had *actual knowledge* of the underlying tort committed by the primary
tortfeasor--a high level of scienter. (*Resolution Trust Corp. v. Rowe*, 1993 U.S. Dist.
LEXIS 1497, No. C 90-20114 BAG, 1993 WL 183512, *5 (N.D. Cal. Feb. 8, 1993)
["Under California law, actual knowledge and intent are required to impose aiding
and abetting liability"].)

  To survive a motion to dismiss, therefore, plaintiffs must allege facts showing
Clymer's *actual knowledge* of the underlying harm. (*Kirschner v. Bennett*, 648 F.
Supp. 2d 525, 544-45 (S.D.N.Y. 2009) [granting motion to dismiss aiding and
abetting claim against law firm for failure to plead sufficiently that defendants had
actual knowledge of, or substantially assisted in, the conduct giving rise to the
underlying action]; *In re Sharp Intern. Corp.*, 281 B.R. 506, 513
(Bankr.E.D.N.Y.2002) [The complaint must identify precisely the "primary wrong"
sued on and must allege that the aider and abettor had "actual knowledge" of the

1  wrongful conduct].)

2      For example, in *Casey*, a bankruptcy trustee sued several banks for aiding and

3  abetting a fraudulent scheme to loot the debtor corporation. (*Casey, supra*, 127

4  Cal.App.4th at p. 1141.) In reversing, the court found that the trustee's allegations

5  fell "far short" of the requirements for pleading a cause of action for aiding and

6  abetting breach of fiduciary duty. (*Id.* at p. 1148.) Although the complaint provided

7  "ample details of the banks' improper conduct in their business dealings with [the

8  perpetrator of the fraud], the complaint fail[ed] to establish that the banks had actual

9  knowledge of the primary violation in which they purportedly participated." (*Ibid.*,

10  italics omitted.) It was insufficient for the trustee to allege that "the banks knew

11  something fishy was going on...." (*Id.* at p. 1149, italics omitted.)

12      The test for actual knowledge cannot be confused with the concept of

13  "constructive knowledge," i.e., what one "should have known," as opposed to what

14  one actually knew. "California law requires that a defendant have actual knowledge

15  of tortious activity before it can be held liable as an aider and abettor, and federal

16  courts have found that the phrase 'knew or should have known' does not plead

17  actual knowledge." (*Neilson v. Union Bank of Cal., N.A.*, 290 F.Supp.2d 1101, 1118-

18  19 (C.D. Cal.2003).)

19      Here Guardian simply sold stock it owned by virtue of previous agreements.

20  Secondly, Clymer was not manager of Guardian when those agreements were made,

21  and thus his only involvement was selling GBT stock for the benefit of Guardian.

22  (FAC, page 54, fn 62).  There is nothing atypical about a party transferring its own

23  stock that it owned for years.  Plaintiffs did not, and cannot, state any allegations that

24  these transactions aided and abetted anyone.

25          2.  Conscious Decision and Intent to Participate in Wrongful Acts

26      Aiding and abetting "necessarily requires a defendant to reach a conscious

27  decision to participate in tortious activity for the purpose of assisting another in

28  performing a wrongful act." (*Berg & Berg Enterprises, LLC v. Sherwood Partners,*

*Inc.*, 131 Cal.App.4th 802, 823 n.10 (2005); *Siegal v. Gamble*, 2015 WL 4734741, at *7 (N.D. Cal. Aug. 10, 2015).)

In addition, Plaintiffs are required to show that Clymer had the intent to participate in and assist the wrongful acts. (*Lomita Land & Water Co. v. Robinson* 154 Cal. 36, 47 (1908) ["The words 'aid and abet' as thus used have a well understood meaning, and may fairly be construed to imply an intentional participation with knowledge of the object to be attained."]; *Gerard v. Ross*, 204 Cal.App.3d 968, 983 (1988) ["In the civil arena, an aider and abettor is called a co-tortfeasor. To be held liable as a co-tortfeasor, a defendant must have knowledge and intent. ... A defendant can be held liable as a co-tortfeasor on the basis of acting in concert only if he or she knew that a tort had been, or was to be, committed, and acted with the intent of facilitating the commission of that tort."]; *Resolution Trust Corp. v. Rowe*, No. C 90-20114 BAC, 1993 WL 183512, * 5 (N.D.Cal. Feb.8, 1993) [actual knowledge and intent are required to impose aiding and abetting liability].) Here, Plaintiffs again fail to allege Clymer's intent and this claim must be dismissed.

### *iii. Plaintiffs Fail to Allege How the Clymer Defendants Concealed or Suppressed any Information to GBT.*

Plaintiffs attempt to plead a cause of action for concealment based upon the alleged "Individual Insider Defendants" by failing to disclose certain material facts which they allegedly had a duty to disclose. (FAC, ¶120).  However, **<u>Perris, LLC and Guardian were simply shareholders, and do not have any right or duty to disclose any facts</u>** and Plaintiffs do not make such allegations.  The only allegations added about Perris, LLC is that Jacob is allegedly the "control person" for Perris, LLC which is sufficient (Id).

In addition, Plaintiffs allege in their "concealment" claim that the "officers, directors, executive consultants, affiliates and insiders, violated Rule § 144 without any facts to support such claim (and even describe how the Clymer Defendants fall into any of these categories) (FAC, ¶124). Defendants then make a conclusory

statement that "the Individual Insider Defendants" have personally benefitted from their collective and intentional non-disclosure of the Material Nonpublic Information". (Id.  Once again, the FAC is devoid of any allegations that a shareholder of GBT has a duty or ability to disclose any alleged Material Nonpublic Information, and what wrongdoings the Clymer Defendants allegedly committed.

 As discussed above, if fraud is being alleged against the Clymer Defendants, FRCP Rule 9(b) requires pleading with specificity the alleged facts that comprise of the fraudulent conduct, which are absent herein.

The Third Claim for Relief based upon Fraud – Concealment and Suppression of Material Fact should be dismissed for failure to state a claim pursuant to FRCP Rules 12(b)(6) and 9(b).

### iv. Plaintiffs Fail to Allege Negligence Against the Clymer Defendants.

In Nevada, "[i]t is well established that to prevail on a negligence claim, a plaintiff  must establish four elements: (1) the existence of a duty *1182 of care, (2) breach of that duty, (3) legal causation, and (4) damages." *Goggin v. Enter. Leasing Co. -W., LLC*, 324 F. Supp. 3d 1179, 1181-82 (D. Nev. 2018).

Once again, Plaintiffs just lump the Clymer Defendants with the other defendants in the case and now have included a claim for reverse alter ego that fails. At paragraph 130 of the FAC, Plaintiffs allege that the purported negligence as the alleged "Individual Insider Defendants" … "by their collective want of ordinary care or skill in the management and operation of nominal defendant GBT (Gopher's) business operations, particularly in regard to the issuance, sale and transfer of GBT's unregistered securities."

Simply stated Perris, LLC was a shareholder and had no management or operation of nominal defendant GBT, and no such claim is made. Furthermore, Clymer was, at best, merely a manager for Guardian after the stock agreements had been executed, and possesses no fiduciary duty to GBT by virtue of that. Plaintiffs

also fail to allege that Clymer had any fiduciary duty to GBT. As such, the negligence claim fails since the Clymer Defendants do not owe Plaintiffs or GBT any duties as set forth in the FAC and the claim is properly dismissed pursuant to 12(b)(6).

## V.   **Plaintiffs Cannot Allege "Reverse Alter Ego"**

The issue addressed by reverse piercing is the shareholder's transfer of personal assets to the corporation to shield the assets from collection by a creditor of the shareholder.   In other words, outside reverse piercing seeks to protect the judgment creditor from the shareholder's fraudulent transfer of assets to the corporation."  *See, Postal Instant Press, Inc. v. Kaswa Corp.,* 162 Cal. App. 4th 1510, 1518 (2008).

In order to try to create claims against the Clymer Defendants, Plaintiffs are seeking what amounts to a "reverse alter ego claim" against Clymer and Perris, LLC by alleging Perris, LLC is the "alter ego" of Jacob.   There are no allegations of any transfer of assets from Jacob to Perris, LLC or Clymer for purposes of hiding them (because it simply did not happen).  Rather, cases allowing reverse alter ego against an LLC involve cases where a judgment was already entered against the individual, which is also not the case herein.

### a.  **Alter Ego Is Inapplicable Against an LLC in Nevada**

Plaintiffs' claim for alter ego fails to state a claim upon which relief may be granted because reverse alter ego cannot be applied against Perris, LLC as an LLC. The alter ego doctrine allows a judgment creditor to pierce the corporate veil and impose corporate liability upon a corporation's shareholders. *See, e.g. In re Giampietro,* 317 B.R. 841 (Bankr. D. Nev. 2004). Although piercing a corporation's veil was originally an equitable remedy, the Nevada legislature codified alter ego as an exception to the general rule that shareholders may not be liable for a corporate debt. *See* NRS 78.747(1).

### i. *Plaintiffs have Not Alleged Any Facts to Assert a Basis for Which an Alter Ego Remedy Would Attach in Nevada*

In Nevada, there is no litmus test for determining when the corporate fiction should be disregarded; the result depends on the circumstances of each case. In pleading alter ego, a plaintiff "must set forth sufficient facts to establish all necessary elements of a claim for relief...so that the adverse party has adequate notice of the nature of the claim and relief sought." *See Hay v. Hay,* 100 Nev. 196, 198, 678 P.2d 672, 674 (1984) Not only is the FAC devoid of any facts, any alleged facts against the Clymer Defendants with regard to alter ego are made pursuant to information and belief. This fails to establish any factual basis for any alter ego. Other than conclusory statements in paragraph 24 and 29 which merely recite factors of an alter ego claim, there are no facts as to how the Clymer Defendants should be held responsible for Jacob's purported liability. The FAC is devoid of any facts showing a unity of interest.

Likewise, there are no facts as to how any inequitable result would occur by allowing alter ego. It is incumbent upon one seeking to pierce the corporate veil, to show that the financial setup of the corporation is a sham and caused injustice. *See, North Arlington Medical Building, Inc. v. Sanchez Construction Company*, 86 Nev. 515, 524 (1970). Plaintiffs have not alleged any fraud or injustice to the aggrieved party as to the Clymer Defendants. Mere conclusory allegations are insufficient to set forth the unique circumstances of this case for support of alter ego. The law requires more. Plaintiffs, therefore, has failed to state a claim for alter ego.

However, this is not a case where Plaintiffs are attempting to pierce the alter ego of Jacob, but rather are attempting to make the Clymer Defendants responsible for the alleged liabilities of Jacob.

///

///

### ii.    *Reverse Alter Ego Fails in Nevada*

Nevada revised its limited liability company statute to make clear that a charging order was the exclusive remedy for creditors, and that no other equitable remedies were available. *See* NRS 86.401:

Specifically NRS 86.401(2)(a) states:

"(a) Provides the exclusive remedy by which a judgment creditor of a member or an assignee of a member may satisfy a judgment out of the member's interest of the judgment debtor, whether the limited-liability company has one member or more than one member. No other remedy, including, without limitation, foreclosure on the member's interest or a court order for directions, accounts and inquiries that the debtor or member might have made, is available to the judgment creditor attempting to satisfy the judgment out of the judgment debtor's interest in the limited-liability company, and no other remedy may be ordered by a court."

In addition, no other remedies are available to the creditors of an LLC. *Id.* This includes equitable remedies, such as the "alter ego" doctrine. *Id.* Because the charging order is the exclusive remedy to an LLC's creditor, the alter ego doctrine does not apply in the case *sub judice*. Further, the Clymer Defendants respectfully submit that, based upon the statute, the Clymer Defendants cannot be pierced to create reverse alter ego liability.

### b.  Reverse Alter Ego Also Fails in California

In California, the Courts have also held that "[a]lter ego is an extreme remedy, sparingly used. *Sonora Diamond Corporation. Superior Court* 83 Cal. App. 4th 523, 539 (2000).  As discussed above, there are no facts to establish any alter ego claims and Plaintiffs are not seeking to pierce a corporate veil, but rather a reverse piercing of the corporate veil.

In California, Courts have permitted reverse veil piercing against an LLC when a judgment debtor uses his LLC to hide assets from a judgment creditor. *Curci Investments LLC v. Baldwin*, 14 Cal.App.5th 214, 224 (2017).   As stated in

1   *Curci,* "[t]he case before us presents a situation where reverse veil piercing might
2   well be appropriate. Curci has been attempting to **collect on a judgment** for nearly
3   half a decade".  The defendant used his LLC that he had an interest in to hide
4   personal assets and his web of business entities in which he has an interest.  Under
5   those circumstances – post judgment – the Court allowed reverse veil piercing.  On
6   the other hand, the Clymer Defendants have been unable to find cases where a
7   reverse veil piercing was allowed prior to judgment.

8        As such, under both Nevada and California law, reverse alter ego fails.

9   **VI.**  **CONCLUSION**

10        Based upon the above, Plaintiffs' FAC should be dismissed in its entirety for
11   failure to meet the requirements of FRCP Rule 23.1 and for failure to state viable
12   claims against the Clymer Defendants pursuant to FRCP Rules 12(b)(6) and 9(b).

14   Dated: November 25, 2020       **FARIVAR LAW FIRM, APC**

16       By:  *Fahim Farivar*
17          Fahim Farivar, Esq.
18          Attorney for Randolph Ben Clymer
19          and Ben Clymer's the Body Shop
       Perris, LLC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this case.  My business address is: 18345 Ventura Boulevard, Suite 518, Tarzana, CA 91356.

A true and correct copy of the foregoing document entitled (*specify*):

**DEFENDANTS RANDOLPH BEN CLYMER AND BEN CLYMER'S THE BODY SHOP PERRIS, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6), 9, AND 23.1**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) November 25, 2020, I checked the CM/ECF docket for this and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Fahim Farivar, Esq. – *fahim@farivarlaw.com*
Robert Yaspan, Esq. – *ryaspan@yaspanlaw.com*
Joe McCarty, Esq. – *jmccarty@yaspanlaw.com*
Debbie Brand, Esq. – *dbrand@yaspanlaw.com*
Wolfgang F. Hahn, Esq. – *ellobo1@san.rr.com*

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this case by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 25, 2020 | Brian Ning | */s/ Brian Ning* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |